IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| MICHAEL P. GILMOR, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:10-cv-189-ODS |
| | ) | |
| PREFERRED CREDIT CORPORATION, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY SUGGESTIONS IN SUPPORT OF MOTION FOR CLARIFICATION OF "ORDER ADDRESSING OUTSTANDING ISSUES AND MOTIONS, SETTING DEADLINES, AND DIRECTING THE PARTIES TO FILE A JOINT STATUS REPORT" [DOC. NO. 76]**

Moving Defendants[1] do not ask the Court to decertify or recertify a class—either on its own initiative or by their motion for clarification. They merely seek clarification of the portion of the Court's order of October 1, 2010 ("Order") addressing the state court's ruling certifying a class against certain defendants ("Class Certification Order"). Moving Defendants have continuously and

---

[1] The list of Moving Defendants in the moving papers was erroneously over-inclusive. In fact the Moving Defendants are Preferred Mortgage Trust 1996-1, improperly named as "Preferred Credit Asset-Backed Certificates, Series 1996-1"; Preferred Mortgage Trust 1996-2, improperly named as "Preferred Mortgage Asset-Backed Certificates, Series 1996-2"; Preferred Credit Trust 1997-1, improperly named as "Preferred Credit Asset-Backed Certificates, Series 1997-1"; Deutsche Bank Trust Company Americas, formerly known as Bankers Trust Company, in its capacity as the trustee of the Preferred Trusts (who was not part of the case at certification in these capacities); Litton Loan Servicing LP; Wells Fargo Bank N.A. f/k/a Wells Fargo Bank, MN, N.A. (in its capacity as former trustee for terminated trust Impac Mortgage Pass-Through Certificates 2000-1); and LaSalle National Bank (in its capacity as former owner trustee of terminated trust Impac CMB Trust Series 1999-1).

The following defendants were parties to the case when it was certified, and they are not among the Moving Defendants: Impac Funding Corp.; Impac Mortgage Holdings, Inc.; Impac Secured Assets Corp.; Deutsche Bank National Trust Company f/k/a Bankers Trust Company of California, N.A.; and Deutsche Bank Trust Company Americas, formerly known as Bankers Trust Company.

Further, defendant Credit-Based Asset Servicing & Securitization, LLC has just filed suggestions of bankruptcy and, as such, is not a Moving Defendant.

consistently maintained for more than seven years that the Class Certification Order did not certify a class against them, as they were not parties to this action when class certification was sought, argued, or granted. Significantly, the state court never ruled that Moving Defendants' position was wrong. But, this Court's comments about class certification—an issue that, as this Court notes, has "not [been] formally presented to the Court," Dkt. No. 76 at 1—could be read as stating not only that the Class Certification Order remains in effect, but also that a class has been certified <u>against</u> the Moving Defendants. It is undisputed that a class was certified against certain defendants; what is not clear is whether the Court meant to rule that the class is now also certified against Moving Defendants.

Clarification of the Court's intent would assist everyone involved in this case. Ultimately, if the Court determines that a class is certified against Moving Defendants, they will seek decertification of that class. If the Court finds that no such class was certified (given that Moving Defendants were not given notice of, or an opportunity to oppose, Plaintiffs' request for class certification, as due process requires), then Plaintiffs may decide to seek class certification. In either case, clarification of the Court's intent will provide valuable guidance to the parties.

But clarification of the Order may also have a more immediate impact due to the pending motions to dismiss for lack of standing. Plaintiffs have boldly taken the position that the state court's Class Certification Order *creates* standing. Dkt. No. 98 at 21 (referring to the Class Certification Order, saying: "The Circuit Court of Clay County has already determined that the Named Plaintiffs have 'standing' to represent and pursue this case on behalf of the <u>entire</u> PCC Borrower Class, even if some of the . . . 'Assignee Defendants' do not hold the Named Plaintiffs'

four particular loans."[2]) In other words, Plaintiffs suggest that they could (1) voluntarily dismiss Moving Defendants from the case *because* they have a standing defense, (2) obtain an order of class certification after such dismissal, and then, (3) re-add the dismissed defendants, having magically destroyed their standing defense via an *ex parte* order certifying the class during the Moving Defendants' absence.[3] If allowed to proceed in this manner, Plaintiffs' procedural machinations are a picture-perfect model of a due process violation and, to use Plaintiffs' own words, are a "gross miscarriage of justice." Dkt. No. 89 at 4.

