# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

-------------------------------------------------------------)
MICHAEL AND SHELLIE GILMOR, *et al.,*    )
    )
    )  Case No. 4:10-cv-00189-ODS
       Plaintiffs,    )
    )
        v.    )
    )
PREFERRED CREDIT CORPORATION, *et al.,*  )
    )
    )
    )
      Defendants.    )
-------------------------------------------------------------)

## REPLY SUGGESTIONS IN FURTHER SUPPORT OF CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES' MOTION TO DISMISS PLAINTIFFS' SIXTH AMENDED PETITION <u>FOR LACK OF PERSONAL JURISDICTION</u>

DOC ID-15438944.1

2779949.1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ............................................................................................................. 2

THE COURT LACKS PERSONAL JURISDICTION OVER CSFB SECURITIES ................... 2

    A.  The Court Must Consider Independently The Jurisdictional Facts As To CSFB
        Securities. ...................................................................................................... 2

    B.  As An "Intervening Assignee," CSFB Securities Retained No Interest In The
        Loans It Acquired And Immediately Sold. .................................................... 4

    C.  CSFB Securities Does Not "Stand In The Shoes" Of Preferred For Purposes Of
        Personal Jurisdiction. ................................................................................... 7

    D.  Plaintiffs Have Neither Demonstrated Nor Alleged Any Basis To Disregard
        CSFB Securities' Corporate Form. ............................................................... 10

    E.  The Exercise of Jurisdiction Over CSFB Securities Would Not Comport With
        Due Process. ................................................................................................. 13

CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*ARE Sikeston Ltd. P'ship. v. Weslock Nat'l, Inc.*,
   120 F.3d 820 (8th Cir. 1997).............................................................................10

*Am. Southern Ins. Co. v. Hayslett*,
   No. 4:09CV1850 SNLJ, 2010 WL 2680313 (E.D. Mo. July 1, 2010).......................7

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) .......................................................................................13

*Calder v. Jones*,
   465 U.S. 783 (1984) ................................................................................2, 7, 13

*Cannon Mfg. Co. v. Cudahy Packing Co.*,
   267 U.S. 337 (1925) .......................................................................................11

*City of Richmond, Va. v. Madison Mgmt. Group, Inc.*,
   918 F.2d 438 (4th Cir. 1990)..........................................................................10

*Colonial Mortgage Serv. Co. v. Aerenson*,
   603 F. Supp. 323 (D. Del. 1985) .......................................................................5

*Dekalb Genetics Corp. v. Syngenta Seeds, Inc.*,
   No. 4:06CV1191-ERW, 2007 U.S. Dist. LEXIS 60661 (E.D. Mo. Aug. 17, 2007) ...............11

*Delta Sys., Inc. v. Indak Mfg Corp.*,
   4 F. App'x 857 (Fed. Cir. 2001) ........................................................................7

*Easter v. Amer. West Fin.*,
   381 F.3d 948 (9th Cir. 2004)....................................................................5, 6, 8

*Enterprise Rent-A-Car Co. v. U-Haul Int'l, Inc.*,
   327 F. Supp. 2d 1032 (E.D. Mo. 2004)..............................................................4

*Fidelity Fin. Servs., Inc. v. West*,
   640 N.E.2d 394 (Ind. Ct. App. 1994).................................................................6

*Grand Lab. Inc., v. Midcon Labs of Iowa*,
   32 F.3d 1277 (8th Cir. 1994)..........................................................................10

*Hanson v. Denckla*,
   357 U.S. 235 (1958) .......................................................................................13

*Harbor Cold Storage, LLC v. Strawberry Hill, LLC*,

No. C09-1252JLR, 2009 U.S. Dist. LEXIS 103995 (W.D. Wash. Nov. 9, 2009) ....................8

*Huth v. Hillsboro Ins. Mgmt., Inc.*,
    72 F. Supp. 2d 506 (E.D. Pa. 1999) ...........................................................................10

*Iridex Corp. v Synergetics USA, Inc.*,
    474 F. Supp. 2d 1105 (E.D. Mo. 2007) .......................................................................11

*Johnson v. Long Beach Mortgage Loan Trust 2001-4*,
    451 F. Supp. 2d 16 (D.D.C. 2006) ...............................................................................6

*Lakin v. Prudential Sec., Inc.*,
    348 F.3d 704 (8th Cir. 2003) .....................................................................................5, 6

*Lobatto v. Berney*,
    98 Civ. 1984 (SWK), 1999 U.S. Dist. LEXIS 13224 (S.D.N.Y. Aug. 25, 1999) ....................8

*Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*,
    336 F.3d 801 (8th Cir. 2003) .....................................................................................10

*Mid-Missouri Tel., Co. v. Alma Tel. Co.*,
    18 S.W.3d 578 (Mo. Ct. App. 2000) ............................................................................11

