THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

MICHAEL AND SHELLIE GILMOR,
et al.,
                Plaintiffs,

vs.

PREFERRED CREDIT CORPORATION,
et al.,
                Defendants.

Case No. 4:10-cv-00189-ODS

**SUGGESTIONS IN OPPOSITION TO COUNTRYWIDE'S MOTION TO RECONSIDER ORDER COMPELLING PRODUCTION OF PRIVILEGED MISSOURI FEE CHART**

Respectfully submitted,

WALTERS BENDER STROHBEHN
& VAUGHAN, P.C.

By:   /s/ Bruce V. Nguyen
    R. Frederick Walters - Mo. Bar25069
    J. Michael Vaughan Mo. Bar24989
    Kip D. Richards - Mo. Bar39743
    David M. Skeens -Mo. Bar 35728
    Karen W. Renwick – Mo. Bar41271
    Garrett M. Hodes - Mo. Bar50221
    Matthew R. Crimmins - Mo. Bar53138
    Bruce V. Nguyen – Mo. Bar52893
    2500 City Center Square
    1100 Main Street
    P.O. Box 26188
    Kansas City, MO64196
    (816) 421-6620
    (816) 421-4747 (Facsimile)
    ATTORNEYS FOR PLAINTIFFS
    AND CLASS COUNSEL

# TABLE OF CONTENTS

I. Background ........................................................................................................................ 1

II. Argument............................................................................................................................ 3

    A. Countrywide has not demonstrated any reason for the Court to reconsider its prior Order requiring Countrywide to produce the Fee Chart. ........................... 3

    B. The Fee Chart is not privileged. ............................................................................... 5

    C. Any claim of privilege with respect to the Fee Chart has been waived by Countrywide. ............................................................................................................. 6

    D. Assuming that the Fee Chart was at one time privileged and that its disclosure was inadvertent, the privilege has still been waived. ............................ 10

    E. The Fee Chart is relevant. ....................................................................................... 12

III. Conclusion ....................................................................................................................... 14

i

# TABLE OF AUTHORITIES

**CASES**

*Casey v. Gentry*,
  1989 WL 128266 (W.D. Mo. July 10, 1989) ..................................................................... 8

*Discount Tobacco Warehouse, Inc. v. Briggs Tobacco and Specialty Co., Inc.*,
  2010 WL 3522476 (W.D. Mo. Sept. 2, 2010) ............................................................. 1, 3

*Gray v. Bicknell*,
  86 F.3d 1472 (8th Cir. 1996) ........................................................................................ 10

*Hardy v. New York News, Inc.*,
  114 F.R.D. 633 (S.D.N.Y. 1987) ................................................................................... 5

*Lipton Realty, Inc. v. St. Louis Housing Authority*,
  705 S.W.2d 565 (Mo. App. 1986) ................................................................................. 6

*Simon v. G.D. Searle & Co.*,
  816 F.2d 397 (8th Cir. 1987) ........................................................................................ 5

**FEDERAL STATUTES, RULES, MISC.**

Fed. R. Civ. P. 26(b)(1) ..................................................................................................... 12

FRE 401 ............................................................................................................................ 13

The Court should deny Defendant Countrywide Home Loans, Inc.'s motion for reconsideration (Doc. No. 259). The Court did not make any mistake of law or facts. No errors, significant or otherwise, were made. The arguments on which the instant motion is based are identical to those that Countrywide made before. There is nothing new that was not previously raised by Countrywide in the discovery statement submitted by Countrywide or during the parties' conference call with the Court on March 30, 2011. The Court has already considered and rejected the arguments raised by Countrywide in its motion for reconsideration. Continued argument of the same issues should not be permitted. *Discount Tobacco Warehouse, Inc. v. Briggs Tobacco and Specialty Co., Inc.*, 2010 WL 3522476 (W.D. Mo. Sept. 2, 2010).

