IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MICHAEL AND SHELLIE GILMOR, *et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 4:10-cv-00189-ODS<br>) |
| PREFERRED CREDIT CORPORATION, *et al.*, | )<br>)<br>) |
| Defendants. | )<br>) |

<u>**SUGGESTIONS IN SUPPORT OF REAL TIME RESOLUTIONS, INC.'S
MOTION TO DISMISS PLAINTIFFS' SEVENTH AMENDED COMPLAINT**</u>

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ..................................................................................................1

II. STATEMENT OF FACTS ........................................................................................................3

    A. Plaintiffs Obtained Loans From Preferred Credit ............................................................3
    B. The Seventh Complaint ....................................................................................................4

III. ALL CLAIMS AGAINST REAL TIME SHOULD BE DISMISSED PURSUANT
     TO RULE 12(B)(6) .................................................................................................................5

IV. PLAINTIFFS' CLAIM AGAINST REAL TIME IS TIME BARRED AND
     SHOULD BE DISMISSED.....................................................................................................6

    A. The Statute of Limitations on Plaintiffs' Claims Was Triggered In 1997 .......................8
    B. The Statute of Limitations on Plaintiffs' Claims Was Triggered in 2000 at the Latest ..8
    C. That The Named Plaintiffs May Not Have Known of Real Time's Involvement
       Is Without Effect ...............................................................................................................9

V. PLAINTIFFS LACK STANDING TO ASSERT A CLAIM AGAINST REAL TIME .......9

    A. The Standing Doctrine Requires That Plaintiff Suffered An Actual
       Injury Caused By Real Time That Is Redressable By The Court .....................10

    B. Class Certification Does Not Cure The Jurisdictional Defect of
       Lack of Standing .............................................................................................................11

        1. Procedural Rules Governing Class Certification Do Not Create Or Expand The
           Court's Jurisdiction ..................................................................................................11

        2. Attempts To Create Standing Through The Class Action Procedural Device
           Have Been Rejected Uniformly In Second Mortgage Cases .....................12

        3. Plaintiffs' Attempt To Establish Standing By Alleging A "Juridical Link"
           Between The Defendants Is Also Unavailing ............................................14

VI. CONCLUSION.......................................................................................................................15

# TABLE OF AUTHORITIES

### Cases

Alexander v. PBS Lending Corp., 800 N.E.2d 984, 991-92 (Ind. Ct. App. 2003) ....................... 13

Amer. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 554 (1974) ....................................................... 6

Ashcroft v. Iqbal, 556 U.S. ___, 129 S.Ct. 1937 (2009) ............................................................ 5, 6

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)................................................................ 5, 6

Berry v. GMAC-Residential Funding, Corp., No. 01-2713-GB, 2002 U.S. Dist. Lexis
    15362 (W.D. Tenn. July 31, 2002) ....................................................................................... 14

Brooks v. Terra Funding, Inc., No. 01-2946, 2002 U.S. Dist. Lexis 15363 (W.D. Tenn.
    July 31, 2002)....................................................................................................................... 14

Buchanan v. Century Fed. Sav. & Loan Ass'n, 393 A.2d 704 (Pa. Super. Ct. 1978) ................... 12

Business Men's Assurance Co. v. Graham, 984 S.W.2d 501 (Mo. 1999) (en banc) ...................... 8

Canady v. Allstate Ins. Co., No. 96-0174-CV-W-2, 1997 WL 33384270 (W.D. Mo.
    Jun. 19, 1997)....................................................................................................................... 11

Cheek v. FirstPlus Bank, No. 01-CV-0044 (W.D. Va. Nov. 14, 2002)........................................ 13

Cooter & Gell v. Hartmax Corp., 496 U.S. 384 (1990) ............................................................... 12

Dash v. FirstPlus Home Loan Trust 1996-2, 248 F. Supp. 2d 489
    (M.D.N.C. 2003).................................................................................................................. 13

Dunden v. FirstPlus Bank, No. CIV. 01-408-GPM, 2002 U.S. Dist. LEXIS 28454 (S.D.
    Ill. Apr. 29, 2002) ........................................................................................................... 14, 15

Easter v. Am. W. Fin., 381 F.3d 948 (9th Cir. 2004) ............................................................. 13, 15

Faircloth v. Fin. Asset Sec. Corp. Mego Mortgage Homeowner Loan Trust,
    87 F. App'x 314 (4th Cir. 2004)....................................................................................... 8, 14

Faircloth v. Nat'l Home Loan Corp., 313 F. Supp. 2d 544 (M.D.N.C. 2003) ........................ 13, 15

Frazee v. Partney, 314 S.W.2d 915 (Mo. 1958) ............................................................................ 9

Frazier v. Preferred Credit, No. 01-2714-GB, 2002 U.S. Dist LEXIS 19416 (W.D. Tenn.
    July 31, 2002)....................................................................................................................... 14

