IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MICHAEL P. AND SHELLIE GILMOR, et al., | |
| Plaintiffs, | Case No. 10-0189-CV-W-ODS |
| vs. | |
| PREFERRED CREDIT CORPORATION, et al., | |
| Defendants. | |

# EXHBIT AB

**TO PLAINTIFFS' SUGGESTIONS IN OPPOSITION TO MOTION OF DEFENDANTS LITTON LOAN SERVICING, L.P. AND JP MORGAN CHASE BANK, NATIONAL ASSOCIATION, AS FORMER TRUSTEE TO DECERTIFY CLASS**

IN THE MISSOURI COURT OF APPEALS
WESTERN DISTRICT

STEVEN and RUTH MITCHELL, )
et al., )
　　　　　　　　　　　　　　　)
　　　　　　Respondents, )
　　　　　　　　　　　　　　　)
　vs.　　　　　　　　　　　　) No.
　　　　　　　　　　　　　　　)
RESIDENTIAL FUNDING )
CORPORATION, et al, )
　　　　　　　　　　　　　　　)
　　　　　　Appellants. )

AB

IN THE CIRCUIT COURT OF MISSOURI
JACKSON COUNTY, DIVISION 4
Honorable Justine E. Del Muro, Judge

STEVEN and RUTH MITCHELL, )
et al., )
　　　　　　　　　　　　　　　)
　　　　　　Plaintiffs, )
　　　　　　　　　　　　　　　)
　vs.　　　　　　　　　　　　) No. 03CV-2200489
　　　　　　　　　　　　　　　)
RESIDENTIAL FUNDING )
CORPORATION, et al., )
　　　　　　　　　　　　　　　)
　　　　　　Defendants. )

RECORD ON APPEAL - TRANSCRIPT

VOLUME I (of VI)

