IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MICHAEL P. AND SHELLIE GILMOR, et al., | |
| Plaintiffs, | Case No. 10-0189-CV-W-ODS |
| vs. | |
| PREFERRED CREDIT CORPORATION, et al., | |
| Defendants. | |

# EXHIBIT AD

**PLAINTIFFS' SUGGESTIONS IN OPPOSITION TO MOTION TO DECERTIFY CLASS AS TO DEFENDANTS COUNTRYWIDE HOME LOANS, INC. AND BAC HOME LOANS SERVICING, L.P.**

IN THE MISSOURI COURT OF APPEALS
WESTERN DISTRICT

AD

STEVEN and RUTH MITCHELL, )
et al., )
 )
        Respondents, )
 )
vs. ) No.
 )
RESIDENTIAL FUNDING )
CORPORATION, et al, )
 )
        Appellants. )

IN THE CIRCUIT COURT OF MISSOURI
JACKSON COUNTY, DIVISION 4
Honorable Justine E. Del Muro, Judge

STEVEN and RUTH MITCHELL, )
et al., )
 )
        Plaintiffs, )
 )
vs. ) No. 03CV-2200489
 )
RESIDENTIAL FUNDING )
CORPORATION, et al., )
 )
        Defendants. )

RECORD ON APPEAL - TRANSCRIPT

VOLUME I (of VI)

Pages 1 - 731

Julie M. DelPercio, Certified Reporter #516
Official Court Reporter, Division 4
Sixteenth Judicial Circuit of Kansas City

## Page 2

```
 1              A P P E A R A N C E S
 2   For the Plaintiffs:
       R. Frederick Walters
 3     Kip D. Richards
       David M. Skeens
 4     J. Michael Vaughan
       Garrett Hodes
 5     Walters, Bender, Strohbehn & Vaughan, PC
       2500 City Center Square
 6     1100 Main Street
       Kansas City, MO 64105-2112
 7
     For the Defendants Residential Funding Corp., et al:
 8     Roy W. Arnold
       Thomas Allen
 9     Reed Smith, LLP
       435 Sixth Avenue
10     Pittsburgh, PA 15219-1886
11     Randolph G. Willis
       Daniel L. McClain
12     Rasmussen, Willis, Dickey & Moore, LLC
       9200 Ward Parkway, Suite 310
13     Kansas City, MO 64114
14   For the Defendant Wachovia Equity Servicing, LLC:
       Scott W. Martin
15     Michael Hargens
       Kara Bemboom
16     Husch & Eppenberger, LLC
       1200 Main, Suite 2300
17     Kansas City, MO 64105
18   For the Defendant Household Finance Corp., et al:
       Todd W. Ruskamp
19     Danielle Mau
       Shook, Hardy & Bacon, LLP
20     2555 Grand Blvd
       Kansas City, MO 64108
21
22
23
24
25
```

## Page 3

```
 1                    I N D E X
 2             VOLUME I, PAGES 1 - 731
 3                                          Page
 4          FRIDAY, DECEMBER 2, 2005
 5   Certification of Class                    18
 6          THURSDAY, NOVEMBER 29, 2007
 7   Pretrial Motions                         143
 8          MONDAY, DECEMBER 3, 2007
 9   Pretrial motions                         297
10   Venire Panel Sworn                       369
11   Voir Dire
       Questions by the Court                 370
12     Questions by Mr. Walters               371
13          TUESDAY, DECEMBER 4, 2007
14     Questions by Mr. Willis                499
       Questions by Mr. Ruskamp               591
15     Questions by Mr. Martin                610
       Individual Questions by Mr. Walters    635
16
     Strikes for cause                        654
17
     Jury Selected                            694
18
              VOLUME II, PAGES 732-1351
19
           WEDNESDAY, DECEMBER 5, 2007
20
     Jury Sworn                               776
21
     Instruction No. 1 read                   776
22
     Witness Rule Invoked                     781
23
     Plaintiffs' Opening Statement            784
24
     Defendant RFC's Opening Statement        909
25
```

