IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MICHAEL P. and SHELLIE GILMOR, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 10-0189-CV-W-ODS ) |
| PREFERRED CREDIT CORP., et al., | ) ) |
| Defendants. | ) |

## ORDER AND OPINION DENYING MOTIONS TO DECERTIFY

Pending are three motions to decertify the class action filed by (1) JP Morgan Chase Bank and Litton Loan Servicing LP, (2) BAC Home Loan Servicing, LP and Countrywide Home Loans, Inc., and (3) Deutsche Bank National Trust Company, IMH Assets Corp., Lasalle National Bank, Wells Fargo Bank N.A., Wingspan Portfolio Advisors, LLC, and the IMPAC Defendants. The motions (Doc. # 513, Doc. # 515, and Doc. # 517) are denied.

## I. BACKGROUND

An abbreviated procedural background follows: On January 2, 2003, the state court[1] certified a plaintiff class consisting of all persons who obtained a second mortgage loan from Preferred Credit Corporation ("PCC") secured by Missouri residential real estate and who may claim damage caused by the charging of certain fees and closing costs allegedly in violation of the Missouri Second Mortgage Loan Act ("MSMLA").[2] The class definition did not purport to identify the defendants, or those

---

[1] The Honorable David W. Russell, Circuit Judge for Clay County, Missouri.

[2] The full class definition is much more expansive. This summary provides a workable basis for fully evaluating the certification issue.

who caused damage to the class members. However, in addition to PCC, the defendants at that time included various purchasers of the loans. Amended pleadings were filed that added additional defendants, many of whom are either subsequent assignees of the loans or loan servicing entities.

The case was removed to federal court on February 26, 2010, based upon the FDIC's appointment as a receiver for one of the defendants. After reviewing relevant portions of the voluminous state-court record and considering the parties' input, the Court endeavored to put the case on "a path that will lead to its eventual disposition" by resolving certain outstanding issues. One of the issues between the parties – which had never been presented to the state court – was whether the state court's class certification order applied to defendants brought into the suit after the order was issued. This Court opined that it did. Doc. # 76 at 2. Defendants sought clarification, and the Court reiterated its conclusion. Doc. # 114. Both Orders invited Defendants to file Motions to Decertify if they deemed it appropriate to do so; some of them have now done so.

## II. DISCUSSION

"An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). The Court will thus consider the issue anew by examining the class as originally defined by the state court, but remaining mindful of the Record that has been developed over this case's decade-plus existence. Before embarking on the analysis required by Rule 23, it must be remembered that "[w]hen appropriate, an action may be brought as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). Moreover, "[w]hen appropriate, a class may be divided into subclasses that are each treated as a class under this rule." Fed. R. Civ. P. 23(c)(5). These points are important because the moving defendants implicitly assume that the class as certified cannot stand unless the entire class of borrowers from PCC has the same claims against every single defendant. As a preview of its analysis, the Court disagrees.

2

A. Rule 23's Mandatory Requirements

Rule 23(a) dictates that for a class to be certified the court must find:

1. the class is so numerous that joinder of all members is impracticable;

2. there are questions of law or fact common to the class;

3. the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4. the representative parties will fairly and adequately protect the interests of the class.

Each of these elements are satisfied for the class as defined. The class consists of over 900 individuals who took out 516 residential loans. While some of the class members have settled some or all of their claims, it is estimated that nearly 180 class members will remain if all anticipated settlements are approved. It is impracticable to join all of these individuals into a single suit.[3]

There are common questions of law and fact that apply to the class as a whole. "To determine whether common questions predominate, a court must conduct a limited preliminary inquiry, looking behind the pleadings." Blades v. Monsanto Co., 400 F.3d 562, 566 (8th Cir. 2005). This inquiry requires an understanding (but not resolution) of the merits and an understanding of the issues and evidence in the case. E.g., Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551-53 (2011); Genereal Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 160 (1982). To be common, an issue "must be of such a nature that it is capable of classwide resolution – which means that

---

[3]Some Defendants suggest numerosity is not satisfied because the amount of each claim is potentially (or allegedly) large. This argument misunderstands the issue. A large claim may suggest a reason why individual control of a suit is to be preferred, particularly if the damages claim includes categories that are difficult to calculate (such as pain and suffering). The size of the claim is also often invoked by plaintiffs as a reason why a class action is to be preferred (because exceedingly small claims would not otherwise be adjudicated). All Rule 23(a)(1) asks is whether there are so many class members that joinder of each one is impractical – and that threshold is satisfied.

