IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MICHAEL P. AND SHELLIE GILMOR, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> PREFERRED CREDIT CORPORATION, et al., <br><br> Defendants. | Case No. 10-0189-CV-W-ODS |

**PLAINTIFFS' JOINT SUGGESTIONS IN OPPOSITION TO
DAUBERT MOTION OF DEFENDANTS LASALLE NATIONAL
BANK, WILMINGTON TRUST COMPANY AND
WENDOVER FINANCIAL SERVICES CORPORATION
TO EXCLUDE EXPERT TESTIMONY**

WALTERS BENDER STROHBEHN
 & VAUGHAN, P.C.

By     */s/ R. Frederick Walters*
   R. Frederick Walters – Mo. Bar 25069
   Kip D. Richards – Mo. Bar 39743
   David M. Skeens – Mo.  Bar 35728
   Karen W. Renwick – Mo. Bar 41271
   J. Michael Vaughan Mo. – Bar 24989
   Garrett M. Hodes – Mo. Bar 50221
   Matthew R. Crimmins – Mo. Bar 53138
   Bruce V. Nguyen – Mo. Bar 52893
   2500 City Center Square
   1100 Main Street
   P.O. Box 26188
   Kansas City, MO 64196
   (816) 421-6620
   (816) 421-4747 (Facsimile)

ATTORNEYS FOR PLAINTIFFS/
 CLASS COUNSEL

Defendants LaSalle National Bank ("LaSalle"), Wilmington Trust Company ("WTC") and Wendover Financial Services Corporation ("Wendover") (collectively the "Defendants") seek to exclude the testimony of Plaintiffs' designated damages expert, Dr. Kurt Krueger, pursuant to Federal Rule of Evidence 702. (Docs. 681, 694, 695) In support of Wendover's motion, it has incorporated by reference *Defendant Deutsche Bank National Trust Company's Motion to Exclude* and *Suggestions in Support* ("*DBNTC's Motion*") (Docs. 668, 669) and *Defendants Litton Loan Servicing L.P.'s and JPMorgan Chase Bank, National Association's Joint Motion to Exclude* and their *Suggestions in Support* ("*Litton/JPMC's Motion*") (Docs. 687, 689). In support of LaSalle's Joinder in Motions to Exclude, LaSalle incorporated by reference *DBNTC's Motion* and *Litton/JPMC's Motion*. In support of WTC's Motion to Exclude, WTC incorporated by reference *DBNTC's Motion*.

LaSalle, Wendover, and WTC's joinder with other Defendants' briefs makes a cohesive and organized response difficult, given the arguments in the briefs which were joined were specifically geared to the writing Defendant and not to those who joined.

In *DBNTC's Motion*, DBNTC sought to exclude Dr. Krueger's testimony because: (1) Dr. Krueger's damages calculations for Defendant are based on impermissible derivative liability under the Missouri Second Mortgage Loan Act (the "MSMLA"); (2) Dr. Krueger's damages calculations for loans that lacked data is not reliable as he substituted statistical averages for the missing data; (3) Dr. Krueger's damages opinions are not reliable because he relied on an electronic database and spreadsheets provided by Plaintiffs' counsel; and (4) Dr. Krueger's damages opinions are overstated.[1]

Plaintiffs' hereby incorporate by reference *Plaintiffs' Suggestions in Opposition to*

---

[1] Plaintiffs are not specifically responding to *DBNTC's Motion* as all activity pertaining to that Defendant is currently suspended per the Court's Order of September 25, 2012. (Doc. 729)

*Daubert Motion of Defendants Litton Loan Servicing L.P. and JPMorgan Chase Bank, National Association, as Former Trustee, to Exclude Expert Testimony* ("*Plaintiffs' Opposition*") [Doc. 731] as part of their Suggestions in Opposition to Defendants' Motion, and in response to *DBNTC's Motion*. For the sake of clarity and brevity, Plaintiffs set forth the sections as they appear in *DBNTC's Motion* and will respond accordingly or simply incorporate by reference *Plaintiffs' Opposition*.

