IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MICHAEL P. AND SHELLIE GILMOR, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>PREFERRED CREDIT CORPORATION, )<br>et al., )<br>)<br>Defendants. ) | Case No. 10-0189-CV-W-ODS |

# REPLY OF WILMINGTON TRUST COMPANY IN SUPPORT
# OF ITS DAUBERT MOTION TO EXCLUDE EXPERT TESTIMONY

The testimony of plaintiffs' expert, Dr. Kurt Krueger ("Krueger"), is inadmissible under Fed. R. Evid. 702. To begin with, plaintiffs improperly seek to use Krueger's testimony as "evidence" of supposed statutory violations when plaintiffs cannot show such violations actually occurred. Krueger's damages estimates also fail to determine specifically what damages might be attributable to Wilmington Trust Company ("WTC"), even though derivative or joint liability does not exist under the Missouri Second Mortgage Loan Act ("MSMLA"). Moreover, as WTC argues in its *Daubert* motion, Krueger's testimony is inadmissible because it is inherently unreliable.[1]

### A. Krueger's opinions are irrelevant and inadmissible as to WTC.

Krueger has no opinion as to what portion (if any) of the allegedly unlawful fees or interest WTC, as owner trustee, should pay (if liable) on a given loan. This alone disqualifies Krueger's proposed testimony. As *Mitchell v. Residential Funding Corp.*, 334 S.W.3d 477, 505–

---

[1] Krueger's opinions should be excluded for all the reasons set out in WTC's motion. Though this Reply may not address all of plaintiffs' arguments, it is no indication those arguments are valid.

06 (Mo. App. 2010), explains, a defendant may be liable only for its *own conduct* in charging, contracting for, or receiving fees in violation of MSMLA. Krueger's testimony is inadmissible because there is no evidence here that WTC, as owner trustee, ever charged, contracted for, or received any fees or interest. *See Kempner Mobile Elec. Inc. v. Southwestern Bell Mobile Sys.*, 428 F.3d 706, 712 (7th Cir. 2005) (finding expert opinion that applied to an irrelevant theory of the case could not be used at trial); *Unisplay v. American Elec. Sign Co., Inc.*, 69 F.3d 512, 516 (Fed. Cir. 1995) (holding that an expert's opinion on damages was irrelevant because it did not comply with the law applicable in that case).[2] *See also* WTC's Motion for Summary Judgment, Suggestions and Reply (Doc. Nos. 679, 680, 742).

Plaintiffs argue that *Kempner Mobile* and *Unisplay* do not apply because WTC is jointly liable as an assignee. But *Mitchell* defeats their argument.[3] While Krueger might have attributed fees and interest generally to the various individual loans, he has admittedly failed to attribute any portion of those fees or interest to WTC, or any trustee. (Krueger Depo. at 63–64.) For example, Krueger makes no effort to set out what fees or interest that allegedly were collected on a given loan at the time WTC served as the owner trustee for a trust that owned that loan. (*Id.*) Thus, his testimony cannot be used to assign damages in any reliable way to a trustee defendant

---

[2] Plaintiffs' attempt to distinguish these cases misses their point – that WTC's liability is limited to what plaintiffs allege it might have received, whether or not WTC may be liable as an assignee.

[3] The *Mitchell* court rejected assignee liability under the MSMLA, thus there is no "joint and several" liability under Missouri law. 334 S.W.3d at 505–06. Moreover, for the reasons addressed in WTC's summary judgment briefing, HOEPA does not apply to WTC because (1) it was not an assignee of loans; (2) HOEPA does not create "joint and several" liability but merely removes the holder in due course doctrine as an affirmative defense; (3) the statute of limitations bars any HOEPA claim; or (4) evidence is lacking that all loans in the Impac Trusts were HOEPA loans. While Krueger asserts, for loans where actual data exists, that roughly 25% would not be "high cost" HOEPA loans (Krueger depo. at 139) for the 186 loans without actual data, *i.e.*, where he creates fee and/or interest data, less than 5% fall into the non-HOEPA category (*id*. at 139–40). The created sums do not track or even resemble the actual data.

like WTC as required by *Mitchell*. His testimony should be excluded—at least as to WTC—for this reason alone.

Plaintiffs' suggestion that the defendants including WTC had some obligation "to calculate their own liability" or damages is absurd. (Doc. 732 at 3.) Plaintiffs have the burden to prove their case and damages. This argument should be rejected out of hand.

Plaintiffs also try to rescue Krueger's testimony as to WTC by claiming that "should the damages for an individual loan be separable as Defendants suggest . . . Dr. Krueger's calculations can easily be amended." (Doc. 731 at 13.) But of course Dr. Krueger's calculations cannot be amended. Plaintiffs' deadline to disclose their expert report was March 12, 2012. Even the amended report given five months later did not correct this grievous error. If plaintiffs wanted to supply admissible testimony from Dr. Krueger they should have done so long ago.