## I.
## RESPONSE TO PLAINTIFFS' "BACKGROUND" SECTION

Plaintiffs' "Background" section leaves out the following very important procedural events in the history of this case:

---

[2] The Moving Defendants do not agree that the Class Certification Order "decided" or even addressed the standing issue. While interpretation of that order may be debated, the important point for consideration on this motion to clarify is that Plaintiffs rely on it for the creation of standing.

[3] Of course, Plaintiffs' position that the standing defense was destroyed is against the weight of authority considering the question. See O'Shea v. Sullivan, 414 U.S. 488, 494 (1974) (ruling that a plaintiff who lacks standing to sue a defendant individually may not do so on behalf of a class); Saunders v. Farmers Ins. Exch., 440 F.3d 940, 942 (8th Cir. 2006) ("[P]laintiffs lack[ed] standing to bring claims against defendants against whom they have alleged no direct injury."); Horwitz v. R.B. Jones Corp., 76 F.R.D. 149, 159 (W.D. Mo. 1997) ("[S]tanding to bring an action against each defendant named in the Complaint must be established independently of Federal Rule of Civil Procedure 23"). See also Canady v. Allstate Ins. Co., No. 96–CV–0174, 1997 WL 33384270 at *6, aff'd, 162 F.3d 1163 (8th Cir. 1998); Chorosevic v. MetLife Choices, No. 4:05–CV–2394, 2007 WL 2159475, at *6 (E.D. Mo. July 26, 2007). In fact, this Court recently reiterated—in a case litigated by Plaintiffs' counsel—that parties "ha[ve] standing to sue for violation of state lending law only those entities that have some direct contractual relationship with [their] loans," adding that plaintiffs "may not use the procedural device of a class action to bootstrap themselves into standing they lack." Mayo v. GMAC Mortgage, LLC, No. 08-568-CV-W-DGK, slip op. at 7 (W.D. Mo. Mar. 1, 2010) (internal punctuation and citations omitted) (for a copy of the slip opinion, see Dkt. 36 at Ex. C).

Defendants note that the Missouri Court of Appeals, Western District, issued an opinion in Mitchell v. Residential Funding Corp., WD70210, WD70227, WD70244 and WD70263, slip op. available at http://www.courts.mo.gov/file.jsp?id=42518, which addresses standing in the context of a MSMLA case. This intermediate state court decision finding standing based on a state constitutional provision is not authority for interpretation of Article III of the United States Constitution. To the extent Plaintiffs argue that Rule 23 otherwise allows them to bring a claim for which they do not have standing, such an argument violates the Rules Enabling Act. See 28 U.S.C. § 2071(b) (providing that the Federal Rules of Civil Procedure may not "enlarge or modify any substantive right.")

1. Moving Defendants, the Preferred 1996-2 and 1997-1 Trusts, were initial parties to this lawsuit when it was filed in 2000.

2. Following several defeats in Missouri and across the nation on the standing issue, Plaintiffs dismissed from this case defendants who had brought motions to dismiss for lack of standing. One example can be found in Plaintiffs' dismissal of the Preferred 1996-2 and 1997-1 Trusts, which *expressly* stated that the dismissal was due to "prior decisions of this [state] Court sustaining such [standing] motions to dismiss pre-certification (i.e., before the issue of whether to certify the case as a class action has been decided)."[4] See **Ex. A** hereto, Notice of Voluntary Dismissal Without Prejudice (filed 10/4/2002).

3. The class was then certified on January 2, 2003, without the participation of those Trust Moving Defendants. See **Ex. B** hereto, Order Certifying Plaintiff Class.[5]

4. Two and a half months later, on March 14, 2003, Plaintiffs sought leave to rejoin in the case the Preferred 1996-2 and 1997-1 Trust Moving Defendants. In doing so, Plaintiffs asserted that the order certifying the class resolved the standing issue:

> As a result [of the class certification order], the Court will not be faced with the possibility of having to dismiss the Assignee Defendants for "lack of standing," once joined, as was the case before. The "claims" of the Plaintiff Class are also now before the Court; and the Court will resolve these claims by resolving the named Plaintiffs' claims. Hence, there can no longer be any issue over "standing."[]

See **Ex. C** hereto, Motion for Leave to Join Additional "Assignee" Defendants, at 10.

---

[4] In retrospect, this language suggests that Plaintiffs may have intended to use the Class Certification Order to manufacture standing.