*Milburn v. Rosslare Funding, Inc.*,
    No. 98-106 (B) (Cir. Ct. Ark. Sept. 23, 2003), ............................................................5

*Minnesota Mining & Mfg. Co. v. Eco Chem, Inc.*,
    757 F.2d 1256 (Fed. Cir. 1985) ..................................................................................10

*Mitchell v. Residential Funding Corp.*,
    *Nos. WD 70210, 70263, 70277, 70244*, 2010 WL 4720755 (Mo. Ct. App. Nov. 23,
    2010) ....................................................................................................................... 5-6

*Newman v. 1st 1440 Inv., Inc.*,
    No. 89 C 6708, 1990 WL 125369 (N.D. Ill. Aug. 22, 1990) ..........................................5

*Patrick v. FirstSouth Fed. Sav. & Loan Assoc.*,
    512 So.2d 1328 (Ala. 1987) .........................................................................................6

*Provident Nat'l Bank v. California Fed. Sav. & Loan Assoc.*,
    819 F.2d 434 (3d Cir. 1987) .........................................................................................5

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*,
    338 F.3d 773 (7th Cir. 2003) .................................................................................... 8-9

Case 4:10-cv-00189-ODS   Document 139   Filed 12/21/10   Page 4 of 21

*Renaissance Learning, Inc. v. Metiri Group, LLC*,
   No. 07-0413-CV-W-SWH, 2008 U.S. Dist. LEXIS 5766 (W.D. Mo. Jan. 25, 2008)...............2

*Rush v. Savchuk*,
   444 U.S. 320 (1980) ......................................................................................................2

*Schwartz v. Bann-Cor Mortgage*,
   197 S.W.3d 168 (Mo. Ct. App. 2006) ...........................................................................7

*Stanton v. St. Jude Med., Inc.*,
   340 F.3d 690 (8th Cir. 2003)...................................................................................13, 14

*Steinbuch v. Cutler*,
   518 F.3d 580 (8th Cir. 2008)................................................................................... 11-12

*Stevens v. Redwing*,
   146 F.3d 538 (8th Cir. 1998)....................................................................................1, 2

*Thomas v. U.S. Bank Nat'l Assoc. ND*,
   575 F.3d 794 (8th Cir. 2009)...........................................................................................7

*Viasystems, Inc. v. EBM-Papst St. Georgen GMBH & Co. KG*,
   No. 4:09CV02076 ERW, 2010 WL 2402834 (E.D. Mo. June 11, 2010) ................................12

*Vinke v. Bann-Cor Mortgage*,
   No. 01 CV 6313 (Colo. Dist. Ct. Mar. 18, 2003).......................................................6

*Westell v. FirstPlus Home Loan Owner Trust 1998-4*,
   No. GD01-6841 (Pa. Ct. Com. Pl. Aug. 5, 2002) ........................................................5

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980) ............................................................................................ 12-13, 14

**STATUTES**                                                                         **PAGE(S)**

Home Ownership Equity Protection Act ("HOEPA"),
15 U.S.C. § 1639 (2010) ...........................................................................................7, 8

Missouri's Second Mortgage Loan Act ("SMLA"),
Mo. Rev. Stat. §§ 408.231-241 (2010) ......................................................................8

## PRELIMINARY STATEMENT

In 1996 and 1997, Defendant Credit Suisse First Boston Mortgage Securities Corp. ("CSFB Securities") participated in two transactions in which it acquired mortgage loans secured by Missouri properties as part of a "pool" of loans it purchased from Preferred Credit Corporation ("Preferred"). (Affidavit of Fiachra O'Driscoll, dated June 3, 2010 (the "Second O'Driscoll Aff.") ¶¶ 2-4.)[1] At the same time it acquired the mortgage loans, CSFB Securities immediately sold the loans into two trusts, and retained no ongoing interest in the mortgage loans or in the trusts. (*Id.*) These are the only alleged contacts CSFB Securities had with Missouri. Based on those undisputed facts, the Court lacks any basis to exercise personal jurisdiction over CSFB Securities.

Rather than rely on those undisputed facts to assess whether personal jurisdiction may be asserted over CSFB Securities in this case, Plaintiffs instead ask the Court to impute to CSFB Securities all of the jurisdictional facts regarding other parties: Preferred, which sold the loans to CSFB Securities; the Trusts, into which the loans were deposited; the Servicers, that collected payments on the mortgages; and a non-defendant corporate affiliate of CSFB Securities that allegedly held a minority interest in Preferred. Under the Due Process requirements enunciated by the United States Supreme Court, basing personal jurisdiction over CSFB Securities on the jurisdictional facts of others is not permitted.