## I.  Background

Countrywide's instant motion for reconsideration pertains to a Fee Chart used in its everyday business to assist its employees determine what, if any, fees are permitted to be charged in connection with a particular loan. Plaintiffs first learned about the Fee Chart from discovery in a similar lawsuit against Countrywide, *Washington v. Countrywide Home Loans, Inc.*, case no. 08-00459-CV-W-FJG, for violations of Missouri's Second Mortgage Loan Act, the same statute at issue in this case. As part of discovery in the *Washington* case, Countrywide produced the partial loan file for the named Plaintiffs, Jerry and Golda Washington. Unknown to Plaintiffs the file produced was not the complete loan file, because Countrywide removed the Fee Chart prior to producing it to Plaintiffs' counsel in *Washington*. Plaintiffs would not have even been aware of the Fee Chart, except that a document created and used by Countrywide that was included in the produced loan file directly referenced the Fee Chart. The Washington loan was subsequently sold and assigned to a third party. As part of the sale, Countrywide transferred the loan file to the third party, which included the Fee Chart that Countrywide is now

withholding as privileged. In fact, during a conference call with the Court on May 11, 2011, the purchasing third party, Household Realty Corporation, acknowledged that it had possession of the Washington loan file and the Fee Chart at issue. Countrywide did not dispute this fact.

In this case, Plaintiffs served discovery to Countrywide on December 3, 2010. Countrywide objected to the production of the Fee Chart at issue by asserting the attorney-client privilege. In its privilege log,[1] Countrywide identified the Fee Chart it was withholding as the same document that it withheld in the *Washington* case.[2] Accordingly, Plaintiffs scheduled a conference with the Court regarding Countrywide's withholding of the Fee Chart.

The parties submitted their respective statement of the discovery dispute, and a conference call was conducted by the Court on March 30, 2011. Upon reviewing the parties' written statement and having heard the arguments of counsel, the Court subsequently entered an Order requiring Countrywide to produce the Fee Chart. In the Order, the Court determined that the Fee Chart was not privileged, that if it was once privileged, that the privilege had been waived, and that the Fee Chart was relevant to Plaintiffs' claims. (Doc. No. 239).

---

[1] Countrywide served its responses to Plaintiffs' discovery requests on January 10, 2011. At that time, Countrywide failed to provide a privilege log even though it was asserting the attorney-client privilege. It was not until March 1, 2011 that Countrywide provided the privilege log to Plaintiffs.

[2] Countrywide references three separate order entered in the *Washington* case that it purports establishes that the Fee Chart was privileged. In the first order, dated Feb. 23, 2009, the Court listed arguments raised by Countrywide as to why it should not be required to produce the Fee Chart, including privilege, relevancy, and because the discovery was premature since discovery was phased in that case. The Court indicated that it agreed that the Fee Chart did not need to be produced at that time, but did not identify which of the arguments on which it based its decision. Given that the Court stated that it would "not compel discovery of the fee charts **at this time**," see Countrywide Ex. 1, it appears that the Court did not order Countrywide to produce the document because it was premature to produce the Fee Chart given the phasing of discovery in that case. The two other orders did not specifically address the privilege issue. Therefore, Plaintiffs suggest that the *Washington* court did not actually make a specific ruling regarding the applicability of the attorney-client privilege. Moreover, Countrywide previously made the Court aware of the rulings in Washington. These arguments are nothing new and do not serve as a basis to reconsider the Court's Order. Lastly, even if the Washington court had decided that the fee chart was privileged, Plaintiffs' respectfully suggest that the ruling was erroneous.

However, rather than comply with the Court's Order, Countrywide refused to produce the Fee Chart as ordered by the Court. Nearly a month after the Court entered its Order, Countrywide still had not produced the Fee Chart as ordered. During that time, Countrywide never indicated to the Court or to Plaintiffs that it had no intention of complying with the Court order. Instead, and on April 26, 2011, Countrywide filed the instant motion to reconsider.

## II. Argument

The Court should deny Countrywide's Motion for Reconsideration. Procedurally, Countrywide cannot establish that it is entitled to reconsideration, as Countrywide has already made the same arguments it now makes and the Court has already considered and rejected the arguments presented in the instant motion. Second, Countrywide's substantive arguments are without merit, as the Court has already determined the Fee Chart is not privileged and is relevant.

### A. Countrywide has not demonstrated any reason for the Court to reconsider its prior Order requiring Countrywide to produce the Fee Chart.