Griffin v. Dugger, 823 F.2d 1476 (11th Cir. 1987) ...................................................................... 12

Haas v. Pittsburgh Nat'l Bank, 526 F.2d 1083 (3d Cir. 1975) ..................................................... 12

Hurwitz v. R.B. Jones Corp., 76 F.R.D. 149 (W.D. Mo. 1977).................................................... 12

Jackson v. Resolution GGF OY, 136 F.3d 1130 (7th Cir. 1998).................................................. 14

Johnson v. GEICO Cas. Co., 673 F. Supp. 2d 244 (D. Del. 2009)............................................... 14

Johnson v. Teasdale, 456 F. Supp. 1083 (W.D. Mo. 1978).......................................................... 12

Koger v. Hartford Life Ins. Co., 28 S.W.3d 405 (Mo. Ct. App. 2000)......................................... 12

Landmann v. Bann-Cor, No. 01-CV-00417-DRH, 2004 U.S. Dist. LEXIS 17898 (S.D. Ill. Feb. 26, 2004) ............................................................................................... 14, 15

Lewis v. Casey, 518 U.S. 343 (1996) ................................................................................ 11

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) ................................................ 10, 11

Mayo v. GMAC Mortgage, LLC, No. 08-568-CV-W-DGK .................................... 6, 10, 12

Miller v. Pac. Shore Funding, 224 F. Supp. 2d 977 (D. Md. 2002)................................. 13

Moore v. United States, 173 F.3d 1131 (8th Cir. 1999) ................................................... 12

Mull v. Alliance Mortgage Banking Corp., 219 F. Supp. 2d 895 (W.D. Tenn. 2002)................................................................................................ 13

Owen v. General Motors Corp., No. 06-4067-CV-C-NKL, 2006 WL 2808632 (W.D. Mo. Sept. 28, 2006)....................................................................................... 11

Parris v. Sovereign Bank, No. 98-CV-2876-DA (W.D. Tenn. Aug. 28, 2002)............................. 14

Rivera v. Wyeth-Ayerst Labs., 283 F.3d 315 (5th Cir. 2002) ......................................... 12

Shockley v. Sander, 720 S.W.2d 418 (Mo. Ct. App. 1986)................................................ 9

Shroyer v. McCarthy, 769 S.W.2d 156 (Mo. App. Ct. 1989)............................................. 9

Sierra Club v. Robertson, 28 F.3d 753 (8th Cir. 1994)................................................... 11

Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26 (1976) .............................................. 11

Steel Co. v. Citizens For A Better Env't, 523 U.S. 83 (1998) ......................................... 12

Street v. PSB Lending Corp., No. 01-2751-GV, 2002 U.S. Dist. Lexis 15365 (W.D. Tenn. July 31, 2002); ...................................................................................................... 14

U.S. Life Title Ins. Co. v. Brents, 676 S.W.2d 839 (Mo. Ct. App. 1984) ......................... 7

Varner v. Peterson Farms, 371 F.3d 1011 (8th Cir. 2004)................................................ 7

Warth v. Seldin, 422 U.S. 490 (1975)............................................................................... 11

Weiner v. Bank of King of Prussia, 358 F. Supp. 684 (E.D. Pa. 1973).......................... 12

Weit v. Continental Ill. Nat'l Bank & Trust Co. of Chicago, 641 F.2d 457 (7th Cir. 1981)............................................................................................................ 12

Williams v. FirstPlus Home Loan Trust 1996-2, 209 F.R.D. 404 (W.D. Tenn. 2002)................. 13

Wong v. Bann-Cor Mortgage, No. 10-1038-CV-W-FJG ........................................... 6, 10

Wycoff v. Menke, 773 F.2d 983 (8th Cir. 1985) ................................................................ 7

**Statutes**

Mo. Rev. Stat. §§ 408.231-.241 ................................................................................ 1, 3, 4

U.S. Const. art. III............................................................................................................ 10

**Rules**

Federal Rule of Civil Procedure 8 ............................................................................................... 5

Federal Rule of Civil Procedure 12 ............................................................................................. 5

Federal Rule of Civil Procedure 82 ........................................................................................... 12

# I.
# PRELIMINARY STATEMENT

On June 27, 2000, Plaintiffs Michael and Shellie Gilmor (the "Gilmors") brought this class action against Preferred Credit Corporation ("Preferred Credit"), a California-based lender, alleging that Preferred Credit, in October 1997, violated Missouri's Second Mortgage Loan Act (Mo. Rev. Stat. §§ 408.231-.241, hereinafter "MSMLA") by assessing against the Gilmors excessive and/or improper fees, costs and settlement charges (collectively, "Fees") when Preferred Credit made a second mortgage loan to the Gilmors. Original Petition for Damages (the "Petition") ¶¶ 15-17. The Gilmors sought to impose against Preferred Credit statutory penalties, including disgorgement of all interest charged on the loan, and an order declaring the loan "interest-free" for its remaining term. The Gilmors also originally sued subsequent purchasers of loans originated by Preferred Credit in Missouri. Petition ¶ 7.