Pages 1 - 731

Julie M. DelPercio, Certified Reporter #516
Official Court Reporter, Division 4
Sixteenth Judicial Circuit of Kansas City

```
 1         A P P E A R A N C E S
 2   For the Plaintiffs:
         R. Frederick Walters
 3       Kip D. Richards
         David M. Skeens
 4       J. Michael Vaughan
         Garrett Hodes
 5       Walters, Bender, Strohbehn & Vaughan, PC
         2500 City Center Square
 6       1100 Main Street
         Kansas City, MO  64105-2112
 7
     For the Defendants Residential Funding Corp., et al:
 8       Roy W. Arnold
         Thomas Allen
 9       Reed Smith, LLP
         435 Sixth Avenue
10       Pittsburgh, PA  15219-1886
11       Randolph G. Willis
         Daniel L. McClain
12       Rasmussen, Willis, Dickey & Moore, LLC
         9200 Ward Parkway, Suite 310
13       Kansas City, MO  64114
14   For the Defendant Wachovia Equity Servicing, LLC:
         Scott W. Martin
15       Michael Hargens
         Kara Bemboom
16       Husch & Eppenberger, LLC
         1200 Main, Suite 2300
17       Kansas City, MO  64105
18   For the Defendant Household Finance Corp., et al:
         Todd W. Ruskamp
19       Danielle Mau
         Shook, Hardy & Bacon, LLP
20       2555 Grand Blvd
         Kansas City, MO  64108
21
22
23
24
25
                                              Page 2
```

```
 1              I N D E X
 2        VOLUME I, PAGES 1 - 731
 3                                      Page
 4        FRIDAY, DECEMBER 2, 2005
 5   Certification of Class                18
 6        THURSDAY, NOVEMBER 29, 2007
 7   Pretrial Motions                     143
 8        MONDAY, DECEMBER 3, 2007
 9   Pretrial motions                     297
10   Venire Panel Sworn                   369
11   Voir Dire
         Questions by the Court           370
12       Questions by Mr. Walters         371
13        TUESDAY, DECEMBER 4, 2007
14       Questions by Mr. Willis          499
         Questions by Mr. Ruskamp         591
15       Questions by Mr. Martin          610
         Individual Questions by Mr. Walters   635
16
     Strikes for cause                    654
17
     Jury Selected                        694
18
            VOLUME II, PAGES 732-1351
19
          WEDNESDAY, DECEMBER 5, 2007
20
     Jury Sworn                           776
21
     Instruction No. 1 read               776
22
     Witness Rule Invoked                 781
23
     Plaintiffs' Opening Statement        784
24
     Defendant RFC's Opening Statement         909
25
                                              Page 3
```

```
 1        I N D E X (Continued):
 2   Defendant HFC's Opening Statement         935
 3   Defendant Wachovia's Opening Statement    952
 4        THURSDAY, DECEMBER 6, 2007
 5   PLAINTIFF'S EVIDENCE:
 6   STEVEN MITCHELL
         Direct Examination by Mr. Skeens    1012
 7       Cross-Examination by Mr. Arnold     1089
         Cross-Examination By Mr. Ruskamp    1090
 8       Cross-Examination By Mr. Martin     1095
 9   RUTH MITCHELL
         Direct Examination by Mr. Skeens    1096
10       Cross-Examination by Mr. Ruskamp    1107
         Cross-Examination by Ms. Bemboom    1109
11       Redirect Examination by Mr. Skeens  1109
12   Exhibits read into record              1118
13   DONALD RUSSELL - videotape played      1137
14   LISA M. BAILEY - deposition read       1154
15        FRIDAY, DECEMBER 7, 2007
16   LISA M. BAILEY - deposition read (continued)  1195
17   DONALD RUSSELL - videotape played (continued) 1271
18   CAROL PETERSON - videotape played      1272
19   RENEE BANGERTER - deposition read      1293
20        VOLUME III, PAGES 1352-1900
21        MONDAY, DECEMBER 10, 2007
22   Motions                                1369
23   MICHAEL BUGBEE - deposition read       1396
24   DARRIN GEORGE - deposition read        1414
25
                                              Page 4
```

```
 1        I N D E X (Continued):
 2   LAUREN DEGIDEO - deposition read       1448
 3   KEENEN DAMMEN - deposition read        1488
 4   Exhibits 82 & 83 published             1537
 5   GINA HARMS - deposition read           1542
 6   TRAVIS STEINHOUSE - deposition read    1561
 7   NOELLE RUDE - deposition read          1585
 8   MARK WHITE - videotape played          1605
 9   TRACEY BACKER - deposition read        1609
10        TUESDAY, DECEMBER 11, 2007
11   depo designations                      1624
12   Exhibits published                     1727
13   TOM WATERMAN - deposition read         1741
14   ROBERT CARSE - deposition read         1811
15   DANA ST. CLAIRE HOUGHMAN - deposition read  1864
16        VOLUME IV, PAGES 1901-2696
17        WEDNESDAY, DECEMBER 12, 2007
18   Exhibits published                     1953
19   REBECCA WALZAK
         Direct Examination by Mr. Walters  1957
20       Cross-Examination by Mr. Allen     2116
         Cross-Examination by Mr. Ruskamp   2139
21       Cross-Examination by Mr. Martin    2188
         Redirect Examination by Mr. Walters 2208
22       Recross-Examination by Mr. Ruskamp 2213
23        THURSDAY, DECEMBER 13, 2007
24   SHANNON MARSHALL - deposition read     2255
25   DONALD E. SWEGLES - deposition read    2336
                                              Page 5
```

statute. It's very much facilitating the jury's ultimate determination.

MR. SKEENS: I'm sorry. The HUD-1s tell you what happened in the transactions. That is what this case is all about. All Mr. Arnold is trying to do now is regurgitate what they argued at class certification. You have this horde of individualized inquiries that you have to dissect every one of these loans beyond what the HUD-1 says, and the Court has already ruled in making this a class action that we don't have these individualized inquiries, that these are common and typical issues and that the HUD-1 tells you what was charged in each of these incidents and that is the document that proves the case.

So we don't need Professor Randolph to say, well, the HUD-1 may say X but really you've got to go do this, this and this. That is not the proper source of expert testimony, it's a legal opinion, it will confuse the jury, he ought not be allowed to testify.

MR. ARNOLD: Your Honor, they want to block it because they know that -- basically that is our response to their evidence, and they want to block this witness because it's very difficult

Page 154

for them to deal with it. Because they want to use this document, they want to basically give their version without any witnesses testifying about those documents or how they were -- a person actually involved in the transaction, okay, with respect to these 256 loans that my client purchased. So they are offering their version of the events. We need to be able to respond to that with this witness and our other witnesses.

THE COURT: Anything else?

MR. SKEENS: No, Your Honor.

MR. ARNOLD: Not on that issue.

THE COURT: Plaintiffs' motion in limine No. 1 is sustained.

Motion in limine No. 2.

MR. RICHARDS: Your Honor, motion in limine No. 2 deals with one of defendants' experts. This one is Charles Finch. Mr. Finch is an accountant and the bulk of his opinions are basically to counter or run some counter calculations to the Plaintiffs' expert Jack Krueger.