## Page 4

```
 1              I N D E X (Continued):
 2   Defendant HFC's Opening Statement        935
 3   Defendant Wachovia's Opening Statement   952
 4          THURSDAY, DECEMBER 6, 2007
 5   PLAINTIFF'S EVIDENCE:
 6   STEVEN MITCHELL
       Direct Examination by Mr. Skeens      1012
 7     Cross-Examination by Mr. Arnold       1089
       Cross-Examination By Mr. Ruskamp      1090
 8     Cross-Examination By Mr. Martin       1095
 9   RUTH MITCHELL
       Direct Examination by Mr. Skeens      1096
10     Cross-Examination by Mr. Ruskamp      1107
       Cross-Examination by Ms. Bemboom      1109
11     Redirect Examination by Mr. Skeens    1109
12   Exhibits read into record               1118
13   DONALD RUSSELL - videotape played       1137
14   LISA M. BAILEY - deposition read        1154
15          FRIDAY, DECEMBER 7, 2007
16   LISA M. BAILEY - deposition read (continued)  1195
17   DONALD RUSSELL - videotape played (continued) 1271
18   CAROL PETERSON - videotape played       1272
19   RENEE BANGERTER - deposition read       1293
20          VOLUME III, PAGES 1352-1900
21          MONDAY, DECEMBER 10, 2007
22   Motions                                 1369
23   MICHAEL BUGBEE - deposition read        1396
24   DARRIN GEORGE - deposition read         1414
25
```

## Page 5

```
 1              I N D E X (Continued):
 2   LAUREN DEGIDEO - deposition read        1448
 3   KEENEN DAMMEN - deposition read         1488
 4   Exhibits 82 & 83 published              1537
 5   GINA HARMS - deposition read            1542
 6   TRAVIS STEINHOUSE - deposition read     1561
 7   NOELLE RUDE - deposition read           1585
 8   MARK WHITE - videotape played           1605
 9   TRACEY BACKER - deposition read         1609
10          TUESDAY, DECEMBER 11, 2007
11   depo designations                       1624
12   Exhibits published                      1727
13   TOM WATERMAN - deposition read          1741
14   ROBERT CARSE - deposition read          1811
15   DANA ST. CLAIRE HOUGHMAN - deposition read  1864
16          VOLUME IV, PAGES 1901-2696
17          WEDNESDAY, DECEMBER 12, 2007
18   Exhibits published                      1953
19   REBECCA WALZAK
       Direct Examination by Mr. Walters     1957
20     Cross-Examination by Mr. Allen        2116
       Cross-Examination by Mr. Ruskamp      2139
21     Cross-Examination by Mr. Martin       2188
       Redirect Examination by Mr. Walters   2208
22     Recross-Examination by Mr. Ruskamp    2213
23          THURSDAY, DECEMBER 13, 2007
24   SHANNON MARSHALL - deposition read      2255
25   DONALD E. SWEGLES - deposition read     2336
```

**Page 154**

statute. It's very much facilitating the jury's ultimate determination.

MR. SKEENS: I'm sorry. The HUD-1s tell you what happened in the transactions. That is what this case is all about. All Mr. Arnold is trying to do now is regurgitate what they argued at class certification. You have this horde of individualized inquiries that you have to dissect every one of these loans beyond what the HUD-1 says, and the Court has already ruled in making this a class action that we don't have these individualized inquiries, that these are common and typical issues and that the HUD-1 tells you what was charged in each of these incidents and that is the document that proves the case.

So we don't need Professor Randolph to say, well, the HUD-1 may say X but really you've got to go do this, this and this. That is not the proper source of expert testimony, it's a legal opinion, it will confuse the jury, he ought not be allowed to testify.

MR. ARNOLD: Your Honor, they want to block it because they know that -- basically that is our response to their evidence, and they want to block this witness because it's very difficult

**Page 155**

for them to deal with it. Because they want to use this document, they want to basically give their version without any witnesses testifying about those documents or how they were -- a person actually involved in the transaction, okay, with respect to these 256 loans that my client purchased. So they are offering their version of the events. We need to be able to respond to that with this witness and our other witnesses.

THE COURT: Anything else?

MR. SKEENS: No, Your Honor.

MR. ARNOLD: Not on that issue.

THE COURT: Plaintiffs' motion in limine No. 1 is sustained.

Motion in limine No. 2.

MR. RICHARDS: Your Honor, motion in limine No. 2 deals with one of defendants' experts. This one is Charles Finch. Mr. Finch is an accountant and the bulk of his opinions are basically to counter or run some counter calculations to the Plaintiffs' expert Jack Krueger.