3

Case 4:10-cv-00189-ODS   Document 606   Filed 07/09/12   Page 3 of 8

determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 131 S. Ct. at 2551.

One of the paramount common questions is: did the loans made by PCC violate the MSMLA?  It is true, as Defendants contend, that the specific terms of each loan are different; however, they are sufficiently similar in the respects necessary to ascertain the answer to this common question.  Another common question involves the liability of subsequent loan purchasers and others involved in the loans after they were made by PCC, including the loan servicers who acted on behalf of the note-holders, trustees for various trusts created in connection with the securitization of loans, and the various trusts created as part of the securitization process.  While there are several different entities in these roles, the legal issues – and the underlying facts involving their roles – are sufficiently similar that the answers to these questions will be common for all members of the class regardless of which defendant they have claims against.  For instance, while Litton, Countrywide and BAC are separate entities, each of them performed the same function and the factual differences between them appear to have no effect on the legal analysis of their liability.  The critical question involves the liability of servicers: the fact that Litton is not liable to all class members does not destroy the commonality inherent in this legal inquiry.

The typicality requirement tends to "merge" with commonality.  E.g., Falcon, 457 U.S. at 157 n.13.  In this circuit, Rule 23(a)(3)'s "independent meaning . . . requires a demonstration that there are other members of the class who have the same *or similar* grievances as the plaintiff."  Paxton v. Union Nat'l Bank, 688 F.2d 552, 562 (8th Cir. 1982), cert. denied, 460 U.S. 1083 (1983) (quotations omitted; emphasis supplied).  The Court is satisfied that the class members' claims are sufficiently similar to permit the class representatives to proceed.  For instance, a class representative's claim against one servicer is typical of the all class members' claims against any and all servicers.  This reasoning also persuades the Court that the class representatives are adequate, as required by Rule 23(a)(4).[4]

---

[4]There is no suggestion that class counsel is not adequate.

4

Case 4:10-cv-00189-ODS   Document 606   Filed 07/09/12   Page 4 of 8

B. Rule 23(b)(3)

To be certified, a class must also satisfy one of the categories in Rule 23(b). Here, the class satisfies Rule 23(b)(3), which requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

*1. Predominance*

As to the first issue, Defendants posit a variety of individual issues to be weighed against the previously identified common issues. Chief among these individual issues is the amount of damages. While damages are an individual issue, this fact does not automatically destroy predominance – particularly when there are significant common issues concerning liability. E.g., Messner v. Northshore Univ. HealthSystem, 669 F.3d 802, 815-16 (7th Cir. 2012); Beattie v. CenturyTel, Inc., 511 F.3d 554, 564 (6th Cir. 2007), cert. denied, 555 U.S. 1032 (2008); Smilow v. Southwestern Bell Mobile Sys., Inc., 323 F.3d 32, 40 (1st Cir. 2003); Bertulli v. Independent Ass'n of Continental Pilots, 242 F.3d 290, 298 (5th Cir. 2001). Some courts find it significant that damages – though individualized – are amenable to a mathematical computation. E.g., Ward v. Dixie Nat'l Life Ins. Co., 595 F.3d 164, 180 (4th Cir. 2010); Steering Committee v. Exxon Mobil Corp., 461 F.3d 598, 602 (5th Cir. 2006); Bell Atlantic Corp. v. AT&T Corp., 339 F.3d 294, 306-07 (5th Cir. 2003). The fact that some class members have filed bankruptcy and may be barred from recovering anything in this suit does not alter the analysis. Defendants' assertion that punitive damages cannot be assessed on a classwide basis seems to be contradicted by Missouri case law (which governs the substantive issues in this case). See Mitchell v. Residential Funding Corp., 334 S.W.3d 477, 510-11 (Mo. Ct. App. 2010).