## I. INTRODUCTION AND BACKGROUND

For the sake of brevity, Plaintiffs incorporate by reference their Introduction and Background from *Plaintiffs' Opposition*.

## II. ARGUMENT

### A. Legal Standard

Plaintiffs hereby incorporate by reference their Legal Standard from *Plaintiffs' Opposition*.

### B. Dr. Krueger's Opinions are Relevant and Are Not Premised On Non-Existent Derivative Liability Under the Missouri Second Mortgage Loan Act

Defendants argue that Dr. Krueger's testimony should be excluded because it is based on impermissible derivative liability under the Missouri Second Mortgage Loan Act ("MSMLA"), and is therefore irrelevant. Defendants' arguments are without merit, and Plaintiffs hereby incorporate by references *Plaintiffs' Opposition* in its entirety.

To the extent that *DBNTC's Motion* varies from *Litton/JPMC's Motion*, Plaintiffs will address those distinctions below.

Within this point, Defendants argue that Dr. Krueger's damages calculations are based on impermissible liability under the MSMLA, and because these calculations have not been separated out by Dr. Krueger his calculations are not reliable. This argument is without merit.

2

Dr. Krueger did not, as Defendants contend, "lump" all Defendants together, nor did Dr. Krueger base any of his calculations on any specific theory of liability. As Plaintiffs have made abundantly clear in the *Plaintiffs' Opposition*, Dr. Krueger reviewed each loan and its particular parameters, and calculated the damages for each individual class member. Defendants attempt to muddy the waters by arguing that it was Dr. Krueger's burden to have piecemealed out each individual defendant. Had Defendants wished to calculate their own liability in order to offer that amount to the jury, they could have done so, but they did not. In fact, Dr. Krueger testified that Defendants' own damages expert did not separate out his calculations. Dr. Krueger testified as follows:

> Q: Just making sure I'm hearing what I'm hearing. All right. So -- so you don't know sitting here today whether your damages figures for particular defendants are consistent with or different from [Finch] in this case like –
>
> A: He didn't give any damage figures for any particular defendant or any particular borrower, so there was nothing I could compare.

See Krueger deposition (Doc. 704, Ex. L-2 at 58:4-12).

Defendants, despite the fact that their own expert did not separately calculate damages, now seek to exclude Dr. Krueger on that basis. As Plaintiffs amply addressed this issue in *Plaintiffs' Opposition*, if Defendants do not like Dr. Krueger's opinions, they are free to vigorously cross-examine him at trial or Defendants are equally entitled to present their own contrary evidence. *See Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 595 (1993). Defendants' failure to request that their own damages expert break out damages calculations for each Defendant is not a basis for excluding the testimony of Dr. Krueger.

As Plaintiffs make clear in *Plaintiffs' Opposition* with respect to Defendant Litton, a servicer, Dr. Krueger calculated damages for Litton in a separate calculation. Likewise, with respect to Wendover, a servicer, Dr. Krueger also calculated the damages separately. (Doc. 704,

3

L-1, Table 19)

As illustrated in *Plaintiffs' Opposition*, Dr. Krueger's testimony easily meets the standards for admissibility as set forth in Federal Rule of Evidence 702. Dr. Krueger's testimony is extremely relevant for the purposes of calculating complex damages, and is reliable as his methodology underlying his conclusions are sound and widely accepted in the scientific community. *See Bone Shirt v. Hazeltine*, 461 F.3d 1011, 1020 (8th Cir. 2006) (citations omitted). Dr. Krueger is also qualified to testify to damages based on his knowledge, skills, experience, training and education as he has a doctorate in economics and has more than twenty years of experience as a forensic economist. (Doc. 731, at Ex. 1)

As discussed at great length in *Plaintiffs' Opposition*, Dr. Krueger had sufficient facts, which were derived from a homogenous pool of data from 329 loans, his testimony relating to his damages calculations were based on statistical verifications of loan parameters, statistical estimates, and a regression analysis. Dr. Krueger applied these principles and methods reliably to the facts. *Id.* As such, Dr. Krueger should be allowed to testify, because his opinions are not so "fundamentally unsupported that [they] can offer no assistance to the jury." *Synergetics Inc. v. Hurst*, 477 F.3d 949, 955 (8th Cir. 2007).

### C. Dr. Krueger's Testimony Related to the Damages Calculations For The 181 Loans With Missing Fee Data Is Reliable and Should Be Admitted

Plaintiffs incorporate by reference *Plaintiffs' Opposition* in its entirety in response to this point, as the argument appears to be the same as made in Litton/JPMC, although with a different heading.

However, in support of this position, *DBNTC's Motion* cites to two cases not previously addressed in *Plaintiffs' Opposition*. As such, Plaintiffs will address these cases here. The two

4

following cases are cited for the proposition that expert testimony may be excluded under Rule 702 as unreliable where the expert employs a flawed statistical analysis -- *El Deeb v. Univ. of Minn,.*, 60 F.3d 423, 424 (8th Cir. 1995), and *Yapp v. Union Pac. R.R. Co*., 301 F.Supp 2d 1030, 1037 (E.D. Mo. 2004).

*Yapp* is distinguishable for several reasons, any one of which is sufficient. In *Yapp*, the experts in that case conducted their own interviews of employees at a company in order to determine whether the company participated in racial discrimination. *Id* at 1034. Here, in contrast, Dr. Krueger did not interview anyone himself nor did he select anyone to interview. He used data from the loan files that was created years ago at the time the loan was made. Thus, his work is not subject to the selection bias that was at issue in *Yapp*. Second, in *Yapp*, the experts only conducted sixteen interviews for their underlying data. *Id.* at 1033-34. Here Dr. Krueger had fee data from 329 loans, interest rate data from 474 loans and first month payment data from 507 loans. His "representative sample" was much larger in each instance than was the case in *Yapp*. In *Yapp*, the interviews were selectively chosen and were largely controlled by defense counsel, who sat in on the interviews and asked questions of the interviewees and lacked the necessary independence. *Id.* at 1034. Here, neither Dr. Krueger nor anyone conducted any interviews. Therefore, there could be no lack of independence in the interview process. As is obvious as the data used was from written documents in loan files created years ago there could not be any question of independence with respect to those documents. Neither Dr. Krueger nor Plaintiffs' counsel had anything to do with the creation of the documents or the data reflected therein. Further, the defendants admitted that their experts "never attempted to conduct a scientifically valid survey." *Id.* at 1037. The selection bias, which was a problem in Yapp, does not exist here in the data used by Dr. Krueger. That is so because there was no "selection" of

5

data to be used here. All available data was used by Dr. Krueger to arrive at his statistical estimates-fee data from 329 loans, estimated interest rates from 474 loans, and first payment dates from 507 loans. Further in *Yapp*, there was a counter expert that complained that several methodological deficiencies were present in the survey, the two most important of which were the biased selection of those to be interviewed and the participation by interested parties in the answer process, which influenced the answers. *Id.* at 1034-35. With respect to the counter expert in *Yapp*, the Defendants here have no expert that criticizes Dr. Krueger's methodologies. As explained above, the two deficiencies present in *Yapp* do not exist here. As the expert's analysis of racial discrimination was based on a survey that was not scientifically valid and rendered unreliable data, the Court properly excluded the defense experts. *Id.* Here, in contrast, the data Dr. Krueger used and about which he opined for his estimates conclusions was data that was recorded at the time the loans were made. In sum, *Yapp* provides no basis to exclude Dr. Krueger's expert testimony.

In *El Deeb*, a dentist sued the university for discrimination based on national origin. *Id.* at 426. The dentist offered a statistical analysis (and it is unclear as to whether this analysis was performed by a qualified expert) to establish a bias in the selection process for promotions evidencing discrimination. *Id.* at 429-30. However, the Court in *El Deeb* rejected the analysis finding that it was fatally flawed as it was based on an erroneous assumption that all dentists had an equal chance to perform surgeries. *Id.* at 431. Here Dr. Krueger's expert testimony and statistical estimates were not based on assumptions. Dr. Krueger relied on the hard data made available to him, almost all of which was produced by the Defendants. Dr. Krueger did not assume anything; he instead used scientifically accepted statistical models and homogenous data

in order to calculate statistical estimates for loans with missing data. The issues that existed in *El Deeb* is not present in Dr. Krueger's work.

Although Defendants argue that "the 'sample' of 329 loans was carefully selected by Plaintiffs' counsel and paralegals to filter out the loans that, by definition, could not be included in the Plaintiffs' class" because they did not violate the MSMLA, that is simply not the case. (Doc. 669 at 11) Plaintiffs' counsel did not selectively comb through the 515 loans that were originated by PCC in Missouri and select only the 329 that had illegal fees. Defendants know that is not the case, Plaintiffs have used all loans originated by PCC in Missouri and have used all 329 loans that had loan files and fee data available. There was no selection bias as to the 329 loans. As to the entire 515 loans, Plaintiffs developed that list in two primary ways. First, Plaintiffs performed record searches in all Missouri counties for loans that documents indicated were originated by PCC. See Gumbs Affidavit [Doc. 731, Ex 2]. The records from those searches have been generally produced to Defendants as bates numbers GvPfd 00633-1875, 12381-12557, 13030-18200, 17191-18200, 18218-18241. Second, after suit was filed, through discovery additional loans were added as various Defendants identified loans that had not been discovered in the county searches, as Defendants would make it seem. *Id*. at ¶ 2. All loans discovered through either procedure make up the 515 loans in the fee line database. There has been no selection bias in the compilation of the list of the 515 loans.[2] Defendants have absolutely no basis - expert or otherwise - to support its statement that either the 515 PCC loans in Missouri or the 329 loans with fee data are either an "undefined" or a "skewed" (Doc. 669, at 11) sample.

Defendants also claim that because the illegal fees have different names that this somehow destroys the homogenous nature of the 329 loans that make up the representative

---

[2] As noted in the Gumbs affidavit there were 4 opt outs which brought the class from 519 loans to 515 loan.

7
Case 4:10-cv-00189-ODS   Document 732   Filed 09/27/12   Page 8 of 12

sample. (Doc. 669, at 12) This contention also misses the mark and as the Court will note is unsupported by any rebuttal expert testimony. Defendants' contention reflects a misunderstanding of Dr. Krueger's statistical calculations and his methodology. In fact, Dr. Krueger for his statistical estimations and based on his knowledge, skill and experience, opined that the total average amount of illegal fees charged per loan was $3,971.41. (Doc 704 ¶36; Doc 704 at L-1 Table 12) Dr. Krueger did not break it down as to an individual illegal fee. *Id.* at L-2 at 124. According to Dr. Krueger, illegal fees in that amount, more likely than not, were assessed in connection with each of the Missouri second mortgage loans that PCC made, and in fact, Dr. Krueger testified that "every single loan does have a fee that's being deemed illegal." (Doc. 704, L-2 at 83:4-16, 84:10-86:8) Given Dr. Krueger's methodology it is the statistically and scientifically calculated group of illegal fees per loan that he rendered an opinion about. Thus, the individual fees or disparate individual fees have been accounted for in his methodology.

### D. Dr. Krueger's Methodology In Arriving At His Damages Calculations Are Reliable

Plaintiffs incorporate by reference *Plaintiffs' Opposition* in its entirety in response to this point. Plaintiffs note that the identical cases were cited at page 13 were also cited by Litton/JPMC on page 7 and were distinguished by Plaintiffs on page 16, footnote 12 of *Plaintiffs' Opposition*.

Defendants' argument that Dr. Krueger did not verify the data (Doc. 669 at 14) is not correct. See *Plaintiffs' Opposition* at page 8 and footnote 8, and page 15. As noted in page 15 of *Plaintiffs' Opposition* any complaints about the underlying data should be properly addressed through cross-examination and not through the exclusion of expert testimony.

### E. Dr. Krueger's Damages Calculations Are Not Overstated

Defendants in their last point claim that Dr. Krueger's damages calculations should be

8

excluded because they are "overstated." Defendants appear to take issue with the fact that Dr. Krueger did not analyze what impact, if any, a borrower's bankruptcy would have on his calculations, though Defendants fail to clearly state how this impacted his calculations.

Although Defendants may not like the methodology used by Dr. Krueger to arrive at his ultimate opinion, and although other statistical analysis may have been performed by Dr. Krueger, that fact does nothing to discredit the methods that Dr. Krueger used. *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007). Dr. Krueger's opinion is just that, it is his opinion, and while Defendants may disagree with it, or may dislike it, "[a]ttacks on the foundation [of] an expert's opinion, as well as the expert's conclusions, [go] to the weight rather than the admissibility of the expert's testimony." *Sphere Drake Ins. PLC v. Trisko*, 226 F.3d 951, 955 (8th Cir. 2000) (noting that challenges to the basis for an expert's opinion "should be engendered through thorough cross-examination, and not through the wholesale exclusion of the expert's testimony."); *see also Daubert*, 509 U.S. at 596 ("Vigorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the tradition and appropriate means of attacking shaky but admissible evidence."); *EFCO Corp. v. Symons Corp.*, 219 F.3d 734, 739 (8th Cir. 2000) (finding no abuse of discretion in allowing plaintiff's expert witness to testify as to damages where defendant's expert, who disputed plaintiff's expert's methodology, also testified; jury was left with ultimate decision as to which damages theory was more sound).

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motions to exclude the testimony of Dr. Krueger, and allow Dr. Krueger to testify as to all damages calculations.

9

Dated: September 27, 2012                    Respectfully Submitted,

                                             WALTERS BENDER STROHBEHN
                                              & VAUGHAN, P.C.


                                             By     /s/ R. Frederick Walters
                                                 R. Frederick Walters – Mo. Bar 25069
                                                 Kip D. Richards – Mo. Bar 39743
                                                 David M. Skeens – Mo. Bar 35728
                                                 Karen W. Renwick – Mo. Bar 41271
                                                 J. Michael Vaughan Mo. – Bar 24989
                                                 Garrett M. Hodes – Mo. Bar 50221
                                                 Matthew R. Crimmins – Mo. Bar 53138
                                                 Bruce V. Nguyen – Mo. Bar 52893
                                                 2500 City Center Square
                                                 1100 Main Street
                                                 P.O. Box 26188
                                                 Kansas City, MO 64196
                                                 (816) 421-6620
                                                 (816) 421-4747 (Facsimile)
                                                 fwalters@wbsvlaw.com
                                                 krichards@wbsvlaw.com
                                                 dskeens@wbsvlaw.com
                                                 krenwick@wbsvlaw.com
                                                 mvaughan@wbsvlaw.com
                                                 ghodes@wbsvlaw.com
                                                 mcrimmins@wbsvlaw.com
                                                 bnguyen@wbsvlaw.com

                                             ATTORNEYS FOR PLAINTIFFS/
                                              CLASS COUNSEL

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this the 27th day of September 2012, I electronically filed the above and foregoing document with the Clerk of Court of the Western District of Missouri using the Court's ECF system, which will send notification of said filing to all counsel of record who are ECF participants. In addition, a copy was served by U.S. mail, First-Class Postage Prepaid, to:

   Arthur E. Kechijian, Manager
   United Mortgage C.B., LLC
   P.O. Box 471827
   Charlotte, NC 28247
   **Defendant United Mortgage C.B., L.L.C**.


      */s/ R. Frederick Walters*