> **B.** **Krueger's testimony is not admissible to prove WTC is liable for damages on loans where there is no competent, reliable evidence of MSMLA violations.**

While Krueger's opinions about the amount of damages are flawed and inadmissible for the reasons stated, an even more fundamental problem is that his opinion is being used by plaintiffs to establish MSMLA liability against WTC. Put another way, plaintiffs intend to use Krueger's testimony to prop up their argument that allegedly improper fees were included in all loans because allegedly improper fees were included in some loans.

Plaintiffs cannot use Krueger to interpret and bolster evidence plaintiffs say shows that the loans for which there is no data "must have" included unlawful fees and interest. Evidence that allegedly unlawful fees were included in loans for which there is data cannot by itself establish that loans for which there is no data also included unlawful fees or interest. *See Zubulake v. UBS Warburg LLC.*, 382 F. Supp.2d 536, 541 (S.D.N.Y. 2005); *Nolan v. Cleland*,

686 F.2d 806, 812 (9th Cir. 1982) (holding that plaintiff's attempt to use past discrimination as evidence of discrimination in her case was not enough to defeat summary judgment).

Krueger's opinions about WTC's liability are inadmissible for another reason: they are unneeded. Expert testimony is admissible only if it will help the jury understand something that is fundamentally beyond their lay knowledge. *ID Sec. Sys. Canada, Inc. v. Checkpoint Sys., Inc.*, 198 F. Supp.2d 598, 611 (E.D. Pa. 2002) (excluding expert testimony that purported to explain that a party would have extended a business contract if it would have ended up increasing profits). That is not the case here. It does not require any special, scientific, or technical expertise to look at settlement statements and see that they include information on 329 out of 515 loans. It also takes no special expertise to infer from class counsel's database that fees were not included on all of the 186[4] other loans for which the data is missing.[5] Krueger's opinions thus cannot be used to establish WTC is liable here.[6]

Plaintiffs nevertheless contend that expert testimony is proper to fill in evidentiary gaps on those loans for which fee data or interest rate information does not exist. The cases plaintiffs cite, however, do not support them. None of them stand for the proposition that evidence of alleged unlawful fees charged in some cases is admissible, even under the guise of expert testimony, to show that unlawful fees are charged in all instances. For example, *Law v. Nat'l Collegiate Athletic Ass'n*, 5 F. Supp.2d 921, 926 (D. Kan. 1998), is inapposite because there,

---

[4] Plaintiffs now say that number is reduced because they have received (from absent class members) and produced data on several other loans. But that data was not produced to the defendants during discovery and should not be considered in this case now.

[5] Importantly, plaintiffs' MSMLA proof fails as to those loans for which there is no information about the interest rate. (Krueger's Amended Report ¶ 6.) Without evidence about the interest rate, plaintiffs cannot prove that a loan is subject to restrictions under the MSMLA. *See* §§ 408.233(1); 408.236.

[6] Plaintiffs now assert that WTC is in some manner liable and responsible for charges on 148 loans held in the Impac Trusts. (*See* Doc. No. 724, p. 18 at ¶ 10.) Of that number, more than one-third have missing data. (*See* Def. Ex. I, Doc. No. 680.)

unlike here, the defendant, the NCAA, had committed a violation of the antitrust laws by implementing a rule governing coaches' salaries. In that case, the anti-competitive effects of the implementation of that rule were allowed to be proven by expert testimony. But this is not an antitrust case.[7] Moreover, the elements of an antitrust claim are substantially different from the specific components of an MSMLA suit. The fact that plaintiffs even make this argument concedes that proof of a named plaintiff's claim cannot be dispositive of each and every class member's claim.

Krueger's testimony as to fees he guesses were included in the 186 loans has no reliable basis in fact. Antitrust damages cases are far afield from the sort of suit plaintiffs suggest here is rather simple. In the end, Krueger should not be allowed to testify and assume that unlawful fees were included in loans for which there is no evidence fees were ever charged or paid.

### C. Krueger's opinions are inadmissible because they are unreliable.

Krueger's opinions are separately unreliable because they are not based on any verifiable information. Krueger instead admitted that he based his entire analysis on data that was organized and supplied to him by plaintiffs' counsel.

Expert testimony based on reports and data the expert did not create or verify is inadmissible under Rule 702. *See*, *e.g.*, *Montgomery County v. Microvote Corp.*, 320 F.3d 440, 448–49 (3rd Cir. 2003). Plaintiffs try to distinguish *Montgomery* by saying that Krueger "did verify the loan parameters in the fee line database." But plaintiffs miss the point. Krueger may have had input into the parameters used to create the fee data sheets, but he never did any analysis of whether the information included in the sheets was accurate. He simply testified that they in some instances matched up, *i.e.*, that the amount plaintiffs' counsel reported was a first

---

[7] Similarly, neither *Intergraph Corp. v. Bentley Sys. Inc.*, 58 So. 3d 63, 74 (Ala. 2010), nor *Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289, 301 (3d Cir. 1991), involve circumstances where an expert assumes a defendant's liability based on prior conduct.

payment on a loan matched up with the amount plaintiffs' counsel reported as the amount of that loan in light of the interest rate plaintiff's counsel reported was charged on that loan. (Krueger depo. at 73–74, 95–96.) Krueger simply never determined whether the numbers themselves were accurate.[8]

Plaintiffs argue that Krueger's failure to determine whether any of the numbers were right is an issue of weight, not admissibility. But the fee line database was created by plaintiffs' lawyers or staff who were not identified as persons with discoverable information as required by Fed. R. Civ. P. 26 and whom WTC and the other defendants had no opportunity to depose and will not be cross-examined at trial. In the end, plaintiffs offer no authority that expert testimony based on such evidence is admissible. This is especially true where, as here, plaintiffs failed to disclose how the database was prepared. *See Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008). Krueger's opinions should be excluded for this reason as well.

Finally, plaintiffs try to argue that Krueger's estimations are reliable, even though they are based on assumptions about fees and interest that might have been included in the 186 loans for which there is no actual data available. Again, there is no evidence what—if any—fees might have been included in those 186 loans. Krueger's speculative opinions are, by definition, unreliable. Plaintiffs characterize Krueger's opinions as "damages calculations [ ] based on statistical verifications of loan parameters, statistical estimates, and a regression analysis" and a "homogenous pool of data." (Doc. 732 at 4.) Krueger's so-called analysis, however, is based on an unverified fee line database created by plaintiffs' counsel. And, critically, there is no way to

---

[8] Plaintiffs' attempts to distinguish *In re TMI Litig.*, 193 F.3d 613, 697–98 (3rd Cir. 1999); *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 321–28 (N.D. Ill. 2008); *Lyman v. St. Jude Med. S.C. Inc.*, 580 F. Supp.2d 719, 726 (E.D. Wis. 2008), and *United States v. Benally*, 541 F.3d 990, 994–95 (10th Cir. 2008) fail for the same reasons.

determine whether the fees plaintiffs allege were charged or paid on the 326 loans is representative of all the loans when they have no data for 186 other loans.

Indeed, as WTC pointed out in its motion, the fees Krueger used to calculate his "median estimated fees" were not at all representative of all fees charged in the 326 loans for which there is data. (*See* Def. Ex. H, Table 5, Doc. No. 689.) A high percentage of the fees Krueger presumed were illegal (based on "axioms" provided by plaintiffs' counsel) were only included on a few loans. Yet he included an average of all these fees in arriving at the median fee and interest rate he attributed to the 186 loans for which there was no data. Plaintiffs contend that this argument is really about the weight of the evidence, not its admissibility. But, again, since the numbers underlying the data come from plaintiffs' counsel and were not verified or analyzed by Krueger, WTC has no opportunity to cross examine their creator or the borrowers whose loans they represent.

Krueger's opinions are not reliable because they assume too much. Krueger assumes that the numbers in the fee line data base are accurate and that fees were included in the 186 loans for which there is no data in a similar way as plaintiffs' counsel represented they were in the 326 loans for which there is data. His opinions therefore fail Rule 702's test and must be excluded.

## CONCLUSION

For the above stated reasons, and for the reasons set out in WTC's *Daubert* motion, Dr. Krueger's testimony should be excluded.

Respectfully submitted,

/s/ Mark A. Olthoff
MARK A. OLTHOFF    MO #38572
ANTHONY BONUCHI    MO #57838
MICHAEL FOSTER    MO #61205
POLSINELLI SHUGHART PC
1700 Twelve Wyandotte Plaza
120 West 12th Street
Kansas City, Missouri 64105-1929
(816) 421-3355
(816) 374-0509 (FAX)
molthoff@polsinelli.com
abonuchi@polsinelli.com
mfoster@polsinelli.com


PETER W. CARTER
PAUL R. DIESETH
DORSEY & WHITNEY LLP
50 S. 6th Street
Suite 1500
Minneapolis, Minnesota 55402-1498
(612) 340-2600
(612) 340-2643 (FAX)

Attorneys for Wilmington Trust Company

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the above and foregoing document was filed electronically with the above-captioned court, with notice of case activity to be generated and sent electronically by the Clerk of said court (with a copy to be mailed to any individuals who do not receive electronic notice from the Clerk) this 15th day of October, 2012, to all counsel of record.

      /s/ Mark A. Olthoff
      Attorney for Defendant Wilmington Trust Co.