[5] Only certain of the authors of the present motion participated in the class certification hearing. While they are currently partners, in 2002-2003, Mr. Pickens and Ms. Greathouse were at different law firms. Mr. Pickens and those of his clients who are not Moving Defendants, as mentioned in footnote 1, were involved in the class certification hearing in 2003. At that time, all Ms. Greathouse's clients had been dismissed from the case and, as such, she did not participate in that hearing.

5. Approximately one year later, Plaintiffs sought leave to initially join the remaining Moving Defendants in the case. See **Ex. D** hereto, Sixth Amended Petition (filed 3/3/04).

6. Regardless of Plaintiffs' position on the effect of the class certification order, Moving Defendants have consistently taken the position that the named Plaintiffs have no standing to bring this lawsuit against them and that the class certification order does nothing to alter this fact. See, e.g., Non-Holder Defendants' Motion to Dismiss Plaintiffs' Fifth Amended Petition for Lack of Standing (filed 8/29/03); Moving Non-Holder Defendants' Motion to Dismiss Plaintiffs' Sixth Amended Petition for Lack of Standing (filed 1/30/06); and Notice of Joinder of Certain Defendants in Non-Holder Defendants' Motion to Dismiss Plaintiffs' Sixth Amended Petition for Lack of Standing and Suggestions in Support (filed 2/10/06). In addition, the Moving Defendants' answers and objections to Plaintiffs' discovery—in 2003, 2006 and 2008—have also taken this position.

7. This Court will soon be presented with the issue of whether Plaintiffs' sleight-of-hand in dismissing and re-joining the Moving Defendants following class certification actually destroyed their defense of lack of standing. In opposition to the Motion to Dismiss for lack of standing (Dkt. 98; see also Dkt. 36), Plaintiffs argue that the Class Certification Order creates standing. Put another way, Plaintiffs argue that the Class Certification Order, in which Moving Defendants were not given an opportunity to participate, effectively destroys the Moving Defendants' Constitutional standing defense.[6]

## II.
## THE REQUIREMENTS OF DUE PROCESS HAVE NOT BEEN MET

Plaintiffs do not deny that Moving Defendants are entitled to due process in the class certification process. Instead, Plaintiffs argue that due process afforded to other defendants is

---

[6] Moving Defendants reiterate that they disagree that the Class Certification Order *could* create standing. See n. 3. Rather, Moving Defendants raise the point merely to highlight how Plaintiffs are manipulating the Class Certification Order to violate the Moving Defendants' fundamental rights.

enough (Dkt. 89 at 3–5) and/or that Moving Defendants should have raised the issue earlier (id. at 5, 9). Plaintiffs' arguments fail. Due process requires that the issue of certification be considered for each defendant *separately*. Further, the Moving Defendants have consistently raised the lack of class certification as to them since they were added to the case with the 2003 and 2004 amendments.

### A. The Certification Issue Must Be Decided as to Each Defendant Separately

As pointed out previously, the determination as to whether a class should be certified is to be made after a defendant-by-defendant inquiry and on a claim-by-claim basis.[7] Moreover, due process requires that defendants to a class action receive notice before a class certification hearing and have an opportunity to be heard on that question.[8] It follows that Moving Defendants' right to due process requires that they receive notice and an opportunity to respond to proceedings that may adversely affect them. See, e.g., Mullane v. Cent. Hanover Bank, 339 U.S. 306, 314 (1950).

### B. It Is Not Too Late For Moving Defendants To Be Afforded Their Due Process Rights

Plaintiffs contend that they should not have to seek class certification against Moving Defendants "at this late date" (Dkt. 89 at 4), suggesting that Moving Defendants should have raised the issue with the state court judge (id. at 5). It could also be noted that Plaintiffs likewise could have raised the issue with the state court judge. However, of even more import is the fact that Moving Defendants *did raise* the issue in their motions to dismiss on standing and via their refusal to provide class-wide discovery. Had Plaintiffs been concerned about the Moving Defendants' position they could have raised it in 2003 when defendants first refused to provide class-wide merits discovery. They did not do so then or in the intervening seven-plus years.

---

[7] See Dkt. 81 at 5; see also Piazza v. Ebsco Indus., Inc., 273 F.3d 1341, 1349, 1355 (11th Cir. 2001) (reversing certification as to one defendant and vacating the certification against other defendants for further proceedings on remand).

[8] See Dkt. 81 at 5–6.

Plaintiffs also suggest that giving Moving Defendants a chance to challenge class certification would be pointless. See Dkt. No. 89 at 5. Like Plaintiffs' argument about the passage of time, this assertion ignores the fact that the right to due process is "absolute." Carey v. Piphus, 435 U.S. 247, 266 (1978). Moreover, claiming that parties who did not challenge class certification would not have made any relevant arguments is presumptuous. No court has ever determined whether Moving Defendants had any contact or relationship with Plaintiffs, and thus whether Plaintiffs have standing to sue Moving Defendants, whether the typicality, adequacy of representation, and predominance requirements are satisfied, and even whether the claims against Moving Defendants are sufficiently numerous to merit class treatment.

To the extent that either the passage of time or the nature of the opposing arguments have any bearing on the issue before the Court, they weigh against Plaintiffs, who bear the burden of proving that class certification is warranted,[9] yet never took any action to obtain a ruling certifying a class against Moving Defendants. Accordingly, Plaintiffs' suggestion that Defendants forfeited their opportunity to challenge the Class Certification Order lacks merit.

## III.
## THE LAW OF THE CASE DOCTRINE DOES NOT APPLY

Plaintiffs also contend that the "law of the case" doctrine means that a class is certified against Moving Defendants. This argument begs the question. The issue before the Court is whether the Class Certification Order ever applied to Moving Defendants. More importantly, the "law of the case" doctrine does not apply to class certification rulings, which may be modified at any time before the entry of judgment. See Fed. R. Civ. P. 23(c)(1)(C). Thus, that doctrine does not warrant Plaintiffs' conclusion that the Class Certification Order must be construed as certifying a class against Moving Defendants.

---

[9] See Dkt. No. 81 at 8 n.4.

## IV.
## THE STATE COURT'S CLASS CERTIFICATION ORDER DOES NOT APPLY TO MOVING DEFENDANTS

As Moving Defendants observe in their initial briefing, other courts have vindicated defendants' rights to be given notice of—and an opportunity to contest—requests for class certification. See, e.g., In re Am. Med. Sys., 75 F.3d 1069, 1086 (6th Cir. 1996); Monsanto Co. v. Davis, 25 S.W.3d 773, 785 (Tex. Ct. App. 2000); Carabini v. Superior Court, 26 Cal. App. 4th 239, 244 (Cal. Ct. App. 1994). Notably, Plaintiffs do not address any of these cases.[10] Further, there are a line of cases which state that ex parte certification violates due process.[11] Defendants' cases—which squarely address the issue before the Court—demonstrate that they are entitled to an opportunity to notice and a hearing before any class is certified against them.

---

[10] Plaintiffs observe that one of the cases cited by Moving Defendants, In re FEMA Trailer Formaldehyde Products Liability Litigation, does not support Moving Defendants' position. Dkt. No. 89 at 6. Plaintiffs are correct that "Defendants have simply misread the case." Id. For this, counsel apologizes. A class was not certified in that case, and thus that decision does not bear on the issues before the Court, although a defendant took the same position as that of the Moving Defendants here. See MDL No. 07-1873, 2008 WL 5480571, at *3 (E.D. La. Dec. 30, 2008).

Plaintiffs also contend that Anderson v. Regents of University of California does not support Moving Defendants' position. Dkt. No. 7. However, that decision states that "plaintiffs and certain [defendants] stipulated to a class certification." 554 N.W.2d 509, 513 n.1 (Wis. App. 1996). Subsequently, another party was "added as a defendant and it has not been certified as a class action." Id. In the latter passage, "it" refers to the newly-added defendant; while the syntax of the sentence is imperfect, the passage suggests that the newly-added defendant was not subject to any class claims.

[11] "Ex parte certification" has been previously recognized as violating due process and has been widely and appropriately criticized as a result. See, e.g., In re Worldcom, Inc., 343 B.R. 412, 419 & n.3 (Bankr. S.D.N.Y. 2006) ("Ex parte certification has attracted much criticism . . . . [The] practice of ex parte certification offends notions of due process and fundamental fairness."); In the Matter of Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig., 333 F.3d 763, 766 (7th Cir. 2003) (referring to "ex parte certification" as "an obvious violation of procedural requirements"); Goodson v. Prudential Ins. Co. of Am., 721 So.2d 1135, 1139–1140 (Ala. 1998) ("Before a trial court can certify a class, upon motion of the plaintiff, it must first give notice to the defendant."); Citicorp Acceptance Co. v. McIlwain, 715 So.2d 199, 205 (Ala. 1997) ("A class should not be certified without notice to the defendant, who may be able immediately and definitively to dispute the plaintiff's allegations.").

Plaintiffs ask the Court to ignore that requirement partly on the basis of Bjerke v. Hughes, where a newly-added defendant was not permitted to challenge an order certifying a class on appeal because it had "not present[ed] any issue concerning certification to the trial court." No. 05-96-00613, 1999 WL 1268058, at *6 (Tex. App. Dec. 30, 1999). Thus, Bjerke stands for an uncontroversial principle of appellate law—preservation of issues—*not* anything about due process. Similarly, Plaintiffs rely on Rattray v. Woodbury County, Iowa—where the court *denied* a motion for class certification. 253 F.R.D. 444, 465 (N.D. Iowa 2008). This decision does not have any bearing on the issue before the Court. Finally, Plaintiffs cite Martello v. City of Ferriday, where the issue before the court was the construction of a provision of the Louisiana Code, and the ruling was based solely on the statutory language. 886 So.2d 645, 647 (La. Ct. App. 2004). For procedural, factual, and legal reasons, none of these rulings dictate the conclusion that Plaintiffs urge.

Most importantly, however, none of those cases focus on the issue before the Court—whether Moving Defendants' right to due process precludes the Court from extending the scope of the Class Certification Order because that order was entered without giving Moving Defendants an opportunity to address the propriety of class certification. Nor do these cases authorize the way Plaintiffs dismissed certain Moving Defendants from the case pending certification in order to create an argument that the Class Certification Order creates standing. Plaintiffs' conduct alone—through their flagrant attempt to prevent the Moving Defendants from protecting themselves—accounts for the procedural posture of this case.

Plaintiffs acknowledge that the Court should review the Class Certification Order if proceeding without such a review would cause a "gross miscarriage of justice." Dkt. No. 89 at 4. The named Plaintiffs claim that Moving Defendants are liable for alleged wrongdoing—by a third party—when the named Plaintiffs have never had any contact or relationship with Moving

Defendants. If this case were not posited as a class action, the named Plaintiffs themselves could never sue the Moving Defendants. Plaintiffs' only basis for bringing claims on behalf of so many people against Moving Defendants is their interpretation of the Class Certification Order, an order entered without any input from Moving Defendants. The potential consequences of this litigation dictate that Moving Defendants should be given an opportunity to litigate the issue of class certification. Denying Moving Defendants that opportunity would be a gross miscarriage of justice.

For the reasons stated above and in their initial briefing on this issue, Moving Defendants ask the Court to clarify its Order, and for any other relief that the Court deems just.

Respectfully submitted,

/s/ Leslie A. Greathouse
Leslie A. Greathouse     MO #48431
    lgreathouse@spencerfane.com
Nathan A. Orr     MO #49836
    norr@spencerfane.com
J. Loyd Gattis     MO #59699
    lgattis@spencerfane.com
SPENCER FANE BRITT & BROWNE LLP
1000 Walnut Street, Suite 1400
Kansas City, Missouri 64106-2140
(816) 474-8100
(816) 474-3216 (facsimile)

*Attorneys for defendants Preferred Mortgage Trust 1996-1, Preferred Mortgage Trust 1996-2, Preferred Credit Trust 1997-1, and Deutsche Bank Trust Company Americas, in its capacity as the trustee of those trusts*

 /s/ Barry L. Pickens
Barry L. Pickens            MO #43379
SPENCER FANE BRITT & BROWNE LLP
1000 Walnut Street, Suite 1400
Kansas City, Missouri 64106-2140
(816) 474-8100
(816) 474-3216 (facsimile)

R. Bruce Allensworth
KIRKPATRICK & LOCKHART LLP
75 State Street
Boston, Massachusetts 02109

Daniel J. Tobin
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
4800 Montgomery Lane, 7th Floor
Bethesda, Maryland 20814

*Attorneys for defendants Litton Loan Servicing LP, Wells Fargo Bank N.A. f/k/a Wells Fargo Bank, MN, N.A. (in its capacity as former trustee for terminated trust Impac Mortgage Pass-Through Certificates 2000-1), and LaSalle National Bank (in its capacity as former owner trustee of terminated trust Impac CMB Trust Series 1999-1)*

## CERTIFICATE OF SERVICE

I hereby certify that on November 24th, 2010, the foregoing was filed using the Court's CM/ECF system, which will notify all registered parties of the filing.

/s/ Barry L. Pickens
Attorneys for defendants