---

[1] The Second O'Driscoll Aff. was submitted as Exhibit D to the Suggestions in Support of Credit Suisse First Boston Mortgage Securities' Motion to Dismiss Plaintiffs' Sixth Amended Complaint ("CSFB Sugg. in Supp."). Also submitted therewith were, as Exhibit A, the Affidavit of Fiachra O'Driscoll, dated March 5, 2002 (the "First O'Driscoll Aff."), and, as Exhibit C, the Affidavit of Bruce Kaiserman, dated June 3, 2010 (the "Kaiseman Aff."). The Court may consider these affidavits and other documents in determining whether it has personal jurisdiction over Defendant CSFB Securities. *Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir. 1998).

Case 4:10-cv-00189-ODS   Document 139   Filed 12/21/10   Page 6 of 21

Because no facts are alleged against CSFB Securities alone that can provide a basis for this Court's exercise of personal jurisdiction over CSFB Securities, CSFB Securities must be dismissed from this action.

## ARGUMENT

## THE COURT LACKS PERSONAL
## JURISDICTION OVER CSFB SECURITIES

### A.  The Court Must Consider Independently The Jurisdictional Facts
### As To CSFB Securities.

To defeat a motion to dismiss for lack of personal jurisdiction, Plaintiffs must make a *prima facie* showing that (1) Defendant CSFB Securities is subject to the court's jurisdiction under Missouri's long-arm statue, and, if so, that (2) the exercise of jurisdiction would comport with due process.  *Stevens*, 146 F.3d at 543 (citations omitted).  Due process requires that each defendant's contacts with the forum State must be assessed individually. *Calder v. Jones*, 465 U.S. 783, 790 (1984) (citing *Rush v. Savchuk*, 444 U.S. 320, 332 (1980) (jurisdictional requirements "must be met as to *each* defendant over whom a state court exercised jurisdiction.") (emphasis added)); *see also Renaissance Learning, Inc. v. Metiri Group, LLC*, No. 07-0413-CV-W-SWH, 2008 U.S. Dist. LEXIS 5766, at *12 (W.D. Mo. Jan. 25, 2008) ("The exercise of personal jurisdiction violates the due process clause unless the actions of the 'defendant *himself* … creates a 'substantial connection' with the forum state.'") (citations omitted) (emphasis added).

In direct contravention of this authority, Plaintiffs argue that the Court need not independently assess the jurisdictional facts as to each defendant.  (*See, e.g.*, Plaintiffs' Joint Suggestions in Opposition to Certain Defendants' Motions To Dismiss For Lack of Personal Jurisdiction ("Plaintiffs' Opp.") at 27.)  Plaintiffs do not identify any relevant legal authority for this dubious proposition, because they cannot.  Instead, Plaintiffs levy generalized accusations

against all of the defendants, collectively, as participants in securitization transactions which involved assignment of loans secured by properties in Missouri, among many other states.

As the affidavits and documents submitted here demonstrate, there are a number of different, and independent, parties that typically participate in securitization transactions. During the period December 1996 through April 1997, CSFB Securities participated in two such "securitization transactions," as a Depositor. (Second O'Driscoll Aff. ¶ 2; Plaintiffs' Opp. Exs. T, U.) In these securitization transactions, CSFB Securities, as the "Depositor," purchased from Preferred, the "Seller," pools containing more than 13,000 mortgage loans secured by property in more than thirty-five states. (Second O'Driscoll Aff. ¶¶ 2, 4; Plaintiffs' Opp. Ex. T-1 at 24, Ex. U-1 at S-30). Immediately upon purchase of the loan pools, CSFB Securities simultaneously sold the loan pools to the Preferred Trusts, issued Certificates to investors, and used the proceeds from the sale of the Certificates to pay Preferred for the loan pools. (Second O'Driscoll Aff. ¶ 2.) Every step of the securitization transactions involving CSFB Securities occurred outside of Missouri. (Second O'Driscoll Aff. ¶¶ 2, 6-7.)

Notably, and indisputably, CSFB Securities did not retain any past, present, or future economic or financial interest in the loan pools upon their sale to the Preferred Trusts, and it never collected or received any principal, interest, or other fees or charges paid on any of the loans. (*Id.* ¶ 3; Plaintiffs' Opp. Ex. T-2 § 2, Ex. U-2 § 2.) Rather, once each securitization transaction was completed, the Preferred Trusts held the loans from the loan pools in trust for the benefit of the Certificate Holders. (Plaintiffs' Opp. Ex. T-2 § 2, Ex. U-2 § 2.) Payments on those loans were collected by Servicers and deposited into accounts that were also held in trust for the benefit of the Certificate Holders. (Plaintiffs' Opp. Ex. Ex. T-2 § 5, Ex. U-2 § 5.) The Trustee of the Trusts then periodically distributed payments received from the Servicer to the

Certificate Holders. (Plaintiffs' Opp. Ex. T-2 § 6, Ex. U-2 § 6.) The role of CSFB Securities began and ended with the purchase and sale transactions, both of which occurred outside Missouri. (Second O'Driscoll Aff. ¶ 2.) These facts are not disputed, and they do not provide a basis for the Court's exercise of personal jurisdiction over CSFB Securities.

To avoid the dismissal of CSFB Securities based on the foregoing facts, Plaintiffs, relying on *Enterprise Rent-A-Car Co. v. U-Haul Int'l, Inc.*, 327 F. Supp. 2d 1032 (E.D. Mo. 2004), argue that there was such a "close, symbiotic" relationship between the defendants, collectively, that the Court need not separately consider the acts of each defendant for jurisdictional purposes. (Plaintiffs' Opp. at 50-51.) Plaintiffs' reliance on *Enterprise* is misplaced, as the court exercised jurisdiction over the defendant in *Enterprise* only after considering the specific acts of the defendant in Missouri and concluding that, consistent with due process, they justified the exercise of jurisdiction over the defendant. *Enterprise Rent-A-Car Co.*, 327 F. Supp. 2d at 1042-44.

Here, by contrast, were the Court to consider the specific acts of CSFB Securities in Missouri, the Court would find no justification for asserting jurisdiction over CSFB Securities consistent with due process.

**B.     As An "Intervening Assignee," CSFB Securities Retained No Interest In The Loans It Acquired And Immediately Sold.**

Through the uncontroverted affidavits CSFB Securities submitted with its moving brief in support of dismissal for lack of personal jurisdiction (*see* First O'Driscoll Aff.; Second O'Driscoll Aff.; Kaiserman Aff.), CSFB Securities established that (i) it "did not acquire and retain any past, present or future economic interest or financial interest (residual, commissions or otherwise) in the Loan Pools [it sold to] the Preferred Trusts" (Second O'Driscoll Aff. ¶ 3); and (ii) it "never collected or received any principal, interest, or other fees or charges paid on any of

the loans, nor did it derive any form of economic or financial benefit or revenue (either from the borrowers or anyone else) relating to the loans" (*Id.*)  Those facts, which are uncontroverted, do not provide a basis to establish jurisdiction over CSFB Securities.  Not surprisingly, Plaintiffs fail to cite *even a single case from any jurisdiction* to the contrary.

Instead, to avoid dismissal, they raise a series of makeweight arguments, none of which provides any basis to sustain the assertion of jurisdiction over CSFB Securities.  First, Plaintiffs argue that jurisdiction may be sustained over a party that establishes a "lending relationship" with borrowers in the forum state.  (Plaintiffs' Opp. at 33-35 (citing *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704 (8th Cir. 2003); *Provident Nat'l Bank v. California Fed. Sav. & Loan Assoc.*, 819 F.2d 434, 436 (3d Cir. 1987); *Colonial Mortgage Serv. Co. v. Aerenson*, 603 F. Supp. 323 (D. Del. 1985)).  Regardless of the legal merits of such a claim, if any, Plaintiffs' claim must fail as against CSFB Securities for the simple reason that Plaintiffs have not alleged (and cannot allege) that CSFB Securities established a "lending relationship" with borrowers in Missouri.  (Second O'Driscoll Aff. ¶ 7.)

Plaintiffs next argue that jurisdiction exists as to CSFB Securities based on its status as an "assignee defendant," citing *Easter v. Amer. West Fin.*, 381 F.3d 948, 961 (9th Cir. 2004) (exercising personal jurisdiction over trusts that received money from Washington residents); *Milburn v. Rosslare Funding, Inc.*, No. 98-106(B), slip op. at 2 (Cir. Ct. Ark. Sept. 23, 2003) (Plaintiffs' Opp. Ex. L) (exercising personal jurisdiction over defendant that collected interest under mortgages) (citing *Newman v. 1st 1440 Inv., Inc.*, No. 89 C 6708, 1990 WL 125369, at *2 (N.D. Ill. Aug. 22, 1990) (exercising personal jurisdiction over bank that accepted mortgage payments from resident)); *Westell v. FirstPlus Home Loan Owner Trust 1998-4*, No. GD01-6841, slip op. at 7-8 (Pa. Ct. Com. Pl. Aug. 5, 2002) (Plaintiffs' Opp. Ex. M) (exercising

personal jurisdiction over trusts that collected interest and fees from Pennsylvania residents); and *Mitchell v. Residential Funding Corp.*, Nos. WD 70210, 70263, 70277, 70244, 2010 WL 4720755, at *17 (Mo. Ct. App. Nov. 23, 2010) (ruling on various issues on appeal brought by defendants who had "collected and processed" payments of Missouri mortgage borrowers). But unlike the assignee defendants in those cases, it cannot be alleged that CSFB Securities collected or received any principal, interest, or other fees on mortgages made to Missouri borrowers, either directly or through an agent. (Second O'Driscoll Aff. ¶ 3.)

Further, unlike the defendants in the foregoing cases, CSFB Securities, as an "intervening assignee," did not retain any interest in the mortgages it acquired and immediately sold, and did not, and never intended to, retain any right to enforce any interests in the mortgages under Missouri law. *See Vinke v. Bann-Cor Mortgage*, No. 01 CV 6313, slip op. at 1 (Colo. Dist. Ct. Mar. 18, 2003) (Plaintiffs' Opp. at Ex. N) (exercise of personal jurisdiction appropriate over defendants that purchased mortgages encumbering Colorado properties and would have to resort to Colorado courts to foreclose on those mortgages); *Patrick v. FirstSouth Fed. Sav. & Loan Assoc.*, 512 So.2d 1328, 1330-31 (Ala. 1987) (exercise of personal jurisdiction appropriate over mortgage assignee that had foreclosed on subject property); *Fidelity Fin. Servs., Inc. v. West*, 640 N.E.2d 394, 399 (Ind. Ct. App. 1994) (exercise of personal jurisdiction appropriate over defendant where parties had possibility that defendant might foreclose on home); *Easter*, 381 F.3d at 961 ("The deeds of trust convey a property interest in Washington realty, which interest the Trust Defendants expect Washington law to protect."); *Johnson v. Long Beach Mortgage Loan Trust 2001-4*, 451 F. Supp. 2d 16, 30-31 (D.D.C. 2006) (exercise of personal jurisdiction appropriate over mortgage assignee where it claimed ownership of the property after rescission of the mortgage); *see also Lakin*, 348 F.3d at 710.

Here, based on the nature of the simultaneous purchase and sale transactions in which CSFB Securities engaged, it would be absurd to suggest that any of the parties contemplated the possibility that CSFB Securities might foreclose on any of the mortgages during the simultaneous purchase and sale transactions related to the loan pools in question.[2]

## C.    CSFB Securities Does Not "Stand In The Shoes" Of Preferred For Purposes Of Personal Jurisdiction.

In a further misguided effort to assert personal jurisdiction over CSFB Securities based on the alleged acts of others, Plaintiffs argue that all of the assignee defendants, including CSFB Securities, are automatically subject to personal jurisdiction in Missouri because Preferred is subject to jurisdiction here.  Relying on *Schwartz v. Bann-Cor Mortgage*, 197 S.W.3d 168 (Mo. Ct. App. 2006), and *Thomas v. U.S. Bank Nat'l Assoc. ND*, 575 F.3d 794 (8th Cir. 2009), they argue that CSFB Securities, as an assignee, "stand[s] in the shoes" of Preferred under the Home Ownership Equity Protection Act ("HOEPA").  (Plaintiffs' Opp. at 30.)  Aside from the fact that the exercise of personal jurisdiction over CSFB Securities based on the exercise of jurisdiction over Preferred would violate due process under *Calder v. Jones,* among other cases, Plaintiffs' reliance on *Schwartz* and *Thomas* is misplaced insofar as neither case even addressed the issue of personal jurisdiction.  *Schwartz*, 197 S.W.3d 168 (assessing appropriate statute of limitations for Second Mortgage Loan Act ("SMLA") claims asserted against "moneyed

---

[2] To further support their unfounded assertion that the Court may exercise jurisdiction over CSFB Securities, Plaintiffs cite to additional cases discussing the adequacy of business operations within the forum state, none of which are even remotely similar to CSFB Securities' attenuated connection to Missouri.  *See Delta Sys., Inc. v. Indak Mfg Corp.*, 4 F. App'x 857, 860-61 (Fed. Cir. 2001) (remanding for determination of whether regular sales of products to Ohio customers, employment of an "agent" in Ohio, and visits by defendant's employees to Ohio for business purposes were sufficient to confer general jurisdiction); *Am. Southern Ins. Co. v. Hayslett*, No. 4:09CV1850 SNLJ, 2010 WL 2680313, at *3 (E.D. Mo. July 1, 2010) (holding that general personal jurisdiction over a bus company was appropriate where it "regularly and consistently rented buses to groups in this state[.]")

corporation" and its assignees); *Thomas*, 575 F.3d 794 (assessing whether federal law preempted SMLA claims asserted against national bank assignees).

Moreover, the law is clear that "an assignee does not step *automatically* into the shoes of the assignor for purposes of [general] jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 784 (7th Cir. 2003) (citations omitted); *Harbor Cold Storage, LLC v. Strawberry Hill, LLC*, No. C09-1252JLR, 2009 U.S. Dist. LEXIS 103995, at *11-12 (W.D. Wash. Nov. 9, 2009); *Lobatto v. Berney*, 98 Civ. 1984 (SWK), 1999 U.S. Dist. LEXIS 13224, at *28 (S.D.N.Y. Aug. 25, 1999) ("Jurisdiction over an assignee must be based on an assignee's own act and does not arise solely because the assignor may be subject to personal jurisdiction.") (citations omitted). An assessment of the jurisdictional facts, including the facts relating to the assignment, is required, even where HOEPA liability has been asserted. The very cases cited by Plaintiffs, discussed above, demonstrate as much. *See, e.g.*, *Easter*, 381 F.3d at 960-61 (reversing district court's finding that it lacked personal jurisdiction over trust defendants that received payments from forum residents and expected forum law to protect their interests).

The court's analysis in *Purdue*, rejecting the exercise of personal jurisdiction over the assignee defendant in that case, is instructive. In *Purdue*, the non-resident defendant took assignment of a contract from another corporate entity that was clearly subject to personal jurisdiction within the forum. 338 F.3d at 783. The non-resident defendant did not solicit or negotiate the contract at issue with a resident of the forum. *Id.* at 785-86. Rather, the non-resident defendant acquired the contract as part of a larger transaction. *Id.* at 786. The ongoing aspects of the contract did not call for or contemplate the active participation of the non-resident defendant in performing any part of the contract in the forum. *Id.* And, while the contract contained a choice of law provision indicating that the law of the forum would govern any

dispute over the contract, the non-resident defendant had not negotiated that provision, and "more fundamentally" had no reason to believe that acceptance of the contractual rights would necessarily lead to litigation in the forum. *Id.* at 786-87. The Seventh Circuit affirmed the lower court's conclusion that it could not assert personal jurisdiction over the non-resident assignee defendant, despite the jurisdictional contacts of the assignor. *Id.* at 787.

Similarly in this case, CSFB Securities did not solicit or negotiate the second mortgage loans secured by property in Missouri. In fact, CSFB Securities never had any contact with Plaintiffs or with any borrowers whose loans were originated in Missouri and were included in the loan pools CSFB Securities acquired. (Second O'Driscoll Aff. ¶ 7.) Further, as in *Purdue*, CSFB Securities acquired the loans secured by Missouri property as part of two larger transactions, which involved the acquisition of more than 13,000 loans from over thirty-five states. (*Id.* at ¶ 2, 4.) The agreements under which CSFB Securities acquired the loans did not contemplate any ongoing role for CSFB Securities with respect to those loans — CSFB Securities, as a mere "intervening assignee," immediately sold all of the loans it acquired, retained no ongoing interest in those loans, and never collected or received any principal, interest, or other fees or charges paid on any of the loans. (Second O'Driscoll Aff. ¶¶ 2-3; *see also* Plaintiffs' Opp. Ex. U-1 at S-43-44 ("Pursuant to the Pooling and Servicing Agreement, the Depositor [CSFB Securities] will sell, transfer, assign, set over and otherwise convey without recourse to the Trustee in trust … all right, title and interest in and to each Mortgage Loan.").) Finally, because it retained no ongoing interest in the loans, CSFB Securities, like the assignee in *Purdue*, had no expectation of being sued in Missouri. Just as the Seventh Circuit in *Purdue* affirmed the lower court's determination that there was no basis to exercise personal jurisdiction

over the non-resident defendant, so, too, here the Court lacks any basis to exercise personal jurisdiction over CSFB Securities.

**D.  Plaintiffs Have Neither Demonstrated Nor Alleged Any Basis To Disregard CSFB Securities' Corporate Form.**

Plaintiffs also claim in conclusory terms that CSFB Securities is subject to this Court's jurisdiction because "jurisdiction of the predecessor is imputed to the successor, even if the successor has no contacts with the forum."  (Plaintiffs' Opp. at 27 (citing *City of Richmond, Va. v. Madison Mgmt. Group, Inc.*, 918 F.2d 438 (4th Cir. 1990), *Huth v. Hillsboro Ins. Mgmt., Inc.*, 72 F. Supp. 2d 506 (E.D. Pa. 1999), and *Minnesota Mining & Mfg. Co. v. Eco Chem, Inc.*, 757 F.2d 1256 (Fed. Cir. 1985)).)  But Plaintiffs have alleged no facts at all suggesting that CSFB Securities is a "successor" to Preferred, because, of course, no such facts exist.

Under Missouri law, the general rule as to successor liability "is that when all of the assets of a corporation are sold or transferred the transferee is not liable for the transferor's debts and liabilities[,]" with four exceptions.  *Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 803 (8th Cir. 2003) (citing *ARE Sikeston Ltd. P'ship. v. Weslock Nat'l, Inc.*, 120 F.3d 820, 828 (8th Cir. 1997)).  It is clear, for instance, that the transfer of all assets from a predecessor to a successor is a sufficient condition to invoke the general rule and its exceptions; however, the transfer of "substantially all" assets may also suffice, where the successor continued the operations of the predecessor.  *Med. Shoppe Int'l, Inc.*, 336 F.3d at 803-04 (citing *Grand Lab., Inc.  v. Midcon Labs of Iowa*, 32 F.3d 1277, 1281 n.5 (8th Cir. 1994)); *see also City of Richmond, Va.*, 918 F.2d at 450; *Huth*, 72 F. Supp. 2d at 510-11; *Minnesota Mining & Mfg. Co.*, 757 F.2d at 1262.

Here, Plaintiffs have offered no facts whatsoever in support of their idle conclusion that CSFB Securities can be treated as a "successor" to Preferred.  First, CSFB

Securities is not alleged to have acquired all, or even "substantially" all, of Preferred's assets; to the contrary, it is undisputed that CSFB Securities was one of *many* purported assignees of second mortgage loans originated by Preferred.  (*See, e.g.*, Plaintiffs' Opp. at 10-17.)  Second, CSFB Securities is not alleged to have continued the operations of Preferred; to the contrary, it is undisputed that CSFB Securities immediately sold the loans it acquired, and retained no ongoing interest in them.  (Second O'Driscoll Aff. ¶¶ 2-3.)  Plaintiffs' claim of "successor liability" is another red herring that does not change in any way the fact that this Court lacks any legal basis for asserting jurisdiction over CSFB Securities in this case.

Nor have Plaintiffs introduced any facts to support their equally groundless suggestion that CSFB Securities is "akin" to an alter ego of Preferred.  (Plaintiffs' Opp. at 27.) In this regard, the only facts even alleged as to CSFB Securities' relationship with Preferred are that: (i) CSFB Securities acquired loans from Preferred; and (ii) a company with the same ultimate corporate parent as CSFB Securities was a minority stockholder in Preferred. (Plaintiffs' Opp. at 51 (citing Exs. Z-1, Z-2, Z-3, and X-1 at 34).)  These facts, on their face, cannot justify the exercise of personal jurisdiction over CSFB Securities as a matter of law.

In any event, "[u]nder Missouri law, there is a presumption of corporate separateness, and courts do not lightly disregard the corporate form to hold a parent company liable for the [wrongs] of a subsidiary."  *Iridex Corp. v Synergetics USA, Inc.*, 474 F. Supp. 2d 1105, 1109 (E.D. Mo. 2007) (citing *Mid-Missouri Tel., Co. v. Alma Tel. Co.*, 18 S.W.3d 578, 582 (Mo. Ct. App. 2000)); *Dekalb Genetics Corp. v. Syngenta Seeds, Inc.*, No. 4:06CV1191-ERW, 2007 U.S. Dist. LEXIS 60661, at *16 (E.D. Mo. Aug. 17, 2007) ("The Supreme Court has held that where the 'corporate separation, though perhaps merely formal, was real,' it is to be respected.") (quoting *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 337 (1925)).  "Before a

party may obtain personal jurisdiction over a parent company, the plaintiff must show that the parent dominates and controls the subsidiary; mere ownership of a subsidiary is insufficient to justify personal jurisdiction." *Steinbuch v. Cutler*, 518 F.3d 580, 589-90 (8th Cir. 2008) (court lacked personal jurisdiction over Walt Disney Company because it lacked control over its publishing subsidiary); *see also Viasystems, Inc. v. EBM-Papst St. Georgen GMBH & Co. KG*, No. 4:09CV02076 ERW, 2010 WL 2402834, *6-7 (E.D. Mo. June 11, 2010). A plaintiff must prove parent control over a subsidiary "by providing affidavits, testimony, or documents" that show a relationship of domination and control, *Steinbuch*, 518 F.3d at 589, none of which Plaintiffs have provided, or could provide, here.

Rather, Plaintiffs point only to the Corporate Disclosure Statements of CSFB Securities (Plaintiffs' Opp. Ex. Z-3) and its affiliate, Credit Suisse First Boston Mortgage Capital LLC (Plaintiffs' Opp. Ex. Z-2), in an attempt to demonstrate that the two distinct legal entities share the same ultimate parent. Even if true, such facts cannot establish an alter-ego relationship under Missouri law. Therefore, the Court need not even consider Plaintiffs' next baseless suggestion — that because Credit Suisse First Boston Mortgage Capital LLC allegedly held a 13.7% ownership interest in Preferred, it exercised "complete domination" over Preferred. Even if true, that fact still would have no bearing at all on the Court's ability to exercise personal jurisdiction over CSFB Securities.

In sum, Plaintiffs' makeweight arguments provide no basis to disregard the corporate form as to CSFB Securities to justify the assertion of jurisdiction over CSFB Securities by this Court.

**E.     The Exercise of Jurisdiction Over CSFB Securities
            Would Not Comport With Due Process.**

Due process requires that there be sufficient minimum contacts between the nonresident defendant and the forum state such that "maintenance of the suit does not offend the traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980). Sufficient contacts exist when the "defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Id.* at 297 (citation omitted). It is essential that there be "some act by which the defendant purposefully avails itself of the privilege of conducting activities in the forum State, thus involving the benefits and protections of its laws." *Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 693 (8th Cir. 2003) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Purposeful availment requires that the non-resident defendant engage in activity that is "expressly aimed" and "intentionally directed" at forum residents. *Calder*, 465 U.S. at 789-90. A defendant cannot be "haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated contacts,' … or of the 'unilateral activity of another party or a third person[.]'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations omitted).

The only arguable contacts that CSFB Securities had with Missouri are based on CSFB Securities' acquisition and immediate sale of mortgage loans secured by property in more than thirty-five states, including Missouri, during the course of two securitization transactions conducted in New York. (Second O'Driscoll Aff. ¶ 2, 4.) CSFB Securities did not have involvement in making Plaintiffs' loans (or any of the other loans to members of the class), or imposing any of the purportedly excessive fees. (*See* Second O'Driscoll Aff. ¶ 7.) The agreements pursuant to which CSFB Securities acquired the loans and sold them into the Trusts were negotiated and executed in New York, are governed by New York law, and subject the

DOC ID-15438944.1
2779949.1

parties to jurisdiction in New York's courts for the resolution of any disputes relating to the acquisition and sale of those loans. (Second O'Driscoll Aff. ¶ 6, Ex. A § 6.11; *see also* Plaintiffs' Opp. Ex. T-2 § 11.15, Ex. U-2 § 11.15.) CSFB Securities never intentionally sought out loans from Missouri, or any other state, for inclusion in the loan pools it purchased. (Second O'Driscoll Aff. ¶ 5.)[3] Moreover, CSFB Securities did not collect or receive any principal, interest, or other fees or charges paid on any of the loans, nor did it derive any form of economic or financial benefit or revenue (either from the borrowers or from anyone else) relating to the loans. (*Id.* at ¶ 3.) CSFB Securities has not committed *any* acts related to the loans at issue in this case within the state of Missouri. (Kaiserman Aff. ¶ 3.)

What is more, CSFB Securities does not conduct any business in Missouri, is not and has never been authorized, chartered, licensed or otherwise registered to do business in Missouri, and has never had a registered agent in Missouri. (*Id.* ¶ 3.) CSFB Securities has never had an office, employees, bank accounts, an address or a telephone number in Missouri, nor do any employees of CSFB Securities travel to Missouri for business purposes. (*Id.*) CSFB Securities does not own, use or possess any real estate in Missouri. (*Id.*) CSFB Securities does not pay taxes in Missouri, has not negotiated or entered into any contracts in Missouri, and has not advertised or solicited any business in Missouri. (*Id.*) Given these facts — which Plaintiffs do not and cannot dispute — the Court's exercise of jurisdiction over CSFB Securities would be inconsistent with the Due Process considerations articulated by the United States Supreme Court.

---

[3] This is true notwithstanding Plaintiffs' speculation that the Trusts intentionally sought out Missouri loans to diversify the loan pools they acquired and avoid the risk of a "California-heavy" pool. (Plaintiffs' Opp. at 15, 54.) It requires an untenable leap of logic — typical of Plaintiffs' arguments — to conclude that defendants intentionally sought out loans from Missouri, specifically, out of all the states, because allegedly defendants wanted to diversify the loan pools. Even if Plaintiffs are correct, the fact that CSFB Securities did not benefit from or retain any interest in any of the Missouri loans in the loan pools removes any claim that CSFB Securities should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp.*, 444 U.S. at 297.

In light of the foregoing, neither the interests of Missouri nor the convenience of the parties justifies the exercise of personal jurisdiction over CSFB Securities, particularly insofar as those factors are secondary considerations only and are not dispositive.  *See Stanton*, 340 F.3d at 694.

<u>**CONCLUSION**</u>

For the foregoing reasons, CSFB Securities' motion to dismiss the Sixth Petition for lack of personal jurisdiction should be granted.


Dated: December 21, 2010                     Respectfully submitted,

                                            POLSINELLI SHUGHART PC


                                            By:  /s/ Mark A. Olthoff
                                                Mark A. Olthoff (Bar No. 38572)

                                            Twelve Wyanotte Plaza
                                            120 West 12th Street
                                            Kansas City, Missouri 64105-1929
                                            (816) 421-3355
                                            (816) 374-0509 Telecopier

                                            and

                                            Harry S. Davis, Esq.
                                            Marcy Ressler Harris, Esq.
                                            Marguerite E. Gardiner, Esq.
                                            SCHULTE ROTH & ZABEL LLP
                                            919 Third Avenue
                                            New York, New York  10022
                                            (212) 756-2000
                                            (212) 593-5955 Telecopier

                                            Attorneys for Defendant Credit Suisse First Boston
                                            Mortgage Securities Corp.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing document was filed electronically with the above-captioned court, with notice of case activity to be generated and sent electronically by the Clerk of said court (with a copy to be mailed to any individuals who do not receive electronic notice from the Clerk) this 21st day of December, 2010.

/s/ Mark A. Olthoff
Attorney for Credit Suisse First Boston Mortgage
Securities Corp.