A Court may reconsider an interlocutory order **only if** the moving party "demonstrates (1) that it did not have a fair opportunity to argue the matter previously, and (2) that granting the motion is necessary to correct a significant error." *Discount Tobacco*, 2010 WL 3522476, *2. The Court "has an interest in judicial economy and ensuring respect for the finality of its decisions, values which would be undermined if it were to routinely reconsider its interlocutory orders." *Id.* This is exactly what Countrywide is now attempting to do. Having previously argued its position and the Court having rejected its arguments, Countrywide is seeking a second bite at the apple. The Court should not permit Countrywide to continually litigate matters that have already been decided by the Court – such efforts simply forestall matters in the case and require the parties to dedicate additional time and resources to issues already determined.

3

Countrywide asserts that it is entitled to reconsideration of the Court's Order requiring it to produce the Fee Chart. However, it cannot even satisfy the burden of showing that it did not have a fair opportunity to argue the matter previously. Nowhere in its motion does Countrywide acknowledge that it had the opportunity to provide the Court with its written statement concerning the dispute over the Fee Chart that has been withheld from Plaintiffs or that it actually did provide the Court with such a statement. Moreover, Countrywide conveniently ignores and fails to acknowledge that it participated in a conference call with the Court on March 30, 2011. During that conference with the Court, Countrywide had the opportunity to argue its position, including the arguments that it advances in the instant motion, i.e., that the Fee Chart was privileged, that it had not waived the privilege, and that the Fee Chart was not relevant to Plaintiffs' claims. The Court considered those arguments and rejected them. Therefore, Countrywide has failed to satisfy its burden of establishing that it did not have a fair opportunity to argue the matter previously and that therefore the Court should reconsider its Order.

Countrywide also cannot establish that the Court made an error, let alone a significant error. *Id.* (mere error not sufficient to reconsider interlocutory order and that significant error must be established by party seeking reconsideration). "The Court's previous orders were all designed to keep this litigation focused and moving along in a timely fashion. While Movants may not agree with these rulings-they would obviously prefer to expand the scope of the litigation and delay a trial-that does not mean the previous rulings were wrong." *Id.* Countrywide has not established that it is entitled to reconsideration and the Court should deny the motion on that basis alone. Moreover, as the following sections demonstrate, no error, let alone a significant one, was made in ordering Countrywide to produce the Fee Chart.

### B. The Fee Chart is not privileged.

The Court has already determined that the Fee Chart withheld by Countrywide is not protected by the attorney-client privilege. (Doc. No. 239). That ruling should remain undisturbed. Countrywide's continued assertion of privilege is unavailing, as the Fee Chart sought by Plaintiffs is directly used in Countrywide's everyday business. The Fee Chart shows what fees are allowable for a particular loan and is regularly consulted by Countrywide's employees as part of its regular business operations. As such, the Fee Chart was prepared solely to assist Countrywide employees conduct Countrywide's mortgage business and is therefore not privileged. This is true even if the Fee Chart was prepared by counsel. *See Hardy v. New York News, Inc.*, 114 F.R.D. 633, 646 (S.D.N.Y. 1987) ("the fact that documents prepared for a business purpose were also determined to be of potential use in pending litigation does not turn those documents into work product of confidential information between client and attorney.").

Accepting Countrywide's position would effectively insulate parties to litigation from producing relevant documents solely because they were prepared by counsel and allow for abuse of the attorney-client privilege. "Legal departments are not citadels in which public, business or technical information may be placed to defeat discovery and thereby ensure confidentiality." *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 403 (8th Cir. 1987). Business documents sent to corporate officers and employees ... do not become privileged automatically. *Id.*

Moreover, despite the self-serving declaration provided by Countrywide, it is not clear that the Fee Chart was even prepared by counsel, as the Court recognized in its Order: "it is not even clearly established that the chart itself was prepared by an attorney." (Doc. No. 239). In fact, the Court should note that the privilege log originally provided by Countrywide to Plaintiffs' counsel in the *Washington* case unequivocally stated the author of the Fee Chart was "Countrywide's Production Quality & Compliance Department." Ex. 1. Notably, that privilege

5

log did not identify the author of the withheld Fee Chart as an attorney. Accordingly, there is significant doubt as to the veracity of Countrywide's current self-serving declaration. Because the Fee Chart was prepared by "Countrywide's Production Quality & Compliance Department," and not by an attorney, as indicated by Countrywide in the privilege log provided in the *Washington* case, there is no basis for Countrywide to assert the attorney-client privilege.[3]

### C. Any claim of privilege with respect to the Fee Chart has been waived by Countrywide.

To the extent that the Fee Chart is protected by the attorney-client privilege, that privilege has been waived by Countrywide by its voluntary disclosure of such information to third parties. Information and communications are privileged to the extent they are kept confidential. The attorney-client privilege is waived when the information is disclosed to a third party. *Lipton Realty, Inc. v. St. Louis Housing Authority*, 705 S.W.2d 565, 570 (Mo. App. 1986). The Court has already addressed Countrywide's attorney-client privilege arguments and determined that "even if the chart was privileged at one time, the privilege has been waived. The chart is apparently not kept confidential, as it is included in loan files that are subsequently sold and is disclosed to third parties." (Doc. No. 239).

Plaintiffs became aware of Countrywide's Fee Chart through discovery in a similar lawsuit involving violations of Missouri's Second Mortgage Loan Act, *Washington v. Countrywide Home Loans, Inc.*, case no. 08-00459-CV-W-FJG. The named plaintiffs, Jerry and

---

[3] Countrywide attempted to cure this defect by altering its privilege log in the Washington case. In the Amended Privilege Log, Countrywide altered the author of the Fee Chart to "Countrywide's Legal Department and Production Quality & Compliance Department." Ex. 1, p. 6. The alteration makes suspect and unbelievable that an attorney did in fact created the Fee Chart as it now asserts. If the legal department did in fact create the Fee Chart as Countrywide now belatedly asserts, why was the legal department not originally identified as the author in the initial privilege log provided in the *Washington* case? The privilege log provided by Countrywide in this case, attached as Ex. 2, does maintain that the Fee Chart was authored by "Countrywide's Legal Department and Production Quality & Compliance Department."

Golda Washington, obtained a second mortgage loan from Countrywide. After the loan was made to the Washingtons, Countrywide sold the loan to a third party, Household Realty Corporation ("Household"), and transferred the loan file to that third party as part of the assignment and sale of the loan. The loan file transferred to Household, the purchasing third party, included the Fee Chart that Countrywide now asserts is protected by the attorney-client privilege. During a conference call with the Court on May 11, 2011, both Countrywide and Household acknowledged that the Fee Chart was in the loan file transferred from Countrywide to Household, and therefore the Fee Chart, or a copy thereof, now claimed to be privileged by Countrywide ***is actually in the possession of a third-party***. Such disclosure to a third party constitutes a waiver of the attorney-client privilege to the extent such a privilege exists.

Because Countrywide cannot and does not dispute that the Fee Chart was disclosed to a third party, Countrywide now asserts the inclusion of the Fee Chart in the loan file and the subsequent disclosure of the Fee Chart to Household was supposedly inadvertent. This *ad hoc* explanation is without merit and supported merely by a self-serving declaration. Not only is the declaration self-serving, it is also wholly unsupported and conclusory. Only one paragraph in the entire declaration is dedicated to discussing the issue of Countrywide's allegedly inadvertent disclosure. See Countrywide Ex. 4, ¶8. The court should note that the declaration provides absolutely no foundational facts or knowledge of the declarant that would support or make her conclusion based on the requisite personal knowledge. For instance, the declaration makes no reference to any policy, procedure, or manual in connection with how loan files are assembled or how loan files are kept or transmitted when sold by Countrywide and its employees. Moreover, while the declarant asserts that she has personal knowledge of the facts stated in the declaration, there is no indication that she had any involvement in the actual origination of loans, actual

7

assembly of loan files, actual storage or retention of loan files, actual sale or transfer of loan files to third parties, or that she has any knowledge of what in fact goes into a loan file. Noticeably absent from the declaration is any factual statement about the declarant's knowledge of what documents are intended to be included in the loan file, how the loan file is stored and maintained by Countrywide, or what documents are transferred as part of the sale and assignment of loans by Countrywide to third parties. Without having worked specifically for Countrywide in connection with the assembly of loan files, the storage or maintenance of loans files, or the sale of loan and the transmission and delivery of loan files to purchasing third parties, the declarant lacks the requisite knowledge to testify regarding whether the inclusion of the Fee Chart was in fact inadvertent as Countrywide belatedly argues. *See Casey v. Gentry*, 1989 WL 128266, *3 (W.D. Mo. July 10, 1989) (affidavit inadequate where it does not set forth specific facts based on personal knowledge). As such, the declaration provides no legally cognizable factual support for Countrywide's assertion that the disclosure was inadvertent.

Moreover, the declarant's unsupported legal conclusion that the disclosure of the Fee Chart was inadvertent is directly contradicted by Countrywide's own written policies and procedures. In fact, Countrywide's own written policy and procedure required that the Fee Chart be added to and included as part of the loan file itself. Attached as Ex. 3 is Countrywide's own document that memorializes its policy and procedure, titled "Funding Review Checklist for CFC," and which is used by Countrywide as part of their mortgage loanorigination business. The document is a checklist for a series of steps that Countrywide required its employees to follow with respect to eachand every loan originated by Countrywide. For the Court's convenience, Plaintiffs have highlighted specific language on the checklist that is relevant to the Countrywide's belated and *ad hoc* explanation that it inadvertently disclosed the Fee Chart to

8

third parties. The highlighted language explicitly provides that Countrywide employees are required to: "Review the applicable Fee Chart for finance charges and allowable fees (for 2nd, and HELOCS, ***print Fee Chart and include in loan file***)." (Ex. 3 (emphasis added)). The highlighted language could not be any clearer. It demonstrates that the Fee Chart's inclusion in the loan file was not inadvertent as Countrywide asserts; in fact, the checklist makes clear that Countrywide intended[4], ***and in fact required***, the Fee Chart to be included in the loan file.

Additionally, the only evidence in this case is that Countrywide complied with its policy that the fee chart should be placed in the loan file and would be delivered as part of the loan file to the purchasing third party when the loan was sold. That is exactly what occurred with the Washington loan and exactly what Countywide intended by its written policy. There is nothing inadvertent about Countrywide's conduct when it did exactly what its procedures required.

Also, notable is Countrywide's failure to identify any specific policy or procedure for removing the Fee Chart from the loan file when the loan is sold to a third party. Given that there is a specific corporate directive that required Countrywide employees to "***print Fee Chart and include in loan file***," and given its current assertion that the Fee Chart's inclusion in the loan file delivered to third parties upon sale was inadvertent, where is the corresponding direction to remove the Fee Chart from the loan file when the loan is sold to a third party? Countrywide has not come forward with any policy or procedure or any proof whatsoever that required the Fee Chart to be removed from the loan file before the loan file was delivered to a purchasing third party. The lack of such proof by Countrywide is telling by its absence. Indeed, the fact that

---

[4] The reason why Countrywide desired and intended the Fee Chart to be included as part of the loan file transferred to third parties has a very practical business consideration. Countrywide was not a "portfolio" lender; it sold all loans it originated. In order to sell the loans, and as customary in the industry, Countrywide typically provided representations and warranties regarding the loan's compliance with state and federal law. To provide assurance of a review and compliance to a purchaser, Countrywide placed the fee chart it used to review loans for compliance in the loan file that it sold to a third party.

9

Countrywide has failed to identify any such procedure to remove the Fee Chart when the loan is sold is proof in and of itself that Countrywide had no intention of keeping the Fee Chart confidential from third parties, such as those who purchased loans from it.

As the foregoing makes clear, Countrywide's unsupported, conclusory assertion that the Fee Chart's inclusion in the loan file transferred to the purchasing third party was inadvertent is without merit, wholly contradicted by its own policies and procedures, and is simply untrue. The assertion is nothing more than a belated effort to prevent Plaintiffs from obtaining relevant documents that Countrywide never intended to be confidential. Simply put, there is no basis for concluding that the Fee Chart was ever privileged, given that it never intended it to remain confidential and was in fact disclosed to third parties that purchased loans from Countrywide.

> **D.    Assuming that the Fee Chart was at one time privileged and that its disclosure was inadvertent, the privilege has still been waived.**

Assuming *arguendo* that the Fee Chart is somehow privileged and assuming that the disclosure of the Fee Chart to third parties such as Household was somehow inadvertent (which it was not), that is still insufficient to protect the Fee Chart from discovery by Plaintiffs. That is so because even in situations where there actually has been an inadvertent disclosure of privileged materials, the attorney-client privilege can still be waived. Several factors are to be weighed to determine if a waiver has still occurred even when the disclosure was truly inadvertent:

> "(1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of document production, (2) the number of inadvertent disclosures, (3) the extent of the disclosures, (4) the promptness of measures taken to rectify the disclosure, and (5) whether the overriding interest of justice would be served by relieving the party of its error."

*Gray v. Bicknell*, 86 F.3d 1472, 1484 (8th Cir. 1996).

10

First, Countrywide has not made any attempt to demonstrate the reasonableness of any precautions that it took to prevent disclosure of the Fee Chart; in fact, it has not identified ***any*** precautions whatsoever that it took to prevent inadvertent disclosure. That failure persists even though Countrywide had an opportunity to do so when this issue first came before the Court and even though it had an opportunity to do so in the instant motion for reconsideration. Obviously the reason that Countrywide has not done so is because there were no such precautions against disclosure of the Fee Chart. The simple fact is that the Fee Chart always was intended to be disclosed to third parties and never to remain confidential. Given the corporate instruction to employees to "***print Fee Chart and include in loan file***," it is clear that disclosure to third parties was intended and in fact required by Countrywide.[5]

Second, the number of times and the extent to which Countrywide has disclosed the Fee Chart is another factor that demonstrates that the attorney-client privilege should be deemed waived even if the disclosure was somehow inadvertent as Countrywide claims. As stated above, the checklist provided by Countrywide to its employees required that the employees "***print Fee Chart and include in loan file***" for each of its loans. Therefore, it is clear that the Fee Chart was disclosed to third parties each time Countrywide sold and transferred a loan to another entity. Countrywide is a major player in the mortgage industry and originates and services thousands of loans across the country. Even if a fraction of the loan files transferred by Countrywide contained the Fee Chart, the number and extent of the disclosure would be tremendous. Yet, the disclosure was not so limited, as Countrywide generally, and without any support, asserts.

---

[5] As stated above, the disclosure to third parties was intended and desired by Countrywide as a means of making the loans more attractive to potential purchasers, because Countrywide could point to the Fee Chart in representing to such purchasers that the loans were compliant with state and federal law, even if the loans actually were not compliant.

Lastly, Countrywide has made no attempt to demonstrate that it took prompt measures to rectify the so-called inadvertent disclosure. This is because Countrywide has taken no such measures, let alone prompt measures. It should now be readily apparent that Countrywide has not requested the return of the fee charts from either Household or the thousands of other purchasers who have the chart because Countrywide has no basis for such a request. This case is the perfect example of Countrywide failing to take any measure to rectify its so-called inadvertent disclosure to Household. At the very least, Countrywide has been aware that the Fee Chart was part of the Washington loan file and was in the possession of Household and its attorneys since February 2009 when Plaintiffs' counsel sought the production of the Fee Chart in that case and asserted that it was in Household's possession. As Countrywide and Household acknowledged during the conference call with the Court of May 11, 2011, the Washington loan file, and the Fee Chart, is still in Household's and its attorneys' possession. Therefore, at least two years has passed and Countrywide still chooses to permit Household to retain possession of the Fee Chart. Clearly, if the document was in fact privileged and never meant to be disclosed, Countrywide should have "clawed" it back from Household years ago. No such measures were taken and Household still has the Fee Chart. Accordingly, the foregoing demonstrates that, even if the Court is to believe Countrywide's general and unsupported assertion that its disclosure of the Fee Chart to third parties was somehow inadvertent, the privilege has still been waived.

E.     **The Fee Chart is relevant.**

Countrywide's final argument is that the Fee Chart is somehow not relevant to the claims in this lawsuit, an argument that this Court has already addressed and rejected: "the Court overrules both Defendants' objections to relevancy." (Doc. No. 239).Permissive discovery under the federal rules is broad. Under Rule 26, parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).

12

Relevant Evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FRE 401. The minimal requirement of relevancy has been met here despite Countrywide's assertion to the contrary.

Plaintiffs' claims are premised on violations of Missouri's Second Mortgage Loan Act, and that illegal fees were "charged, contracted for or received" in connection with Plaintiffs' loans. Therefore, it is clear that the Fee Chart is highly probative in establishing that the loans serviced by Countrywide violated the Second Mortgage Loan Act in that illegal fees were charged, contracted for or received in connection with the loans. Countrywide's own motion demonstrates the relevancy of the Fee Chart by acknowledging that it was used to determine "what fees could be charged in connection with second mortgage loans." (Doc. 259, p.2).

In an effort to avoid the inescapable conclusion that the Fee Chart is relevant and should be produced, Countrywide argues that the Fee Chart was used when it originates loans, not when it services loans.[6] That is a distinction that makes no difference in the case. Countrywide previously made this same argument to the Court, and the Court correctly rejected it: "Discovery designed to ascertain a defendant's knowledge regarding the legality and illegality of fees may lead to admissible evidence. It does not matter if the defendant's knowledge was obtained for and utilized in a different context – the information may still be relevant." (Doc. 239).

As this Court recognized, the Fee Chart is highly probative and relevant to show what fees can be permissibly charged, and therefore is relevant to prove that a particular loan is illegal.

---

[6] Countrywide also asserts that the Fee Chart is not relevant, because it was found in the loan file for borrowers not party to this suit. Countrywide's argument misses the point – it is not the Fee Chart from the Washington loan file that it necessarily being sought; instead, it is the Fee Chart that Countrywide uses as part of its everyday business that it should produce. It just so happens that Plaintiffs' counsel learned about the Fee Chart from discovery in a separate lawsuit. However, the Fee Chart is not peculiar and limited to those borrowers. Instead, it was a form document that Countrywide used as part of its everyday mortgage business for thousands of loans.

13

The fact that a loan may be serviced by Countrywide, but not originated, does not affect what fees can be charged in connection with the loan. For example, if a document states that a certain fee is illegal, that is relevant evidence to prove that a loan is illegal, whether or not that document was used on the origination versus the servicing side of a business.

Countrywide next asserts that its employees "who serviced loans could not access the Missouri Fee Chart," and therefore the Fee Chart did not provide any particular knowledge to these employees. However, Countrywide clearly ignores and avoids the simple fact that *it* knew that only certain fees could be "charged, contracted for or received" in connection with Plaintiffs' loans. Countrywide's own knowledge is not lessened by the fact that some of its employees lacked that knowledge.

Moreover, if Countrywide was using the Fee Chart only in its origination, but not in its servicing business, that demonstrates that it knew that certain fees could not be "charged, contracted for or received" in connection with second mortgage loans but consciously ignored that fact in servicing loans. The Fee Chart proves that Countrywide knew that the fees associated with Plaintiffs' loans were illegal under Missouri's Second Mortgage Loan Act, yet Countrywide ignored the statutory rights of the affected borrowers. The institutional knowledge as demonstrated by the Fee Chart, combined withCountrywide's continued charging, contracting for, and/or receipt of the illegal fees demonstrates its conscious disregard for the rights of the borrowers in this case. Such evidence is clearly relevant to Plaintiffs' claims for punitive damages. Therefore, there is no basis for Countrywide's relevancy argument.

## III. Conclusion

Countrywide has failed to establish that it is entitled to reconsideration, as it has already made the same arguments that it makes now, nor can Countrywide establish that the Court made

14

an error, let alone a significant error in ordering Countrywide to produce the Missouri Fee Chart. Furthermore, the arguments raised by Countrywide are without substantive merit. For the foregoing reasons, the Court should deny Countrywide's motion to reconsider (Doc. No. 259), and award Plaintiffs attorneys fees, because Plaintiffs were forced to expend additional time and resources in opposing the instant motion, which raised no new issues for the Court to consider, and for any other relief the Court deems just and proper.

Dated: May 13, 2011

Respectfully submitted,

WALTERS BENDER STROHBEHN
& VAUGHAN, P.C.

By: _/s/ Bruce V. Nguyen_
    R. Frederick Walters - Mo. Bar25069
    J. Michael Vaughan Mo. Bar24989
    Kip D. Richards - Mo. Bar39743
    David M. Skeens -Mo. Bar 35728
    Karen W. Renwick – Mo. Bar41271
    Garrett M. Hodes - Mo. Bar50221
    Matthew R. Crimmins - Mo. Bar53138
    Bruce V. Nguyen – Mo. Bar52893
    2500 City Center Square
    1100 Main Street
    P.O. Box 26188
    Kansas City, MO64196
    (816) 421-6620
    (816) 421-4747 (Facsimile)
    ATTORNEYS FOR PLAINTIFFS
    AND CLASS COUNSEL

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this the 13th day of May, 2011, I electronically filed the above and foregoing document with the Clerk of Court using the Court's ECF system, which will send notification of said filing to all counsel of record who are ECF participants.

_/s/ Bruce V. Nguyen_

15