The Gilmors have amended their petition seven times in the last decade, to add dozens of other defendants. The additional defendants all are alleged to be (a) "the holders or previous holders of the Second Mortgage Loans made in Missouri by Preferred Credit . . .[,] (b) the trustees, agents and/or servicers of these persons or entities that purchased or were assigned and/or now hold or previously held said Second Mortgage Loans and/or (c) the trustees, agents, servicers and holders of said Second Mortgage Loans." Seventh Amended Complaint, dkt. 258, filed 4/25/11 ("7th Compl.") at ¶ 1.

Various amendments also added additional Named Plaintiffs to the case. The most recent amendment added Named Plaintiffs in response to this Court's holding that new or additional class representatives may cure potential jurisdictional or standing problems. Order and Opinion Denying Defendants' Motions to Dismiss, dkt. 175, dated 1/13/11 ("MTD Order") at 13 ("the

Court deems it prudent to include additional representatives to help insure that the requirements of Rule 23 are met.")

However, the seventh amendment did not just add new Named Plaintiffs, it also added new defendants, some of which have the exact same standing problem addressed in the MTD Order. For example, Defendant Real Time Resolutions, Inc. ("Real Time") was added as a defendant in the Gilmors' seventh amendment in April 2011—almost 11 years after the lawsuit was originally filed. Despite the Court's Order, this amendment does not include a Named Plaintiff with ties to Real Time. This addition is based on Real Time's purported status as an "investor defendant" who allegedly "purchased and/or is or was an owner, assignee (holder) of and/or the trustee and/or servicer and/or agent of an entity, trust, fund or pool owning and/or holding one or more of the Second Mortgage Loans made to the Plaintiffs and the Plaintiff Class including, <u>inter alia</u>, the mortgages and servicing rights for the loans, which the Investor Assignees thereafter held, owned and/or serviced, and which Second Mortgage Loans were originated and/or made by Preferred Credit (or a finder or broker on its behalf) . . . ." 7th Compl. at ¶ 78 (certain capitalization omitted).

There are several threshold reasons why Real Time cannot be held liable for Preferred Credit's alleged violations of the MSMLA. First, the Complaint fails to state facts sufficient to state a claim over Real Time. Second, the acts that give rise to Plaintiffs' claims allegedly occurred in or about 1997, at the closing of the subject second mortgage loans. Or, at the very latest, they occurred by June 27, 2000, when this lawsuit was filed. Regardless of which date applies, it is clear from the face of the Seventh Complaint, filed in April 2011, that any claim against Real Time is time barred.

Third, the Named Plaintiffs lack standing to assert a claim against Real Time. Plaintiffs' lack of standing, a jurisdictional defect, arises from the fact that the Named Plaintiffs never had

any connection to or relationship with Real Time. Certification of a plaintiff class—a procedural mechanism that occurred while Real Time was not even a party to this litigation and without Real Time having had any opportunity to be heard as to the propriety of class certification—does not and cannot cure Plaintiffs' jurisdictionally defective claim as a matter of law. This is especially true in light of the fact that the Court already directed the Plaintiffs to add a Named Plaintiff for each defendant. MTD Order at 13.

For each of these reasons, Plaintiffs' MSMLA claim against Real time must be dismissed.

## II.
## STATEMENT OF FACTS[1]

**A.    Plaintiffs Obtained Loans From Preferred Credit**

According to the Seventh Complaint, in 1997 the Named Plaintiffs borrowed money from Preferred Credit (7th Compl. ¶¶ 98, 108, 118, 128, 138, 148, 158, 168, 178, 188, 198, 208, 218, 228, 238, 248, 258) and gave Preferred Credit deeds of trust on their homes to secure repayment of their loans (Id. ¶¶ 100, 110, 120, 130, 140, 150, 160, 170, 180, 190, 200, 210, 220, 230, 240, 250, 260). Only Preferred Credit is alleged to have solicited, negotiated or made loans to the Named Plaintiffs. Only Preferred Credit is alleged to have set the allegedly excessive Fees related to the loans. No defendant other than Preferred Credit is alleged to have had any role in originating the subject loans or setting the allegedly excessive Fees; this task was performed exclusively by Preferred Credit.

The Fees about which Plaintiffs complain were payable and <u>actually paid</u> to Preferred Credit at the time the respective loans closed in 1997. 7th Compl. at ¶¶ 101, 111, 121, 131, 141,

---

[1] The well-pleaded factual allegations set forth in the Seventh Complaint are accepted as true for purposes of this motion only, without prejudice to Real Time's right to controvert such allegations at a later stage of this proceeding.

151, 161, 171, 181, 191, 201, 211, 221, 231, 241, 251, 261. The Seventh Complaint specifically alleges that after making the loans to the Named Plaintiffs, Preferred Credit sold or assigned the Named Plaintiffs' loans to one or more specifically identified defendant(s). 7th Compl. at ¶¶ 105, 115, 125, 135, 145, 155, 165, 175, 185, 195, 205, 215, 225, 235, 245, 255, 265. The Seventh Complaint does not allege that any Named Plaintiff's loan was assigned to Real Time. In fact, it contains no specific allegations about Real Time at all. The Seventh Complaint is completely devoid of defendant-specific allegations regarding Real Time.

**B.     The Seventh Complaint**

The Seventh Complaint asserts only one cause of action against Real Time—a claim for violation of the MSMLA. This claim is based on the allegedly excessive and purportedly illegal Fees that Preferred Credit charged to Named Plaintiffs (and the other class members) in connection with the origination of their loans <u>by Preferred Credit</u>.

The Seventh Complaint is replete with specific allegations of Preferred Credit's wrongdoing (<u>see, e.g</u>., 7th Compl. at ¶¶ 89, 91-96) and of other specific defendants' actions in receiving payments on particular Named Plaintiffs' loans (<u>see</u> <u>e.g</u>., 7th Compl. at ¶¶ 98-267). By contrast, there are no specific allegations of wrongdoing by Real Time.

Despite any allegation of wrongdoing by Real Time, Plaintiffs seek disgorgement of all "improperly collected charges" (7th Compl. at p. 72), regardless of whether those charges were paid to Preferred Credit or to a subsequent purchaser. They also seek, among other items, a declaration that the loans can be rescinded. <u>Id</u>. at p. 72. Finally, and without any basis in fact or law, Plaintiffs seek punitive damages against Real Time, together with attorneys' fees, interest and costs. <u>Id</u>. at pp. 72-77.

# III.
## ALL CLAIMS AGAINST REAL TIME SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6)

It is necessary that Plaintiffs distinguish among the various defendants and otherwise satisfy <u>as to each separate defendant</u> the pleading requirements of Federal Rule of Civil Procedure 8 as clarified by <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) and <u>Ashcroft v. Iqbal</u>, 556 U.S. ___, 129 S.Ct. 1937 (2009). Plaintiffs have failed to assert factual allegations against Real Time that are sufficient to meet these pleading standards.

A "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." <u>Twombly</u>, 550 U.S. at 554. To avoid a Rule 12(b)(6) dismissal, the complaint must include "enough facts to state a claim to relief that is plausible on its fact." <u>Id</u>. at 570. The complaint does not have to provide detailed factual allegations, but it does have to provide more than naked assertions. <u>Iqbal</u>, 129 S.Ct. at 1949. Because Plaintiffs have failed to state grounds for relief against Real Time, their claims against it should be dismissed with prejudice pursuant to Rule 12(b)(6).

In their Seventh Complaint, Plaintiffs name Real Time as a defendant, but allege no specific acts or omissions by Real Time. <u>See</u> 7th Compl. To the contrary, Plaintiffs' specific allegations are all about other defendants (<u>see</u> <u>supra</u> § II.A.) or are generic and conclusory (7th Compl. at ¶ 78). Plaintiffs never expressly describe how Real Time ever had anything to do with Plaintiffs' loans, much less set out a factual basis for holding it personally liable for violations of the MSMLA. This fact alone mandates dismissal of Real Time.

In two other local cases, Judge Kays and Judge Gaitan have each held that similarly generic allegations of individual liability did not meet <u>Twombly's</u> and <u>Iqbal's</u> pleading

standards.  Mayo v. GMAC Mortgage, LLC, No. 08-568-CV-W-DGK, Order dated 3/1/2010, dkt. 160 ("Mayo Order") and Wong v. Bann-Cor Mortgage, No. 10-1038-CV-W-FJG, Order dated 6/9/2011, dkt. 311 ("Wong Order").  The plaintiffs in these two cases were represented by the same counsel that represents Plaintiffs in this action.  Dismissing the insufficient allegations, Judge Kays found that the allegations in that case—which are strikingly similar to the allegations here—were "too conclusory to state a claim for relief."  Mayo Order at 5.  He concluded that "[a]sserting a list of legal conclusions that have been fused together with a disjunctive conjunction and brought against a collection of defendants . . . is not enough to state a claim for relief that is plausible on its face" under Iqbal.  Id.  Similarly, Judge Gaitan agreed with the defendants in Wong, holding that the amended complaint was "not pled with sufficient particularity.  The use of 'and/or' phraseology and lumping of all defendants together into one category results in the reader being unable to determine the exact theory of liability as to each separate defendant."  Wong Order at 20-21.

Here, as in Mayo and Wong, plaintiffs have failed to offer specific allegations explaining how Real Time supposedly violated the MSMLA.  The generic and conclusory allegations in the Seventh Complaint fail to meet the pleading standards of Twombly and Iqbal.  As such, the Seventh Amendment should be dismissed as to Real Time.

### IV.
### PLAINTIFFS' CLAIM AGAINST REAL TIME IS TIME BARRED AND SHOULD BE DISMISSED

Through the tardy institution of their claim against Real Time, Plaintiffs posit that they can bring a claim under the MSMLA at any time as long as they managed to stay unaware of the identity of their target defendant.  This is not the law.  Statutes of limitation serve the dual "policies of ensuring essential fairness to defendants and of barring a plaintiff who has slept on his rights . . . . '".  Amer. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 554 (1974) (citations

omitted). The law does not allow Plaintiffs to wait 14 years after their transactions and 11 years after they first instituted suit to add additional defendants.

A motion to dismiss properly raises the defense of a statute of limitations when it is clear from the face of the complaint that the action is time barred. Varner v. Peterson Farms, 371 F.3d 1011, 1016 (8th Cir. 2004) (citing Wycoff v. Menke, 773 F.2d 983, 984-85 (8th Cir. 1985)). Such is the case here. The acts that give rise to Named Plaintiffs' claim against Real Time allegedly occurred in or about 1997, at the closing of Plaintiffs' second mortgage loans. The acts to which the liability attached occurred in 1997. Plaintiffs clearly knew of their claims in 2000, when they instituted this lawsuit. Yet Plaintiffs failed to add Real Time as a party for 11 years.

Section 516.130(2) provides that "[a]n action upon a statute for a penalty or forfeiture, where the action is given to the party aggrieved," must be brought within three years. Plaintiffs' claim for disgorgement or restitution under the MSMLA constitutes a claim for a "penalty or forfeiture" within the meaning of § 516.130(2). U.S. Life Title Ins. Co. v. Brents, 676 S.W.2d 839, 842 (Mo. Ct. App. 1984) (MSMLA is a penal statute). Consequently, a three-year limitations period should be applied to Plaintiffs' claim. However, even if a six-year statute of limitations governs Plaintiffs' MSMLA claim against Real Time (MTD Order at 14), Plaintiffs' claim is time barred.

If the triggering event happened in 1997 then the six-year statute ran in 2003. If it did not occur until Plaintiffs discovered certain facts, those facts had to be known when the case was filed in 2000, resulting in the statute running in 2006. Either way, Plaintiffs brought their claims against Real Time more than six years after they were triggered.

Further, under Missouri law discussed below, the fact that Plaintiffs may not have known the identity of all potential defendants does not delay the accrual of the cause of action. Plaintiffs' claim against Real Time is time barred and must be dismissed.

7                                                                                                    WA 2830001.1

Case 4:10-cv-00189-ODS   Document 326   Filed 06/27/11   Page 12 of 20

**A.      The Statute of Limitations on Plaintiffs' Claims Was Triggered In 1997**

Under Missouri law, a statute of limitations begins to run when a claim for relief accrues. "[A] cause of action accrues when damages are capable of ascertainment. Business Men's Assurance Co. v. Graham, 984 S.W.2d 501, 507 (Mo. 1999) (en banc)." MTD Order at 15.

Not only does the Seventh Complaint allege that the Plaintiffs' loans were originated in 1997, but it is also specifically asserts that the allegedly excessive Fees "were payable and paid at the time that the loans were funded" (7th Compl. at 95), were "payable at closing" (id. at 101, 111, 121, 131, 141, 151, 161), and/or were "payable . . . at or before closing . . ." (id. at 107, 117, 127, 137, 147, 157, 167, 187, 197, 207, 217, 227, 237, 247, 257, 267). Therefore, as alleged, the statute of limitations for Plaintiffs' claim accrued at the origination of the loans in 1997, when the allegedly excessive Fees were charged to Plaintiffs and incorporated into the principal balances of their loans. Faircloth v. Fin. Asset Sec. Corp. Mego Mortgage Homeowner Loan Trust, 87 F. App'x 314, 319-20 (4th Cir. 2004) (claims of second mortgage loan recipients accrued at closing when plaintiffs paid allegedly excessive fees).

Since Plaintiffs did not sue Real Time until 2011, 13 to 14 years after the origination of their loans, Plaintiffs' claims against Real Time are untimely.[2]

**B.      The Statute of Limitations on Plaintiffs' Claims Was Triggered in 2000 at the Latest**

Even if this Court does not believe Plaintiffs' claims were triggered in 1997 when the loans were closed and the fees were paid, they had to have been triggered by 2000 when the lawsuit was filed. As Real Time was added to this case <u>11 years</u> after the lawsuit was filed, the six-year statute of limitations ran at the very latest in 2006.

---

[2] This Court has already ruled that Plaintiffs' claims were not tolled and that the doctrine of relation back does not apply to this case. MTD Order at 15, n.9.

### C. That The Named Plaintiffs May Not Have Known of Real Time's Involvement Is Without Effect

In an order previously entered in this case, the Court noted that under Missouri law a cause of action accrues when the damages are capable of ascertainment. MTD Order at 15. However, without citing to any authority, the Court also suggested that the Plaintiffs must also be able to know the identity of all the entities from which redress can be obtained before a cause of action accrues. Id. Respectfully, Real Time notes that the Court's second point is not quite accurate. Missouri law provides no exception which tolls the statute of limitations during a plaintiff's attempts, or failure to attempt, to learn the identify of a defendant. Shroyer v. McCarthy, 769 S.W.2d 156, 161 (Mo. App. Ct. 1989); Frazee v. Partney, 314 S.W.2d 915, 916-17, 920-21 (Mo. 1958) (the inability to identify the correct defendant within the limitations period did not delay accrual of the cause of action). In Shroyer, the plaintiff amended his pleading to add a physician as a defendant in a case pending against that physician's employer. The Court held that the statute of limitations was not tolled while the plaintiff attempted to learn the identity of the physician and affirmed the trial court's summary judgment ruling. Id. See also Shockley v. Sander, 720 S.W.2d 418, 421 (Mo. Ct. App. 1986).

In the 11 years that this case has been pending, or in the 13-14 years since the Plaintiffs' obtained their Preferred Credit loans, they have certainly had sufficient time to discover the identity of the companies involved with their loans. There can simply be no excuse for the Plaintiffs not to have discovered the existence of all defendants until this time.

### V. PLAINTIFFS LACK STANDING TO ASSERT A CLAIM AGAINST REAL TIME

The Named Plaintiffs cannot now, nor could they ever, bring a claim against Real Time under the MSMLA because the Named Plaintiffs lack standing to sue Real Time.

Plaintiffs admit that it was Preferred Credit—not Real Time—that originated the loans made to the Named Plaintiffs and charged the allegedly unlawful Fees at issue. See supra § II.A. Moreover, Plaintiffs admit that Real Time never held or purchased the Named Plaintiffs' loans. Id. By Plaintiffs' own admission, then, Real Time did not cause the Named Plaintiffs' alleged injuries. For this very reason, Judge Kays, presiding over the related Mayo case, dismissed for lack of standing claims against defendants that never held the named plaintiffs' loans; the fact that those defendants "allegedly violated some third-parties [sic] rights under the [Missouri] SMLA does not give Plaintiffs standing to litigate those third-parties [sic] claims." Mayo Order at 8.[3]

The Clay County Circuit Court's certification of a statewide plaintiff class on January 2, 2003—an issue on which Real Time never had an opportunity to be heard—does not cure Plaintiffs' standing deficiencies as a matter of law. Simply, certification of a plaintiff class—a procedural mechanism in aid of judicial efficiency—does not and cannot cure a jurisdictionally defective claim. The same deficiencies remain, even after class certification, and compel dismissal of Plaintiffs' claim here against Real Time.

The standing doctrine is derived from Article III of the United States Constitution, which restricts federal court jurisdiction to "cases and controversies." U.S. Const. art. III, § 2; Mayo Order at 6. See also MTD Order at 11.

## A. The Standing Doctrine Requires That Plaintiff Suffered An Actual Injury Caused By Real Time That Is Redressable By The Court

To satisfy the "irreducible constitutional minimum" of standing, Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992), plaintiffs must establish three elements: (1) injury-in-fact; (2) traceability; and (3) redressability. Id. at 560-61; see also MTD Order at 11-12. Plaintiffs

---
[3] Cf. MTD Order at 13; Wong Order at 13.

satisfy the injury-in-fact requirement only if they have suffered an invasion of a legally protected interest that is concrete and particularized, as well as actual or imminent. Id. at 560. The traceability requirement requires plaintiffs to demonstrate that the injury they have suffered was caused by the challenged conduct of the defendants, and not by the independent action of some third party. Id. Finally, redressability requires plaintiffs to show that it is likely, and not merely speculative, that a favorable decision will remedy the injury. Id. at 561. Because the Seventh Complaint fails to allege any basis for standing to bring claims against Real Time, all claims against Real Time should be dismissed with prejudice.

### B.    Class Certification Does Not Cure The Jurisdictional Defect of Lack of Standing

The certification of a plaintiff class does not alter the jurisdictional requirement that the named Plaintiffs must have standing to sue each defendant.

#### 1.    Procedural Rules Governing Class Certification Do Not Create Or Expand The Court's Jurisdiction

In class actions, courts must examine the claims of the named plaintiffs to ascertain whether those plaintiffs have suffered any injury traceable to the conduct of a particular defendant. Warth v. Seldin, 422 U.S. 490, 499 (1975); Canady v. Allstate Ins. Co., No. 96-0174-CV-W-2, 1997 WL 33384270, at *22 (W.D. Mo. Jun. 19, 1997) (dismissing plaintiffs' third amended class action complaint because "plaintiffs lack standing to bring claims against defendants against whom they have alleged no direct injury"), aff'd, 162 F.3d 1163, 1163 (8th Cir. 1998). That a plaintiff files the case as a class action "adds nothing to the question of standing," Lewis v. Casey, 518 U.S. 343, 357 (1996) (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 40 n.20 (1976)), because standing "relates to the justiciability of a case and cannot be waived by the parties." See Sierra Club v. Robertson, 28 F.3d 753, 757 n.4 (8th Cir. 1994); see also Owen v. General Motors Corp., No. 06-4067-CV-C-NKL, 2006 WL 2808632, at

*6-7 (W.D. Mo. Sept. 28, 2006) (dismissing claims brought on behalf of putative class because plaintiff failed to demonstrate they "'personally would benefit in a tangible way from the court's intervention'") (quoting Steel Co. v. Citizens For A Better Env't, 523 U.S. 83, 104 n.5 (1998)); Johnson v. Teasdale, 456 F. Supp. 1083, 1088 n.2 (W.D. Mo. 1978) ("Plaintiff's lack of standing to press his individual claims dooms his attempt to prosecute this case as a class action.")[4]

The fact that a plaintiff class was certified in this action—before Real Time was added to the case—has no bearing on the standing analysis, because rules of procedure, such as the rules governing class certification, do not create or expand the subject matter jurisdiction of the Court. Fed. R. Civ. P. 82; Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 391 (1990); Moore v. United States, 173 F.3d 1131, 1134 (8th Cir. 1999); Hurwitz v. R.B. Jones Corp., 76 F.R.D. 149, 159 (W.D. Mo. 1977) ("The plaintiff's standing to bring an action against each defendant named in the Complaint must be established independently of Federal Rule of Civil Procedure 23.") Plaintiffs' attempt here to litigate matters outside of the scope of the Court's jurisdiction is unconstitutional.

### 2. Attempts To Create Standing Through The Class Action Procedural Device Have Been Rejected Uniformly In Second Mortgage Cases

The overwhelming weight of authority confirms that the jurisdictional deficiency of lack of standing cannot be cured by class certification. It was on this very basis that Judge Kays, in Mayo, 2010 U.S. Dist. LEXIS 51517, at *11-12, dismissed defendants that never held the named

---

[4] See also Koger v. Hartford Life Ins. Co., 28 S.W.3d 405, 410 (Mo. Ct. App. 2000); Buchanan v. Century Fed. Sav. & Loan Ass'n, 393 A.2d 704, 714 n.20 (Pa. Super. Ct. 1978) ("[N]amed plaintiff who has had no dealings with a particular defendant may not maintain a class action against that defendant."); Weiner v. Bank of King of Prussia, 358 F. Supp. 684, 705 (E.D. Pa. 1973) ("[A] plaintiff may not use the procedural device of a class action to bootstrap himself into standing he lacks under the express terms of the substantive law."); Rivera v. Wyeth-Ayerst Labs., 283 F.3d 315, 321 (5th Cir. 2002); Griffin v. Dugger, 823 F.2d 1476, 1483 (11th Cir. 1987); Weit v. Continental Ill. Nat'l Bank & Trust Co. of Chicago, 641 F.2d 457, 469 (7th Cir. 1981); Haas v. Pittsburgh Nat'l Bank, 526 F.2d 1083, 1096 n.18 (3d Cir. 1975).

plaintiffs' loans, explaining that "a plaintiff has standing to sue for violation of state lending law only those entities that have some direct contractual relationship with plaintiff's loan; for example, an entity that holds their mortgage or services their loan." Id. (citing Dash v. FirstPlus Home Loan Trust 1996-2, 248 F. Supp. 2d 489, 503-04 (M.D.N.C. 2003) and Mull v. Alliance Mortgage Banking Corp., 219 F. Supp. 2d 895, 908-09 (W.D. Tenn. 2002). Judge Kays further explained that the "rationale behind these rulings is that absent a contractual relationship with a defendant, a plaintiff cannot show that his injuries are traceable to the defendant's conduct." Mayo, 2010 U.S. Dist. LEXIS 51517, at *11-12 (citing Dash, 248 F. Supp. at 503). Casting a lawsuit as a class action does not cure a standing defect. Id.

Courts outside Missouri likewise have dismissed claims in virtually identical second mortgage actions where the named plaintiffs lacked standing to sue defendants with whom they had no contractual or other relationship. See, e.g., Alexander v. PBS Lending Corp., 800 N.E.2d 984, 991-92 (Ind. Ct. App. 2003) ("simply framing a lawsuit as a class action does not remove Named Plaintiffs' burden to demonstrate standing"); Williams v. FirstPlus Home Loan Trust 1996-2, 209 F.R.D. 404, 414 (W.D. Tenn. 2002) ("[E]ven assuming that this court were to certify plaintiffs as a class, this would not cure the fact that named plaintiffs do not have standing against any defendant who does not actually hold their loans."); Cheek v. FirstPlus Bank, No. 01-CV-0044, slip op. at 3 (W.D. Va. Nov. 14, 2002) (Ex. 1) ("Even if this Court were to certify the class, this would not alter the fact that the Named Plaintiffs do not, and never did, have a controversy with these Relevant Defendants."); Miller v. Pac. Shore Funding, 224 F. Supp. 2d 977, 995-96 (D. Md. 2002), aff'd, 92 F. App'x 933 (4th Cir. 2004) ("In a multi-defendant action or class action, the named plaintiffs must establish that they have been harmed by each of the defendants."); accord Faircloth v. Nat'l Home Loan Corp., 313 F. Supp. 2d 544 (M.D.N.C. 2003), aff'd sub nom. Faircloth, 87 F. App'x 314; Easter v. Am. W. Fin., 381 F.3d 948, 962 (9th

Cir. 2004); Landmann v. Bann-Cor, No. 01-CV-00417-DRH, 2004 U.S. Dist. LEXIS 17898, at *13 (S.D. Ill. Feb. 26, 2004); Parris v. Sovereign Bank, No. 98-CV-2876-DA, slip op. at 4 (W.D. Tenn. Aug. 28, 2002) (Ex. 2); Berry v. GMAC-Residential Funding, Corp., No. 01-2713-GB, 2002 U.S. Dist. Lexis 15362, at *32 (W.D. Tenn. July 31, 2002); Brooks v. Terra Funding, Inc., No. 01-2946, 2002 U.S. Dist. Lexis 15363, at *36 (W.D. Tenn. July 31, 2002); Frazier v. Preferred Credit, No. 01-2714-GB, 2002 U.S. Dist LEXIS 19416, at *28 (W.D. Tenn. July 31, 2002); Street v. PSB Lending Corp., No. 01-2751-GV, 2002 U.S. Dist. Lexis 15365, at *47 (W.D. Tenn. July 31, 2002); Dunden v. FirstPlus Bank, No. CIV. 01-408-GPM, 2002 U.S. Dist. LEXIS 28454, at *11-12 (S.D. Ill. Apr. 29, 2002) (Ex. 3); see also Jackson v. Resolution GGF OY, 136 F.3d 1130, 1132 (7th Cir. 1998).

Like the named plaintiffs in the array of second mortgage cases nationwide, Named Plaintiffs in the instant action lack standing to assert a claim against Real Time because Real Time did not hold the Named Plaintiffs' loans.

### 3. **Plaintiffs' Attempt To Establish Standing By Alleging A "Juridical Link" Between The Defendants Is Also Unavailing**

Plaintiffs have alleged that Real Time may have purchased loans made by Preferred Credit to borrowers other than Named Plaintiffs in the "course of business dealing with" Preferred Credit and/or by participating in a "secondary market" comprised of businesses like the assignee defendants'. 7th Compl. ¶¶ 82-81, 87. These allegations do nothing to cure Plaintiffs' lack of standing. The "juridical link" doctrine, which allows a class action to proceed where plaintiffs as a group have suffered an identical injury at the hands of several parties related by way of conspiracy or concerted scheme, is appropriately considered in a class certification analysis under Rule 23, but is "inapplicable to issues of standing[.]" Johnson v. GEICO Cas. Co., 673 F. Supp. 2d 244, 255 (D. Del. 2009) (citations omitted). The doctrine has been repeatedly

14

WA 2830001.1

Case 4:10-cv-00189-ODS   Document 326   Filed 06/27/11   Page 19 of 20

rejected in the context of second mortgage actions. See, e.g., Landmann, 2004 U.S. Dist. LEXIS 17898, at *13; Faircloth, 313 F. Supp. 2d 544; Easter, 381 F.3d 948; Dunden, 2002 U.S. Dist. LEXIS 28454, at *11-12, and should be rejected here as well.

Because Plaintiffs lack standing to sue Real Time, Plaintiffs' claim against Real Time must be dismissed.

## VI.
## CONCLUSION

For the foregoing reasons, Real Time Resolutions, Inc.'s motion to dismiss the Seventh Amended Petition should be granted.

Dated: June 27, 2011

Respectfully submitted,

SPENCER FANE BRITT & BROWNE LLP


 /s/ Leslie A. Greathouse
Leslie A. Greathouse    MO #48431
   lgreathouse@spencerfane.com
J. Loyd Gattis    MO #59699
   lgattis@spencerfane.com
1000 Walnut Street, Suite 1400
Kansas City, Missouri 64106-2140
(816) 474-8100
(816) 474-3216 (facsimile)

*Attorneys for defendant Real Time Resolutions, Inc.*


## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2011, the foregoing was filed using the Court's CM/ECF system, which will notify all registered parties of the filing.


 /s/ Leslie A. Greathouse
Attorney for defendant Real Time Resolutions, Inc.

WA 2830001.1

Case 4:10-cv-00189-ODS   Document 326   Filed 06/27/11   Page 20 of 20