However, in addition to those counter calculations, as I call them, the defendants may, and I don't know if they intend to, but they may

Page 155

try to put Finch on the stand to offer an opinion as to the economic benefits of these second mortgage loans. Mr. Finch testified that these economic -- or that the borrowers obtained an economic benefit in the form of a tax deduction or may be able to.

Missouri law is clear, I think the law across the country is clear, that not only does that not provide a defense in this case, whether they got a tax deduction or not doesn't have anything to do with any of the claims that were made; and secondly, the tax issues and tax deductibility of any recovery as a matter of law is inadmissible and excluded, it's irrelevant, it's unfairly prejudicial, etc.

The second aspect of Mr. Finch's opinions concern the interest savings. And what Mr. Finch wants to do is say, well, they traded out, that the borrowers traded out what was in effect unsecured credit card debt, and then they took that debt and wrapped it into their home diverting it to a secured debt at a lower interest rate. And again he says that was an economic benefit to the borrowers. For the same reasons that should be excluded, such a benefit, and it doesn't exist,

Page 156

you are trading out unsecured debt for secured debt. And there is a whole number of reasons why these borrowers could have made the loans without charging all these fees, and having accomplished that --

THE COURT: Let's just stop you right there. Does the defense intend to put on Mr. Finch to state that these loans were actual benefits to the borrowers, yes or no?

MR. WILLIS: Yes, we do, Your Honor.

THE COURT: How does this aid in your defense?

MR. WILLIS: There is a number of reasons why these benefits, these economic benefits, are relevant to the case. First of all, it's relevant to the issue of damages. As to say actual damages under the SMLA is not defined. The case law should shed some light as to how you determine economic damages or actual damages and one of those things are the benefits versus the cost of the transaction.

THE COURT: Where do you find that?

MR. WILLIS: There is actually case law, Your Honor. We have cases with us here today, but basically there are cases that say, in determining

Page 157

**Page 158**

actual damages one of the things you look at is the benefits of the transaction versus the cost of the transaction. The benefits in terms of the tax savings as well as a reduction of an interest rate from a high credit card rate down to a lower second mortgage rate is an economic benefit bestowed upon the Plaintiffs. It's relevant to that issue, Your Honor.

THE COURT: It's almost sounding like you are trying to assert a mitigation of damages.

MR. WILLIS: It's not really. I understand, Your Honor. Because it's sort of a different case, I can understand the Court's query about this. But it's really not a mitigation of damages question, it's really a matter of how the jury measures the amount of damages. And again, it's a situation just like you do in any transaction, you look at the benefits, you look at the costs.

THE COURT: Have you looked at our instructions on measure of damages? MAI is pretty instructive on measure of damages and I don't recall ever seeing benefits to a borrower being one of those elements.

MR. WILLIS: What the jury is actually

**Page 159**

going to have to make a determination on is what is the amount of damages. Then one of the things they take into account is the benefits versus the cost of the transaction. We do intend to assert it for that purpose.

There is also another very significant purpose, Your Honor, with regard to the issue of punitive damages. Both the United States Supreme Court as well as several Missouri cases address the amount of punitive damages, saying that you've got to look at the entire economic circumstance of the transaction. You've got to -- you just don't focus on one specific element, you look at the benefits that are bestowed upon the Plaintiff by reason of how the transaction affected them.

So, for example, one of the things that is going to be argued in the case is, were there overcharges on second mortgage rates. To the extent that the borrowers in this case, and frankly, Your Honor, I don't think there is any dispute about the fact that all the fees charged were specifically disclosed in writing to all the borrowers in this case. I don't think there is going to be any dispute about that.

But one of the things the jury is entitled to

**Page 160**

take into consideration is when the borrowers borrowed this money and the fees were disclosed to them, did they evaluate this transaction with regard to the economic benefits bestowed upon them? And to the extent that the transaction actually reduces interest rate and to the extent that these people were motivated by tax savings, then basically both the Missouri Supreme Court -- I'm sorry, the Missouri Court of Appeals as well as the United States Supreme Court says you have to look at the totality of the transaction.

It's not fair to basically say that these are the -- there is one aspect of damages and you should apply some kind of multiplier. You have to look at the totality of the transactions. So for those two reasons, Your Honor, we think it's relevant.

MR. RICHARDS: The only thing I would say, Your Honor, is if this was a personal injury case, they could try and come up here and say, well, the Plaintiffs' ability to recover medical expenses that they incurred gave some benefit to them because they exceeded the AGI limits and were deducted out of their tax returns and they went to this particular doctor or that -- you're right,

**Page 161**

the instruction does not say we get to factor in benefits or that evidence of -- economic evidence of a benefit is in any way admissible.

With regard to the claim for punitive damages, the Supreme Court opinion doesn't say that inadmissible evidence concerning the benefits of a transaction can be considered, and that is what we have here. For the reasons that we have said, you know, this idea of a benefit conveyed to these people should be excluded. It's undisputed. I think that that is the law.

THE COURT: Anything else?

MR. WILLIS: One additional thing I think is pretty important to draw the Court's attention to. I'm going to show you, if I can invite the Court's attention, this is a Missouri Court of Appeals case, it's Moore versus Missouri-Nebraska Express, 892 S.W. 2d 696 out of the Western Court of Appeals, 1994 decision. If I can, Your Honor, we have highlighted some of the language in the case.

What I would like to invite the Court's attention to, you see in the pink highlight there, it talks about you have to look at the entire transaction when assessing punitive damages. But

```
1   one of the things the Missouri Court of Appeals
2   says --
3         THE COURT: It's addressing mitigating
4   circumstances.
5         MR. WILLIS: Exactly.
6         THE COURT: Didn't I say this sounds
7   like --
8         MR. WILLIS: On punitive damages, Your
9   Honor, the evidence and the benefits is
10  admissible. Perhaps on actual damages it may not
11  be, Your Honor, but on punitive damages the
12  evidence of mitigation of circumstances is
13  admissible, because again, it's consistent with
14  this entire notion. You have to look at the
15  totality of the circumstances. You can't just
16  take a -- focus on one thing, you have to
17  determine whether or not basically the defendants'
18  conduct was justifiable in some respect.
19        Again, we get to the point that they are
20  going to be in dispute in this case about the fact
21  that all these borrowers have these fees
22  specifically disclosed to them in writing. So the
23  jury I think is entitled to determine what
24  motivated the borrowers here. Was it the benefits
25  they received both in terms of interest reductions
```
Page 162

```
1   as well as tax savings.
2         THE COURT: Anything else?
3         MR. RICHARDS: The only other thing, and
4   maybe this is so obvious, Your Honor, that I
5   didn't say it. If you look at the statute, the
6   statute lays out what the damages are. 408.562
7   says, you shall recover your actual damages, and
8   under established Missouri law those actual
9   damages do not include a benefit. And they want
10  to argue that -- I don't even know how they would
11  show a benefit with any degree of certainty in
12  arguing that punitive damages shouldn't be
13  assessed. It is mitigation of damages and it is
14  inadmissible and that opinion from the Supreme
15  Court doesn't say we are going to allow otherwise
16  inadmissible evidence to be considered by a jury
17  in determining punitive damages.
18        MR. WILLIS: One final note, Your Honor,
19  with regard to how it's going to be demonstrated.
20  Our expert Mr. Finch has actually gone through
21  calculations, he has actually ground through the
22  numbers, he testified about those in his
23  deposition and it's marked as an exhibit. So it's
24  not speculation. He has actually gone through and
25  calculated the benefits and he's prepared to
```
Page 163

```
1   offer --
2         THE COURT: My concern is you are almost
3   suggesting that in a case like this the Plaintiffs
4   have a duty to mitigate their damages. These
5   people took out loans probably with the
6   understanding, I mean, most people take out loans
7   because they do want to reap a benefit, they want
8   to get out from a higher interest rate, they want
9   to, you know, secure an interest rate and avoid
10  credit card, that's a given.
11        To state that under the law they are required
12  to come in with that kind of mitigating evidence,
13  that doesn't exist in this lawsuit. I don't
14  understand how this evidence comes in, A, as a
15  defense; and B, as a mitigation of damages,
16  especially in actual damages, not taking away the
17  punitive damage aspect, which has been bifurcated.
18  I think I saw a motion asking for bifurcation. So
19  that's a separate element that is not going to
20  become a part of the case in chief.
21        I really am struggling to understand how you
22  can assert or bring in evidence that these
23  people -- or that you, maybe that is what you are
24  trying to argue -- that the defendants should not
25  have a verdict against them because these people,
```
Page 164

```
1   irrespective of any violations of law, gained a
2   benefit. That is what it's sounding like to me.
3   Is that what you are really asserting?
4         MR. WILLIS: Let me see if I can break
5   that down for the Court. As I understand your
6   comment, it sounds like you are willing to at
7   least entertain the possibility that we might be
8   able to submit with regard to punitive damages.
9         THE COURT: I have to look at this case.
10  I was just looking at the facts and they are not
11  really identical at all. There are two issues
12  here. You are saying yes, it's important in
13  punitive damages, but I can't -- let's just talk
14  about case in chief.
15        MR. WILLIS: Actual damages,
16  Mr. Richards is right, the Missouri SMLA says that
17  the jury determines the amount of actual damages.
18  What the problem is, Your Honor, is that the SMLA
19  does not define what actual damages are. So if
20  you look back at the case law, what it basically
21  says is a matter of comparing the benefits versus
22  the cost. I think the jury is entitled to make a
23  determination. For example, the jury is entitled
24  to make a determination.
25        One of the things they want to do, Your
```
Page 165

**Page 166**

1  Honor, is they want to recover all of the past
2  interest that has been paid in the case. That is
3  part of the claim that they are making in this
4  case. Even though the past interest was fully
5  disclosed to borrowers, even though it was
6  disclosed to the borrowers in writing, and even
7  though presumably that is the very reason they are
8  taking out the loan in the first place.
9  　　　To the extent they want to penalize the
10 defendants in this case by having them pay back
11 all of the past interest in this case, one of the
12 things I think the jury is entitled to take into
13 consideration is these people, did they get some
14 benefits. Before we penalize these people who
15 bought these loans, shouldn't the jury take into
16 account what benefit motivated these people before
17 you are going to punish or penalize or have the
18 defendants disgorge all of the past interest in
19 the case.
20 　　　THE COURT: I don't think that is
21 relevant to an issue of whether or not these
22 defendants violated a law and unnecessarily
23 assessed fees. That has no bearing on whether or
24 not these borrowers gained a benefit. I don't see
25 it at this time. These are motions in limine.

**Page 167**

1  I'm going to sustain it right now. Unless you can
2  prove to me with some concrete on point case law,
3  I just don't think it's appropriate.
4  　　　MR. WILLIS: Your Honor, can I ask a
5  clarification question here? With regard to the
6  admissibility benefits on the punitive damage
7  phase, will the Court allow us to come back and
8  readdress that issue?
9  　　　THE COURT: As I said, motions in limine
10 are preliminary rulings. If you find something
11 somewhere that requires me to reconsider any of
12 the rulings that I make today I will be happy to
13 do that.
14 　　　MR. WILLIS: Thank you, Your Honor.
15 　　　THE COURT: No. 3.
16 　　　MR. RICHARDS: Your Honor, motion in
17 limine No. 3 is motion in limine No. 2 except it's
18 expanded to include anybody else. No evidence
19 regarding alleged benefits. It's not limited to
20 Chuck Finch, it's limited to anybody else that
21 might jump in the box.
22 　　　THE COURT: Is that understood?
23 　　　MR. WILLIS: Our response would be the
24 same, Your Honor.
25 　　　MR. RUSKAMP: Your Honor, may I be heard

**Page 168**

1  on this issue?
2  　　　THE COURT: Sure.
3  　　　MR. RUSKAMP: Part of this issue really
4  does require some context, and what I would like
5  to suggest to the Court is that it's important to
6  ultimately understand what we expect the
7  Plaintiffs' case in chief to be on this issue,
8  particularly as Mr. Willis' points were related to
9  punitive damages.
10 　　　What we are faced with here really is an
11 effort to put evidence in I anticipate in their
12 case in chief that is largely unrelated to
13 anything these defendants did. And frankly,
14 largely unrelated to anything having to do with
15 the loans in this case. Things like guilty pleas
16 on other issues, alleged violations by MCR with
17 respect to the origination of loans that has
18 nothing at all to do with the Missouri loans or
19 the violation or alleged violation of the Missouri
20 statute.
21 　　　THE COURT: Are you talking about your
22 other motions in limine regarding the two
23 convicted felons?
24 　　　MR. RUSKAMP: I'm talking about that but
25 also just from a broader perspective. What the

**Page 169**

1  Plaintiffs' case in chief will ultimately be is
2  not just simply the HUD-1s and these fees. There
3  is going to be sort of a second wave that comes in
4  by way of an expert named Rebecca Walzak and Margo
5  Saunders, and what I would like to respectfully
6  suggest to the Court, that on this benefit issue
7  what we are really talking about here is having a
8  fair and balanced perspective on our ability to
9  present to the jury a full picture on what the
10 circumstances are.
11 　　　Now, if all of that extraneous criminal
12 convictions and these defendants are bad guys
13 doesn't come in, then I think questions about
14 benefit and issues about benefit may -- the points
15 may very well be well taken, but otherwise, you
16 truly are creating a situation where the
17 Plaintiffs are going to off load all of this
18 information into the case and the defendants are
19 left without really anything at all to say.
20 　　　THE COURT: Mr. Ruskamp, I don't really
21 know what you want me to say in response to that
22 sort of global request. I don't know what the
23 Plaintiffs intend to drag in or what issues you
24 are concerned about, and if you have concerns
25 specifically raise them now because that is what

### Page 1089

```
1    off of work to sit here, just like everybody else,
2    and that is about it, Your Honor.
3         MR. ARNOLD: Your Honor, we are not
4    going to dispute any of that. It's not going to
5    be a matter for the jury to decide. It's for the
6    Court to decide if it's going to be awarded and it
7    shouldn't be put before the jury.
8         MR. MARTIN: I'll join.
9         MR. RUSKAMP: Yes.
10        THE COURT: I don't see the relevance.
11   Sustained.
12        (The proceedings returned to open court.)
13   Q. (By Mr. Skeens) Mr. Mitchell, what do you -- what
14      would you like to recover on behalf of yourself
15      and the class?
16   A. For myself and the rest of the class members we
17      would just like to recover what is allowable under
18      the law, whatever that might be, but whatever is
19      allowable under the law.
20        MR. SKEENS: Thank you.
21        THE COURT: Cross?
22             CROSS-EXAMINATION
23   BY MR. ARNOLD:
24   Q. Mr. Mitchell, just very briefly. My name is Roy
25      Arnold and I represent Residential Funding. I
```

### Page 1090

```
1    just want to make sure the record is clear on one
2    thing. You paid off your loan in late -- your MCR
3    loan in late 2001, early 2002, correct?
4  A. Correct.
5  Q. And you paid it off by obtaining a larger first
6    mortgage from Bank of America?
7  A. That is correct.
8  Q. And you then sold your home; isn't that right, in
9    Blue Springs?
10 A. No, not until many years later. In fact, about a
11   year and a half ago.
12 Q. But you paid off the loan and then you got your
13   Bank of America loan, and then you sold your
14   house, right?
15 A. Correct.
16 Q. I just wanted to make sure that was clear. Thank
17   you. No further questions.
18       THE COURT: Mr. Ruskamp?
19       MR. RUSKAMP: Thank you, Your Honor.
20            CROSS-EXAMINATION
21 BY MR. RUSKAMP:
22 Q. Mr. Mitchell, so that I'm clear on your testimony,
23   your loan was not purchased by Household, was it?
24 A. My particular loan wasn't, but it's my
25   understanding that some members of the class loans
```

### Page 1091

```
1    were.
2  Q. Do you know as a class representative how many of
3    the loans were purchased by Household?
4  A. I believe my attorney told me at one time. I
5    think it was about 34 or 35, something like that.
6  Q. And your testimony is that you didn't have any
7    contact with anybody at Household in connection
8    with this particular loan from MCR; is that right?
9  A. I didn't have any contact with them directly, no.
10 Q. You haven't had any contact with any borrowers
11   whose loans were purchased by Household that were
12   originated by MCR, have you?
13 A. No, just other than some of the work that was
14   filed with the Court early on I read through it, I
15   briefed through it and some were. But other than
16   reading that, no, I didn't talk to them
17   personally, no.
18 Q. You haven't had any discussions with them?
19 A. That's correct.
20 Q. You don't know anything about the circumstances of
21   the closing of their loans?
22 A. No, I don't.
23 Q. And is it the case that you had a prior loan with
24   Household in your past?
25 A. Way back when I was young, yes, I believe I did,
```

### Page 1092

```
1    just a signature loan or something like that, a
2    collateral loan. I'm not really sure but I was
3    very young at the time.
4  Q. When you say collateral loan, you mean it was
5    secured by something?
6  A. Something, yes, probably a used car, something
7    like that.
8  Q. I assume you paid that loan off at some point in
9    time?
10 A. Yes.
11 Q. Was your experience with Household satisfactory
12   relative to that loan?
13 A. As far as I can remember, it's been so long ago,
14   but yes, I believe it was.
15       MR. RUSKAMP: Thank you, Mr. Mitchell.
16       THE COURT: Mr. Martin?
17       MR. MARTIN: Could we approach?
18       (Counsel approach the bench and the following
19   discussion was had:)
20       MR. MARTIN: I want to make sure I get
21   it clear because I know that we had some issues
22   about collateral issues, whether this is a good
23   deal for them, that kind of stuff. What I want to
24   do is ask Mr. Mitchell -- we heard this testimony
25   today about how they got this loan because they
```

Page 1093:

```
 1   wanted to save some money and that they were
 2   saving money, I want to find out how much money,
 3   and it won't take very long to do that, but if the
 4   documents they lay out what they were paid before
 5   and I want to just add those numbers up with him
 6   and show that this is his savings.
 7        MR. SKEENS:  I thought we had agreed
 8   that we weren't going to have evidence about what
 9   a great deal this was for any of these people or
10   anything like that.  It was just about whether
11   these fees were illegal or not.  I would object on
12   relevance grounds, Your Honor.
13        MR. MARTIN:  All this evidence, I'm
14   pulling it out of the documents they put in the
15   record.
16        MR. SKEENS:  I thought we had a motion
17   in limine on this that was sustained.
18        MR. MARTIN:  We did.  That is why I'm
19   bringing this up.  I think they opened the door.
20   I think we should have been able to get into this
21   information before.  That is why you get these
22   loans, you want to save money.  How much money did
23   they save.  It's just the extension of what he
24   testified to on direct.
25        THE COURT:  Anything else?  The
```

Page 1094:

```
 1   objection is overruled.  Your request is denied.
 2   I can't let you get into what benefits these
 3   parties obtained as a result of the loan.  I'm
 4   sticking to my ruling on the motion in limine.  He
 5   didn't open the door.  He went through a document
 6   explaining the purpose of the loan.  That is the
 7   extent of the testimony.
 8        MR. MARTIN:  Can I have like 30 seconds
 9   to make an offer of proof on this?
10        THE COURT:  Right now?
11        MR. MARTIN:  Yes.
12        THE COURT:  Sure.
13        MR. MARTIN:  He had a loan from Concord
14   where he was paying $62 a month.  He had a loan
15   from MBNA where he was paying $181 a month.  He
16   had A loan from Discover Financial he was paying
17   $134 a month.  All total that was $477 a month.
18   His new payment was $236.71.  The savings to him
19   was $240.29.  All that is in the records that they
20   just introduced into evidence.
21        THE COURT:  You made your offer of
22   proof.  I'm going to maintain my ruling.  You may
23   proceed.
24        (The proceedings returned to open court.)
25               CROSS-EXAMINATION
```

Page 1095:

```
 1   BY MR. MARTIN:
 2   Q.  Mr. Mitchell, I represent Wachovia.  Sometimes you
 3       will hear HomEq.  At the time that you got your
 4       loan it would have been The Money Store.  Do you
 5       have any information about the way that Wachovia
 6       dealt with any of the borrowers or the way that
 7       HomEq dealt with any of the borrowers or The Money
 8       Store?
 9   A.  Again, as I told the other attorney, just through
10       documents that I reviewed trying to prepare for
11       this so I would have background on the other
12       people that were involved in the class with me.  I
13       seen the stampings a little bit in some of the
14       documents, but other than that, no.
15   Q.  So nothing that your loan had -- no part of your
16       loan had anything to do with Wachovia or HomEq or
17       The Money Store; is that right?
18   A.  That's correct.
19          MR. MARTIN:  I have no further
20       questions.
21          THE COURT:  Anything else?
22          MR. SKEENS:  No redirect, Your Honor.
23          THE COURT:  Sir, you may step down.
24             (Witness excused.)
25          THE COURT:  Call your next witness.
```

Page 1096:

```
 1          MR. SKEENS:  The Plaintiffs at this time
 2       call Ruth Mitchell, Your Honor.
 3          THE COURT:  Step up into the witness
 4       box.  Raise your right hand.
 5             RUTH E. MITCHELL,
 6   having been sworn by the Court testifies as follows:
 7             DIRECT EXAMINATION
 8   BY MR. SKEENS:
 9   Q.  Can you tell us your name?
10   A.  Ruth E. Mitchell.
11   Q.  Mrs. Mitchell, you are likewise a Plaintiff in
12       this case?
13   A.  Yes.
14   Q.  Along with your husband Steve?
15   A.  Correct.
16   Q.  And are you here on behalf of the class in
17       addition to yourself?
18   A.  Yes, I am.
19   Q.  Where are you from originally, Mrs. Mitchell?
20   A.  A little town in Illinois called Belleville,
21       Belleville, Illinois.
22   Q.  Obviously at some point you end up in Kansas City.
23       When was that?
24   A.  Late '89, early 1990.
25   Q.  And when did you and Steve -- you and Mr. Mitchell
```

### Page 3326

```
 1    what you said?
 2  A. It would be catastrophic circumstances, yes.
 3  Q. And that was your description of the catastrophic
 4     circumstances?
 5  A. That would be one example. I think that is one we
 6     can all somewhat understand.
 7         MR. WALTERS: No further questions.
 8         THE COURT: Anything else?
 9         MR. ARNOLD: No, Your Honor.
10         THE COURT: Sir, you may step down.
11         (Witness excused.)
12         THE COURT: Ladies and gentlemen of the
13     jury, we are going take a lengthy recess. We will
14     be in recess until 1:30 today. Have a good
15     afternoon.
16         (The following proceedings were had in the
17     courtroom out of the presence of the jury:)
18         MR. WILLIS: We are going to talk about
19     these proffers on Mr. Finch's testimony. What I
20     propose to do is we have got a number of these
21     written proffers. We have got them marked with
22     exhibit stickers here, and I thought I would just
23     hand those written proffers up to the Court, sort
24     of summarize our position, Mr. Richards can give
25     his response to it, and then the Court can rule on
```

### Page 3327

```
 1     them.
 2         The first proffer we have has been marked as
 3     Exhibit 1148. It is an opinion with regard to
 4     borrowers who should be excluded from the class.
 5     Mr. Finch is prepared to give an opinion that
 6     certain borrower's damages should be excluded by
 7     reason of bankruptcy, discharge or write-off or
 8     death.
 9         The Court has already ruled in response to
10     motions for summary judgment and motions in limine
11     that this should be excluded. So we are
12     proffering Exhibit 1148 as our proposed evidence
13     on Mr. Finch's opinion with regard to the
14     borrowers who should be excluded from the class.
15         MR. RICHARDS: Your Honor, for the
16     record, and I didn't catch the exhibit number on
17     that.
18         MR. WILLIS: 1148.
19         MR. RICHARDS: For this and each of the
20     other proffers we disagree, I think I need to
21     state for the record, we disagree with the
22     recitation that they put in the background section
23     of each of these. Having said that, with regard
24     to Exhibit 1148, we do object to the opinions as
25     proffered and don't believe that they are
```

### Page 3328

```
 1     appropriate.
 2         THE COURT: This is really an offer of
 3     proof, correct?
 4         MR. WILLIS: Yes, it's a proffer of what
 5     we expect Mr. Finch's opinion would be.
 6         THE COURT: And I have already sustained
 7     this. So I will just put on this document that
 8     it's sustained as well.
 9         MR. MARTIN: Your Honor, just for the
10     record --
11         THE COURT: Or overruled, I should say.
12     Sorry.
13         MR. MARTIN: I would like to join in the
14     set of proffers on behalf of Wachovia Equity
15     Servicing. I also think that for all of these --
16         THE COURT: I think you are all signed
17     off on these.
18         MR. MARTIN: Okay. And I think also,
19     especially with regard to the testimony we just
20     heard about defaults and default rates and
21     assuming what percentage of these folks defaulted,
22     I think all this evidence should come in directly.
23     They have clearly opened the door. We have been
24     talking about default rates with multiple
25     witnesses and this one exactly.
```

### Page 3329

```
 1         THE COURT: Anything else?
 2         MR. RICHARDS: No.
 3         THE COURT: The ruling will remain.
 4         MR. WILLIS: Next we have Exhibit 1156.
 5     Exhibit 1156, Your Honor, is the proffer by the
 6     defendants of Mr. Finch's opinion with regard to
 7     the so-called benefits to the borrowers. If
 8     allowed to testify Mr. Finch would give an opinion
 9     that the various Plaintiff borrowers in the case
10     derived certain benefits by reason of these loans
11     in the form of either interest rate deductions,
12     tax savings or cash flow savings.
13         Again, just for the record, the Court I think
14     has ruled in response to motions in limine filed
15     by the Plaintiffs in the case that benefits to the
16     borrowers should not come into the case. So we
17     are proffering Exhibit 1156 on that basis.
18         MR. RICHARDS: We don't dispute what he
19     said there. That that is the Court's ruling, and
20     we believe it's inappropriate.
21         THE COURT: That will be overruled.
22         MR. MARTIN: Next, Your Honor, we have
23     Exhibit 1149. Exhibit 1149 is Mr. Finch's
24     opinions with regard to the so-called discount
25     fees. And if allowed to testify Mr. Finch would
```