However, in addition to those counter calculations, as I call them, the defendants may, and I don't know if they intend to, but they may

**Page 156**

try to put Finch on the stand to offer an opinion as to the economic benefits of these second mortgage loans. Mr. Finch testified that these economic -- or that the borrowers obtained an economic benefit in the form of a tax deduction or may be able to.

Missouri law is clear, I think the law across the country is clear, that not only does that not provide a defense in this case, whether they got a tax deduction or not doesn't have anything to do with any of the claims that were made; and secondly, the tax issues and tax deductibility of any recovery as a matter of law is inadmissible and excluded, it's irrelevant, it's unfairly prejudicial, etc.

The second aspect of Mr. Finch's opinions concern the interest savings. And what Mr. Finch wants to do is say, well, they traded out, that the borrowers traded out what was in effect unsecured credit card debt, and then they took that debt and wrapped it into their home diverting it to a secured debt at a lower interest rate. And again he says that was an economic benefit to the borrowers. For the same reasons that should be excluded, such a benefit, and it doesn't exist,

**Page 157**

you are trading out unsecured debt for secured debt. And there is a whole number of reasons why these borrowers could have made the loans without charging all these fees, and having accomplished that --

THE COURT: Let's just stop you right there. Does the defense intend to put on Mr. Finch to state that these loans were actual benefits to the borrowers, yes or no?

MR. WILLIS: Yes, we do, Your Honor.

THE COURT: How does this aid in your defense?

MR. WILLIS: There is a number of reasons why these benefits, these economic benefits, are relevant to the case. First of all, it's relevant to the issue of damages. As to say actual damages under the SMLA is not defined. The case law should shed some light as to how you determine economic damages or actual damages and one of those things are the benefits versus the cost of the transaction.

THE COURT: Where do you find that?

MR. WILLIS: There is actually case law, Your Honor. We have cases with us here today, but basically there are cases that say, in determining

## Page 158

actual damages one of the things you look at is the benefits of the transaction versus the cost of the transaction. The benefits in terms of the tax savings as well as a reduction of an interest rate from a high credit card rate down to a lower second mortgage rate is an economic benefit bestowed upon the Plaintiffs. It's relevant to that issue, Your Honor.

THE COURT: It's almost sounding like you are trying to assert a mitigation of damages.

MR. WILLIS: It's not really. I understand, Your Honor. Because it's sort of a different case, I can understand the Court's query about this. But it's really not a mitigation of damages question, it's really a matter of how the jury measures the amount of damages. And again, it's a situation just like you do in any transaction, you look at the benefits, you look at the costs.

THE COURT: Have you looked at our instructions on measure of damages? MAI is pretty instructive on measure of damages and I don't recall ever seeing benefits to a borrower being one of those elements.

MR. WILLIS: What the jury is actually

## Page 159

going to have to make a determination on is what is the amount of damages. Then one of the things they take into account is the benefits versus the cost of the transaction. We do intend to assert it for that purpose.

There is also another very significant purpose, Your Honor, with regard to the issue of punitive damages. Both the United States Supreme Court as well as several Missouri cases address the amount of punitive damages, saying that you've got to look at the entire economic circumstance of the transaction. You've got to -- you just don't focus on one specific element, you look at the benefits that are bestowed upon the Plaintiff by reason of how the transaction affected them.

So, for example, one of the things that is going to be argued in the case is, were there overcharges on second mortgage rates. To the extent that the borrowers in this case, and frankly, Your Honor, I don't think there is any dispute about the fact that all the fees charged were specifically disclosed in writing to all the borrowers in this case. I don't think there is going to be any dispute about that.

But one of the things the jury is entitled to

## Page 160

take into consideration is when the borrowers borrowed this money and the fees were disclosed to them, did they evaluate this transaction with regard to the economic benefits bestowed upon them? And to the extent that the transaction actually reduces interest rate and to the extent that these people were motivated by tax savings, then basically both the Missouri Supreme Court -- I'm sorry, the Missouri Court of Appeals as well as the United States Supreme Court says you have to look at the totality of the transaction.

It's not fair to basically say that these are the -- there is one aspect of damages and you should apply some kind of multiplier. You have to look at the totality of the transactions. So for those two reasons, Your Honor, we think it's relevant.

MR. RICHARDS: The only thing I would say, Your Honor, is if this was a personal injury case, they could try and come up here and say, well, the Plaintiffs' ability to recover medical expenses that they incurred gave some benefit to them because they exceeded the AGI limits and were deducted out of their tax returns and they went to this particular doctor or that -- you're right,

## Page 161

the instruction does not say we get to factor in benefits or that evidence of -- economic evidence of a benefit is in any way admissible.

With regard to the claim for punitive damages, the Supreme Court opinion doesn't say that inadmissible evidence concerning the benefits of a transaction can be considered, and that is what we have here. For the reasons that we have said, you know, this idea of a benefit conveyed to these people should be excluded. It's undisputed. I think that that is the law.

THE COURT: Anything else?

MR. WILLIS: One additional thing I think is pretty important to draw the Court's attention to. I'm going to show you, if I can invite the Court's attention, this is a Missouri Court of Appeals case, it's Moore versus Missouri-Nebraska Express, 892 S.W. 2d 696 out of the Western Court of Appeals, 1994 decision. If I can, Your Honor, we have highlighted some of the language in the case.

What I would like to invite the Court's attention to, you see in the pink highlight there, it talks about you have to look at the entire transaction when assessing punitive damages. But

**Page 162**

one of the things the Missouri Court of Appeals says --

THE COURT: It's addressing mitigating circumstances.

MR. WILLIS: Exactly.

THE COURT: Didn't I say this sounds like --

MR. WILLIS: On punitive damages, Your Honor, the evidence and the benefits is admissible. Perhaps on actual damages it may not be, Your Honor, but on punitive damages the evidence of mitigation of circumstances is admissible, because again, it's consistent with this entire notion. You have to look at the totality of the circumstances. You can't just take a -- focus on one thing, you have to determine whether or not basically the defendants' conduct was justifiable in some respect.

Again, we get to the point that they are going to be in dispute in this case about the fact that all these borrowers have these fees specifically disclosed to them in writing. So the jury I think is entitled to determine what motivated the borrowers here. Was it the benefits they received both in terms of interest reductions

**Page 163**

as well as tax savings.

THE COURT: Anything else?

MR. RICHARDS: The only other thing, and maybe this is so obvious, Your Honor, that I didn't say it. If you look at the statute, the statute lays out what the damages are. 408.562 says, you shall recover your actual damages, and under established Missouri law those actual damages do not include a benefit. And they want to argue that -- I don't even know how they would show a benefit with any degree of certainty in arguing that punitive damages shouldn't be assessed. It is mitigation of damages and it is inadmissible and that opinion from the Supreme Court doesn't say we are going to allow otherwise inadmissible evidence to be considered by a jury in determining punitive damages.

MR. WILLIS: One final note, Your Honor, with regard to how it's going to be demonstrated. Our expert Mr. Finch has actually gone through calculations, he has actually ground through the numbers, he testified about those in his deposition and it's marked as an exhibit. So it's not speculation. He has actually gone through and calculated the benefits and he's prepared to

**Page 164**

offer --

THE COURT: My concern is you are almost suggesting that in a case like this the Plaintiffs have a duty to mitigate their damages. These people took out loans probably with the understanding, I mean, most people take out loans because they do want to reap a benefit, they want to get out from a higher interest rate, they want to, you know, secure an interest rate and avoid credit card, that's a given.

To state that under the law they are required to come in with that kind of mitigating evidence, that doesn't exist in this lawsuit. I don't understand how this evidence comes in, A, as a defense; and B, as a mitigation of damages, especially in actual damages, not taking away the punitive damage aspect, which has been bifurcated. I think I saw a motion asking for bifurcation. So that's a separate element that is not going to become a part of the case in chief.

I really am struggling to understand how you can assert or bring in evidence that these people -- or that you, maybe that is what you are trying to argue -- that the defendants should not have a verdict against them because these people,

**Page 165**

irrespective of any violations of law, gained a benefit. That is what it's sounding like to me. Is that what you are really asserting?

MR. WILLIS: Let me see if I can break that down for the Court. As I understand your comment, it sounds like you are willing to at least entertain the possibility that we might be able to submit with regard to punitive damages.

THE COURT: I have to look at this case. I was just looking at the facts and they are not really identical at all. There are two issues here. You are saying yes, it's important in punitive damages, but I can't -- let's just talk about case in chief.

MR. WILLIS: Actual damages, Mr. Richards is right, the Missouri SMLA says that the jury determines the amount of actual damages. What the problem is, Your Honor, is that the SMLA does not define what actual damages are. So if you look back at the case law, what it basically says is a matter of comparing the benefits versus the cost. I think the jury is entitled to make a determination. For example, the jury is entitled to make a determination.

One of the things they want to do, Your

**Page 166**

Honor, is they want to recover all of the past interest that has been paid in the case. That is part of the claim that they are making in this case. Even though the past interest was fully disclosed to borrowers, even though it was disclosed to the borrowers in writing, and even though presumably that is the very reason they are taking out the loan in the first place.

To the extent they want to penalize the defendants in this case by having them pay back all of the past interest in this case, one of the things I think the jury is entitled to take into consideration is these people, did they get some benefits. Before we penalize these people who bought these loans, shouldn't the jury take into account what benefit motivated these people before you are going to punish or penalize or have the defendants disgorge all of the past interest in the case.

THE COURT: I don't think that is relevant to an issue of whether or not these defendants violated a law and unnecessarily assessed fees. That has no bearing on whether or not these borrowers gained a benefit. I don't see it at this time. These are motions in limine.

**Page 167**

I'm going to sustain it right now. Unless you can prove to me with some concrete on point case law, I just don't think it's appropriate.

MR. WILLIS: Your Honor, can I ask a clarification question here? With regard to the admissibility benefits on the punitive damage phase, will the Court allow us to come back and readdress that issue?

THE COURT: As I said, motions in limine are preliminary rulings. If you find something somewhere that requires me to reconsider any of the rulings that I make today I will be happy to do that.

MR. WILLIS: Thank you, Your Honor.

THE COURT: No. 3.

MR. RICHARDS: Your Honor, motion in limine No. 3 is motion in limine No. 2 except it's expanded to include anybody else. No evidence regarding alleged benefits. It's not limited to Chuck Finch, it's limited to anybody else that might jump in the box.

THE COURT: Is that understood?

MR. WILLIS: Our response would be the same, Your Honor.

MR. RUSKAMP: Your Honor, may I be heard

**Page 168**

on this issue?

THE COURT: Sure.

MR. RUSKAMP: Part of this issue really does require some context, and what I would like to suggest to the Court is that it's important to ultimately understand what we expect the Plaintiffs' case in chief to be on this issue, particularly as Mr. Willis' points were related to punitive damages.

What we are faced with here really is an effort to put evidence in I anticipate in their case in chief that is largely unrelated to anything these defendants did. And frankly, largely unrelated to anything having to do with the loans in this case. Things like guilty pleas on other issues, alleged violations by MCR with respect to the origination of loans that has nothing at all to do with the Missouri loans or the violation or alleged violation of the Missouri statute.

THE COURT: Are you talking about your other motions in limine regarding the two convicted felons?

MR. RUSKAMP: I'm talking about that but also just from a broader perspective. What the

**Page 169**

Plaintiffs' case in chief will ultimately be is not just simply the HUD-1s and these fees. There is going to be sort of a second wave that comes in by way of an expert named Rebecca Walzak and Margo Saunders, and what I would like to respectfully suggest to the Court, that on this benefit issue what we are really talking about here is having a fair and balanced perspective on our ability to present to the jury a full picture on what the circumstances are.

Now, if all of that extraneous criminal convictions and these defendants are bad guys doesn't come in, then I think questions about benefit and issues about benefit may -- the points may very well be well taken, but otherwise, you truly are creating a situation where the Plaintiffs are going to off load all of this information into the case and the defendants are left without really anything at all to say.

THE COURT: Mr. Ruskamp, I don't really know what you want me to say in response to that sort of global request. I don't know what the Plaintiffs intend to drag in or what issues you are concerned about, and if you have concerns specifically raise them now because that is what

**Page 1089**

1 off of work to sit here, just like everybody else,
2 and that is about it, Your Honor.
3    MR. ARNOLD: Your Honor, we are not
4 going to dispute any of that. It's not going to
5 be a matter for the jury to decide. It's for the
6 Court to decide if it's going to be awarded and it
7 shouldn't be put before the jury.
8    MR. MARTIN: I'll join.
9    MR. RUSKAMP: Yes.
10    THE COURT: I don't see the relevance.
11 Sustained.
12    (The proceedings returned to open court.)
13 Q. (By Mr. Skeens) Mr. Mitchell, what do you -- what
14 would you like to recover on behalf of yourself
15 and the class?
16 A. For myself and the rest of the class members we
17 would just like to recover what is allowable under
18 the law, whatever that might be, but whatever is
19 allowable under the law.
20    MR. SKEENS: Thank you.
21    THE COURT: Cross?
22          CROSS-EXAMINATION
23 BY MR. ARNOLD:
24 Q. Mr. Mitchell, just very briefly. My name is Roy
25 Arnold and I represent Residential Funding. I

**Page 1090**

1 just want to make sure the record is clear on one
2 thing. You paid off your loan in late -- your MCR
3 loan in late 2001, early 2002, correct?
4 A. Correct.
5 Q. And you paid it off by obtaining a larger first
6 mortgage from Bank of America?
7 A. That is correct.
8 Q. And you then sold your home; isn't that right, in
9 Blue Springs?
10 A. No, not until many years later. In fact, about a
11 year and a half ago.
12 Q. But you paid off the loan and then you got your
13 Bank of America loan, and then you sold your
14 house, right?
15 A. Correct.
16 Q. I just wanted to make sure that was clear. Thank
17 you. No further questions.
18    THE COURT: Mr. Ruskamp?
19    MR. RUSKAMP: Thank you, Your Honor.
20          CROSS-EXAMINATION
21 BY MR. RUSKAMP:
22 Q. Mr. Mitchell, so that I'm clear on your testimony,
23 your loan was not purchased by Household, was it?
24 A. My particular loan wasn't, but it's my
25 understanding that some members of the class loans

**Page 1091**

1 were.
2 Q. Do you know as a class representative how many of
3 the loans were purchased by Household?
4 A. I believe my attorney told me at one time. I
5 think it was about 34 or 35, something like that.
6 Q. And your testimony is that you didn't have any
7 contact with anybody at Household in connection
8 with this particular loan from MCR; is that right?
9 A. I didn't have any contact with them directly, no.
10 Q. You haven't had any contact with any borrowers
11 whose loans were purchased by Household that were
12 originated by MCR, have you?
13 A. No, just other than some of the work that was
14 filed with the Court early on I read through it, I
15 briefed through it and some were. But other than
16 reading that, no, I didn't talk to them
17 personally, no.
18 Q. You haven't had any discussions with them?
19 A. That's correct.
20 Q. You don't know anything about the circumstances of
21 the closing of their loans?
22 A. No, I don't.
23 Q. And is it the case that you had a prior loan with
24 Household in your past?
25 A. Way back when I was young, yes, I believe I did,

**Page 1092**

1 just a signature loan or something like that, a
2 collateral loan. I'm not really sure but I was
3 very young at the time.
4 Q. When you say collateral loan, you mean it was
5 secured by something?
6 A. Something, yes, probably a used car, something
7 like that.
8 Q. I assume you paid that loan off at some point in
9 time?
10 A. Yes.
11 Q. Was your experience with Household satisfactory
12 relative to that loan?
13 A. As far as I can remember, it's been so long ago,
14 but yes, I believe it was.
15    MR. RUSKAMP: Thank you, Mr. Mitchell.
16    THE COURT: Mr. Martin?
17    MR. MARTIN: Could we approach?
18    (Counsel approach the bench and the following
19 discussion was had:)
20    MR. MARTIN: I want to make sure I get
21 it clear because I know that we had some issues
22 about collateral issues, whether this is a good
23 deal for them, that kind of stuff. What I want to
24 do is ask Mr. Mitchell -- we heard this testimony
25 today about how they got this loan because they

Page 1093:

1 wanted to save some money and that they were
2 saving money, I want to find out how much money,
3 and it won't take very long to do that, but if the
4 documents they lay out what they were paid before
5 and I want to just add those numbers up with him
6 and show that this is his savings.
7     MR. SKEENS: I thought we had agreed
8 that we weren't going to have evidence about what
9 a great deal this was for any of these people or
10 anything like that. It was just about whether
11 these fees were illegal or not. I would object on
12 relevance grounds, Your Honor.
13     MR. MARTIN: All this evidence, I'm
14 pulling it out of the documents they put in the
15 record.
16     MR. SKEENS: I thought we had a motion
17 in limine on this that was sustained.
18     MR. MARTIN: We did. That is why I'm
19 bringing this up. I think they opened the door.
20 I think we should have been able to get into this
21 information before. That is why you get these
22 loans, you want to save money. How much money did
23 they save. It's just the extension of what he
24 testified to on direct.
25     THE COURT: Anything else? The

Page 1094:

1 objection is overruled. Your request is denied.
2 I can't let you get into what benefits these
3 parties obtained as a result of the loan. I'm
4 sticking to my ruling on the motion in limine. He
5 didn't open the door. He went through a document
6 explaining the purpose of the loan. That is the
7 extent of the testimony.
8     MR. MARTIN: Can I have like 30 seconds
9 to make an offer of proof on this?
10     THE COURT: Right now?
11     MR. MARTIN: Yes.
12     THE COURT: Sure.
13     MR. MARTIN: He had a loan from Concord
14 where he was paying $62 a month. He had a loan
15 from MBNA where he was paying $181 a month. He
16 had A loan from Discover Financial he was paying
17 $134 a month. All total that was $477 a month.
18 His new payment was $236.71. The savings to him
19 was $240.29. All that is in the records that they
20 just introduced into evidence.
21     THE COURT: You made your offer of
22 proof. I'm going to maintain my ruling. You may
23 proceed.
24     (The proceedings returned to open court.)
25     CROSS-EXAMINATION

Page 1095:

1 BY MR. MARTIN:
2 Q. Mr. Mitchell, I represent Wachovia. Sometimes you
3    will hear HomEq. At the time that you got your
4    loan it would have been The Money Store. Do you
5    have any information about the way that Wachovia
6    dealt with any of the borrowers or the way that
7    HomEq dealt with any of the borrowers or The Money
8    Store?
9 A. Again, as I told the other attorney, just through
10   documents that I reviewed trying to prepare for
11   this so I would have background on the other
12   people that were involved in the class with me. I
13   seen the stampings a little bit in some of the
14   documents, but other than that, no.
15 Q. So nothing that your loan had -- no part of your
16   loan had anything to do with Wachovia or HomEq or
17   The Money Store; is that right?
18 A. That's correct.
19     MR. MARTIN: I have no further
20   questions.
21     THE COURT: Anything else?
22     MR. SKEENS: No redirect, Your Honor.
23     THE COURT: Sir, you may step down.
24     (Witness excused.)
25     THE COURT: Call your next witness.

Page 1096:

1     MR. SKEENS: The Plaintiffs at this time
2 call Ruth Mitchell, Your Honor.
3     THE COURT: Step up into the witness
4 box. Raise your right hand.
5     RUTH E. MITCHELL,
6 having been sworn by the Court testifies as follows:
7     DIRECT EXAMINATION
8 BY MR. SKEENS:
9 Q. Can you tell us your name?
10 A. Ruth E. Mitchell.
11 Q. Mrs. Mitchell, you are likewise a Plaintiff in
12   this case?
13 A. Yes.
14 Q. Along with your husband Steve?
15 A. Correct.
16 Q. And are you here on behalf of the class in
17   addition to yourself?
18 A. Yes, I am.
19 Q. Where are you from originally, Mrs. Mitchell?
20 A. A little town in Illinois called Belleville,
21   Belleville, Illinois.
22 Q. Obviously at some point you end up in Kansas City.
23   When was that?
24 A. Late '89, early 1990.
25 Q. And when did you and Steve -- you and Mr. Mitchell

| | |
|---|---|
| 1 what you said? | 1 appropriate. |
| 2 A. It would be catastrophic circumstances, yes. | 2 THE COURT: This is really an offer of |
| 3 Q. And that was your description of the catastrophic | 3 proof, correct? |
| 4 circumstances? | 4 MR. WILLIS: Yes, it's a proffer of what |
| 5 A. That would be one example. I think that is one we | 5 we expect Mr. Finch's opinion would be. |
| 6 can all somewhat understand. | 6 THE COURT: And I have already sustained |
| 7 MR. WALTERS: No further questions. | 7 this. So I will just put on this document that |
| 8 THE COURT: Anything else? | 8 it's sustained as well. |
| 9 MR. ARNOLD: No, Your Honor. | 9 MR. MARTIN: Your Honor, just for the |
| 10 THE COURT: Sir, you may step down. | 10 record -- |
| 11 (Witness excused.) | 11 THE COURT: Or overruled, I should say. |
| 12 THE COURT: Ladies and gentlemen of the | 12 Sorry. |
| 13 jury, we are going take a lengthy recess. We will | 13 MR. MARTIN: I would like to join in the |
| 14 be in recess until 1:30 today. Have a good | 14 set of proffers on behalf of Wachovia Equity |
| 15 afternoon. | 15 Servicing. I also think that for all of these -- |
| 16 (The following proceedings were had in the | 16 THE COURT: I think you are all signed |
| 17 courtroom out of the presence of the jury:) | 17 off on these. |
| 18 MR. WILLIS: We are going to talk about | 18 MR. MARTIN: Okay. And I think also, |
| 19 these proffers on Mr. Finch's testimony. What I | 19 especially with regard to the testimony we just |
| 20 propose to do is we have got a number of these | 20 heard about defaults and default rates and |
| 21 written proffers. We have got them marked with | 21 assuming what percentage of these folks defaulted, |
| 22 exhibit stickers here, and I thought I would just | 22 I think all this evidence should come in directly. |
| 23 hand those written proffers up to the Court, sort | 23 They have clearly opened the door. We have been |
| 24 of summarize our position, Mr. Richards can give | 24 talking about default rates with multiple |
| 25 his response to it, and then the Court can rule on | 25 witnesses and this one exactly. |
| Page 3326 | Page 3328 |
| 1 them. | 1 THE COURT: Anything else? |
| 2 The first proffer we have has been marked as | 2 MR. RICHARDS: No. |
| 3 Exhibit 1148. It is an opinion with regard to | 3 THE COURT: The ruling will remain. |
| 4 borrowers who should be excluded from the class. | 4 MR. WILLIS: Next we have Exhibit 1156. |
| 5 Mr. Finch is prepared to give an opinion that | 5 Exhibit 1156, Your Honor, is the proffer by the |
| 6 certain borrower's damages should be excluded by | 6 defendants of Mr. Finch's opinion with regard to |
| 7 reason of bankruptcy, discharge or write-off or | 7 the so-called benefits to the borrowers. If |
| 8 death. | 8 allowed to testify Mr. Finch would give an opinion |
| 9 The Court has already ruled in response to | 9 that the various Plaintiff borrowers in the case |
| 10 motions for summary judgment and motions in limine | 10 derived certain benefits by reason of these loans |
| 11 that this should be excluded. So we are | 11 in the form of either interest rate deductions, |
| 12 proffering Exhibit 1148 as our proposed evidence | 12 tax savings or cash flow savings. |
| 13 on Mr. Finch's opinion with regard to the | 13 Again, just for the record, the Court I think |
| 14 borrowers who should be excluded from the class. | 14 has ruled in response to motions in limine filed |
| 15 MR. RICHARDS: Your Honor, for the | 15 by the Plaintiffs in the case that benefits to the |
| 16 record, and I didn't catch the exhibit number on | 16 borrowers should not come into the case. So we |
| 17 that. | 17 are proffering Exhibit 1156 on that basis. |
| 18 MR. WILLIS: 1148. | 18 MR. RICHARDS: We don't dispute what he |
| 19 MR. RICHARDS: For this and each of the | 19 said there. That that is the Court's ruling, and |
| 20 other proffers we disagree, I think I need to | 20 we believe it's inappropriate. |
| 21 state for the record, we disagree with the | 21 THE COURT: That will be overruled. |
| 22 recitation that they put in the background section | 22 MR. MARTIN: Next, Your Honor, we have |
| 23 of each of these. Having said that, with regard | 23 Exhibit 1149. Exhibit 1149 is Mr. Finch's |
| 24 to Exhibit 1148, we do object to the opinions as | 24 opinions with regard to the so-called discount |
| 25 proffered and don't believe that they are | 25 fees. And if allowed to testify Mr. Finch would |
| Page 3327 | Page 3329 |