Rule 23(b)(3) does not forbid the existence of individualized issues – to the contrary, it specifically contemplates that they will exist. All Rule 23(b)(3) requires is

5

that the common issues predominate over the individual issues that do exist, and the Court is convinced that this is the case here.

### *2. Superiority*

Rule 23(b)(3) sets forth a non-exhaustive list of factors to consider in deciding whether a class action is superior to alternative methods of resolving the dispute. The first factor requires evaluation of any interest in individual control over the action; the Court discerns no such interest in this matter. While the damages are more than minimal, they are not so high (as might be true in a case involving personal injury and future medical costs) that interest in individual control likely exists. The subject matter is also not the sort that suggests a high concern for individual control over the litigation.

The second factor requires examining "the extent and nature of any litigation concerning the controversy already begun by or against class members." The case has progressed as a class against these Defendants for at least two years. The Court invited Defendants to affirmatively seek decertification, and they waited until the deadline to do so. The Court does not necessarily fault them for waiting until the deadline; however, in waiting Defendants have permitted the case to nearly reach its conclusion as a class action. Given that the case has successfully (and finally) progressed to this point, it seems inefficient to "undo" it at the eleventh hour.

The third factor examines the desirability (or undesirability) of concentrating the litigation in a single forum. The Court concludes significant judicial efficiencies will be achieved if a single court provides the common answers to the common legal questions. Moreover, given the lengthy history and the many travels of this case, as well as the fact that this litigation is far closer to the end than it is to the beginning, the Court believes it in everybody's interest if those common answers derive from this case.

Finally, the Court considers "the likely difficulties in managing a class action." Most of the difficulties are derived from considerations that have already been mentioned, including (1) not all Plaintiffs have claims against every Defendant, (2) the precise amount of damages will vary for each class member, and (3) some class

members may be subject to individual defenses.  These difficulties are surmountable. The Court starts from the previously-addressed premise that a certain degree of individualized decisionmaking is inevitable.  Damages will be readily calculable based on documentary evidence and will not require evaluation of extensive testimony.  The process of ascertaining the necessary documents will automatically incorporate an evaluation of which class members have claims against a particular Defendant, so this issue does not add significantly to the burden.  This same process will permit Defendants to marshal any individual defenses they may have.

The Court is mindful of the obligation to afford each Defendant an opportunity to present its defenses to each class member's claim.  Dukes, 131 S. Ct. at 2560-61. Fulfilling this obligation and resolving the individual issues can be accomplished in a variety of ways once the common issues are resolved.  It may require the parties to file dispositive or similar motions on a class-member by class-member basis.  It may require organizing multiple trials, one for each Defendant (particularly given that the issue of liability is a largely legal issue or, at least, one that depends on largely uncontroverted facts).  The procedures may vary depending on the circumstances.  For instance, Litton contends that it serviced only four loans of class members.[5]  Litton's liability to borrowers is no different from the liability of any other loan servicer, and is one of the common issues discussed earlier.  If the Court concludes servicers such as Litton have no liability, the matter is ended.  If the Court concludes servicers such as Litton are or can be liable, then those four individuals can proceed – and at that point, the parties and the Court can undoubtedly fashion a method for litigating the claims involving those four loans.  For other Defendants, it may be appropriate to form a subclass from the larger class.  These are just examples, but regardless of how the case is handled at that point the efforts will be informed and improved by the fact that the case proceeded to that point as a class so that the common answers could be generated.

---

[5]Plaintiffs contend the number is actually much higher, but the Court will accept this number for discussion purposes.

The precise contours of how this litigation will conclude are not presently clear. However, the matter will become clearer as more and more common legal issues are resolved. For the present, given the nature of the common and individual issues and the history of this case, the Court believes that maintaining the class certification is superior to decertifying the class.

### III.  CONCLUSION

The class certified by the state court satisfies the requirements of Rule 23. In particular, the Court concludes there are issues of law and fact common to the class, even though not all class members have claims against all defendants. The common issues predominate over the individual issues, and maintaining the class is superior to other methods of adjudication. Accordingly, the motions to decertify are denied.

IT IS SO ORDERED.

DATE: July 9, 2012

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT