UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MICHAEL P. AND SHELLIE GILMOR, | ) |
| Plaintiffs, | ) ) ) ) |
| v. | ) Case No. 04:10-CV-00189-ODS ) |
| PREFERRED CREDIT CORPORATION, et al., | ) ) ) ) |
| Defendants. | ) |

**WILMINGTON TRUST COMPANY'S OMNIBUS MOTION *IN LIMINE*
AND SUGGESTIONS IN SUPPORT**

# TABLE OF CONTENTS

A.  Legal Standard ................................................................................................................. 1

B.  Evidence To Be Excluded ................................................................................................ 2

    1.  The opinions or testimony of plaintiffs' expert Kurt Krueger should be excluded. .................................................................................................................. 2

    2.  This Court should exclude evidence relating to Wilmington's alleged fault in failing to produce documents providing the information that was unavailable to Kurt Krueger and should not grant an adverse inference instruction. ........................................................................................................... 4

    3.  Evidence regarding other entities' alleged misconduct that is unrelated to whether the subject loans violated the MSMLA should be excluded. ...................... 5

    4.  The opinions and testimony of plaintiffs' expert Rebecca Walzak should be excluded. ................................................................................................................ 7

    5.  Evidence regarding Wilmington's post-suit conduct should be excluded. ............... 9

    6.  Characterizations of defense counsel or references to the size of the law firms representing Wilmington should be excluded. ............................................... 10

    7.  Inflammatory terms intended to incite prejudice against defendants should be excluded. ................................................................................................................ 10

    8.  Evidence regarding other MSMLA lawsuits or settlements in other litigation should be excluded. .................................................................................................. 11

    9.  Evidence regarding settlements in this action should be excluded. ......................... 12

# TABLE OF AUTHORITIES

**FEDERAL CASES**

                                                               **Page(s)**

*Anchor Wall Systems v. Rockwood Retaining Walls, Inc.*,
   610 F. Supp.2d 998 (D. Minn. 2009) .................................................................................. 11-12

*Arnold v. Eastern Air Lines, Inc.*,
   681 F.2d 186 (4th Cir. 1982) ................................................................................................ 10

*Batiste-Davis v. Lincare, Inc.*,
   526 F.3d 377 (8th Cir. 2008) ................................................................................................ 12

*Bufford v. Rowan Companies, Inc.*,
   994 F.2d 155 (5th Cir. 1993) ................................................................................................ 10

*Clark v. Burlington Northern, Inc.*,
   726 F.2d 448 (8th Cir. 1984) ................................................................................................ 13

*Cty. of Hennepin v. AFG Indus., Inc.*,
   726 F.2d 149 (8th Cir. 1984) ................................................................................................ 12

*Draper v. Airco, Inc. & U.S. Steel Corp.*,
   580 F.2d 91 (3d Cir. 1978) ................................................................................................... 10

*Garnes v. Gulf & Western Mfg. Co.*,
   789 F.2d 637 (8th Cir. 1986) ................................................................................................ 13

*Lewin v. Am. Export Lines, Inc.*,
   224 F.R.D. 389 (N.D. Ohio 2004) ........................................................................................ 13

*McCabe v. Parker*,
   608 F.3d 1068 (8th Cir. 2010) .............................................................................................. 12

*Morris v. Union Pacific R.R.*,
   373 F.3d 896 (8th Cir. 2004) ............................................................................................. 4-5

*Skibniewski v. Am. Home Prods. Corp.*,
   No. 99-0842-CV-W-FJG, 2004 WL 5628157 (W.D. Mo. 2004) .......................................... 11

*Steen v. Bowersox*,
   2012 WL 2886671 (W.D. Mo., July 13, 2012) ...................................................................... 1

*United States v. Northeastern Pharmaceutical,*
   810 F.2d 726 (8th Cir. 1986) ................................................................................................ 13

*Wood v. Minn. Mining & Mfg., Co.*,
    112 F.3d 306 (8th Cir. 1997) ....................................................................................... 12

**STATE CASES**

*Mitchell v. Residential Funding Corp.*,
    334 S.W.3d 477 (Mo. Ct. App. 2011) ..................................................................... 3, 10

*Ross v. Holton*,
    640 S.W.2d 166 (Mo. App. 1982) ............................................................................... 13

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

Fed. R. Evid. 401 ............................................................................................................. 5, 11

Fed.R.Evid. 402 ..................................................................................................................... 5

Fed. R. Evid. 403 .............................................................................................. 1, 9-11, 12

Fed. R. Evid. 408 ................................................................................................................. 12

**STATE: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

Mo. Rev. Stat. §§ 408.233, 236 ................................................................................. 2, 6, 13

Wilmington Trust Company ("Wilmington") respectfully requests that this Court issue an Order *in Limine* prohibiting plaintiffs, plaintiffs' counsel and plaintiffs' witnesses from discussing in voir dire, mentioning in their opening statement, offering into evidence, or otherwise disclosing to the jury, either directly or indirectly, any evidence concerning:

1. The opinions and testimony of plaintiffs' expert Kurt Krueger;

2. Wilmington's alleged fault in failing to produce documents providing the information that was unavailable to Kurt Krueger, or any related adverse inference instruction;

3. Other entities' alleged misconduct that is unrelated to whether the subject loans violated the Missouri Second Mortgage Loan Act ("MSMLA");

4. The opinions and testimony of plaintiffs' expert Rebecca Walzak;

5. Wilmington's post-suit conduct;

6. Characterizations of defense counsel or references to the size of the law firms representing Wilmington;

7. Inflammatory terms intended to incite prejudice against Wilmington;

8. Other second mortgage lawsuits or settlements in other litigation; and

9. Settlements in this action.

The issues listed above are inadmissible, irrelevant, prejudicial, confusing, and/or would serve to distract the jury.

### A. Legal Standard

Evidence is admissible when it is both legally and logically relevant. *Steen v. Bowersox*, 2012 WL 2886671 (W.D. Mo., July 13, 2012). A court, however, may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

### B. Evidence To Be Excluded

The following evidence should be excluded because it is irrelevant unduly prejudicial, confusing, and/or would serve to distract the jury.

#### 1. The opinions or testimony of plaintiffs' expert Kurt Krueger should be excluded.

Wilmington incorporates the arguments and authorities submitted in connection with the motions to exclude the testimony of Kurt Krueger, suggestions in support and reply. (Doc. Nos. 668, 669, 702, 755.) As explained in those submissions, this Court should exclude Krueger's testimony concerning loans where he has no evidence regarding illegal closing costs or interest.

The Court should also exclude testimony and evidence from Krueger because his opinions regarding plaintiffs' claimed damages are misleading. Krueger has calculated a total dollar amount which each borrower is allegedly entitled to receive as damages. These total dollar amounts include *all* allegedly illegal closing costs and *all* interest paid by the borrowers.

These calculations are misleading if Wilmington's summary judgment motion is denied and plaintiffs are allowed to allege that Wilmington is separately liable for its own violation of the MSMLA. Under that theory of liability, Wilmington is responsible only for payments made by the borrower *after* the subject loans were transferred to the Impac Trusts and Wilmington became the Owner Trustee.

The MSMLA provides that a party can be held liable only if it "directly or indirectly charged, contracted for or received" impermissible fees at closing. R.S.Mo. § 408.233.1. Wilmington did not and could not have directly or indirectly charged, contracted for or received those impermissible fees before the loans were assigned to the Impac Trusts and Wilmington became Owner Trustee. Preferred Credit Corporation ("PCC") charged these fees when it closed

2

the loans, and PCC and other entities, including Impac Mortgage Holdings, Inc., Impac Mortgage Holdings Asset Corporation, and Impac Secured Assets Corporation,[1] collected the interest on the loans before they were purchased by the trusts. The actions of these predecessor entities cannot be attributed to Wilmington because plaintiffs have abandoned their conspiracy, joint venture and partnership claims (Doc. 724 at 52) and there is no common law assignee liability under Missouri law. *Mitchell v. Residential Funding Corp.*, 334 S.W.3d 477, 503-06 (Mo. Ct. App. 2011).[2]

Krueger improperly includes in his damages calculations closing costs and interest paid by class members before their loans were transferred to the Impac Trusts. His opinions thus do not reflect and are not consistent with Missouri law. Accordingly, Krueger's testimony and opinions are misleading and should be excluded.

---

[1] All entities associated with Impac will be referred to as "Impac" or "former defendant Impac."

[2] Plaintiffs may argue that they can assert a derivative liability claim against Wilmington under the Home Ownership and Equity Protection Act ("HOEPA"), and that a derivative liability claim would entitle them to recover closing costs and interest paid before the loans were assigned to the Impac Trusts. For the reasons set forth in Wilmington's summary judgment briefing, plaintiffs cannot assert a derivative liability claim against Wilmington. Even if such a claim were permitted, plaintiffs must concede that it could only be asserted as to those loans which constitute "high cost" loans under the federal statute. Krueger has testified that he believes approximately 25% of the loans are **not** "high cost" loans—where hard data exists as to the loan parameters. (Ex. A, Krueger tr. at 139.) Those loans have not been excluded from his damages calculation. Moreover, Krueger has suggested that only 5% of the loans where there is no evidence of the loan parameters are "high cost" loans. (*Id.* at 139–40.) The suggestion that a mere 5% are not "high cost" loans is inconceivable given that 25% are supposedly "high cost" loans where records exist. Krueger's testimony should thus be excluded from evidence even if plaintiffs are permitted to assert a derivative liability claim under HOEPA.

## 2. This Court should exclude evidence relating to Wilmington's alleged fault in failing to produce documents providing the information that was unavailable to Kurt Krueger and should not grant an adverse inference instruction.

Plaintiffs will argue that Krueger lacked evidence relating to closing costs and interest payments because Wilmington did not produce records which would have furnished missing loan data. Plaintiffs may propose to solve their evidentiary problem by seeking an adverse inference instruction against Wilmington. Plaintiffs are not entitled to such an instruction. Plaintiffs have never before suggested that Wilmington is somehow responsible for the absence of records. Nor have plaintiffs ever filed a motion to compel against Wilmington or otherwise raised a discovery dispute arguing that Wilmington was obligated to produce the missing documents.

Plaintiffs conveniently—and inappropriately—lump all defendants together. The records to which plaintiffs refer would have been maintained and kept by other parties, including PCC, Impac, and the Impac Trust servicers, not by Wilmington. (Doc. 742, Ex. 1, Suppl. Decl. of Roseline Maney ¶ 5.) These parties were named as defendants in this action. If they failed to preserve the relevant records, then that may be an issue between plaintiffs and those defendants, but not between plaintiffs and Wilmington.

Nor is there any legal basis for giving an adverse inference instruction. As the Eighth Circuit has held, "there must be a finding of intentional destruction indicating a desire to suppress the truth before an adverse inference instruction is justified." *Morris v. Union Pacific R.R.*, 373 F.3d 896, 901 (8th Cir. 2004). There is no evidence here of either intentional destruction or a desire to suppress the truth. Giving an adverse inference instruction to the jury when it is not warranted is reversible error and requires a new trial because of the serious prejudice it can cause:

> An adverse inference instruction is a powerful tool in a jury trial. When giving such an instruction, a federal judge brands one party as a bad actor, guilty of

4

> destroying evidence that it should have retained for use by the jury. It necessarily opens the door to a certain degree of speculation by the jury, which is admonished that it may infer the presence of damaging information in the unknown contents of [the destroyed evidence] . . . The adverse inference instruction, when not warranted, creates a substantial danger of unfair prejudice. . . . Thus, having concluded that the instruction should not have been given on this record, we hold that [the defendant] was prejudiced, and that a new trial is required.

*Id*. at 903. Significantly, in *Morris*, it was undisputed that the defendant had destroyed relevant evidence, but the court found that the adverse inference instruction was improper because the destruction had not been intentional.

Here, there is no allegation or proof that anyone—including Wilmington—destroyed relevant evidence, much less that anyone intentionally did so. There is thus no factual or legal basis for an adverse inference instruction against Wilmington.

### 3. Evidence regarding other entities' alleged misconduct that is unrelated to whether the subject loans violated the MSMLA should be excluded.

Wilmington moves to exclude evidence regarding the alleged misconduct of other entities, including Preferred Credit Corporation ("PCC") and Impac, that is unrelated to whether the loans violated the MSMLA. Plaintiffs will seek to introduce evidence that PCC violated California state regulatory requirements, that Impac knew about those violations, that Impac's knowledge should have compelled it to inspect the subject loans for state lending law violations, and that Impac did not do so. None of this evidence is relevant to the claims remaining in this case.

Evidence is relevant only if the fact to which it relates is of consequence in determining the action. Fed. R. Evid. 401. Evidence that is not relevant is inadmissible. Rule 402.

The misconduct of other parties is not admissible against Wilmington upon some theory of conspiracy, joint venture or partnership. As noted above, plaintiffs have abandoned these claims. (Doc. 724 at 52.)

5

The evidence is also not admissible to prove that Wilmington independently violated the MSMLA. Plaintiffs are entitled to introduce evidence regarding the costs that PCC charged class members at closing and whether those costs are permissible under the MSMLA. Other alleged misconduct, however, including the matters identified above, is irrelevant. To prove that Wilmington independently violated the MSMLA, plaintiff must show that Wilmington "directly or indirectly charged, contracted for or received" impermissible charges. R.S.Mo. § 408.233.1. Evidence relating to the actions or inactions of PCC, Impac, or any other entity for that matter, other than evidence relating to the legality of the closing costs, does not bear on this issue.

Similarly, the evidence of other defendants' misconduct is inadmissible to prove that Wilmington is derivatively liable under HOEPA. In its motions for summary judgment, Wilmington demonstrated that HOEPA does not allow the assertion of derivative liability claims against Wilmington. (*See*, *e.g.*, Doc. 742 at 23–28.) Even if HOEPA permitted such claims, the only question pertinent to Wilmington's alleged derivative liability would be whether the subject loans violated the MSMLA. Again, evidence of other defendants' misconduct, other than evidence relating to the costs charged at closing, is irrelevant to that question.

Finally, evidence of the alleged misconduct of other defendants is irrelevant with respect to other parties to this action. Impac and plaintiffs have announced they have reached a settlement. In fact, the only two defendants who have not settled and who are continuing to defend claims relating to the loans assigned to the Impac Trust loans are Wilmington and the servicer, Wendover Financial Services Corporation.[3] (Doc. 756). Evidence relating to the

---

[3] Although a settlement has not been reached with Preferred Credit Corporation, plaintiffs have acknowledged that they will not try their case against PCC but will rather obtain a default judgment against the company. (Doc. 756 at 3.) The only other defendant still in the case is United Mortgage C.B., LLC. The loan or loans for which United Mortgage is potentially liable

6

alleged misconduct of other defendants is inadmissible against Wendover for the same reasons it is inadmissible against Wilmington.

Accordingly, Wilmington respectfully requests that this Court order that plaintiffs may not introduce evidence regarding the alleged misconduct of other entities, including PCC and Impac, that is unrelated to whether the subject loans violated the MSMLA.

### 4. The opinions and testimony of plaintiffs' expert Rebecca Walzak should be excluded.

Plaintiffs have retained Rebecca Walzak as an expert regarding the loans purchased, acquired, and/or serviced by Impac. (Ex. B, Amended Written Report of Rebecca Walzak, at 1.) Wilmington moves *in limine* to prohibit Walzak from testifying against Wilmington because Walzak has offered no opinions regarding Wilmington. Her testimony is thus irrelevant.

Walzak's opinions relate solely to Impac and its alleged misconduct. She has nothing to say with respect to Wilmington. Walzak's amended report contains seven opinions. She claims in these opinions that "Impac knew" that PCC had violated California state regulatory requirements (Opinion 1, Ex. B at 1–2), that "[a]s a consequence, Impac could not and should not have relied upon PCC's representations and warranties" (Opinion 2, Ex. B at 3; *see also* Opinion 4, Ex. B at 4–5), that "Impac's 'due diligence' of the loans was inadequate" because it did not analyze whether the loans complied with state law (Opinion 3, Ex. B at 4), that "Impac knew that the loans . . . were made to financially vulnerable borrowers" (Opinion 5, Ex. B at 5), and that "Impac management" is at fault for not suspending the collection of interest and failing to review the loans after the lawsuit was filed (Opinions 6 and 7, Ex. B at 6–7). In the section of

---

were not assigned to the Impac Trusts and have no relevance to plaintiffs' claims against Wilmington.

her report providing the basis and reasons for these opinions, Walzak again focuses exclusively upon "Impac." (Ex. B at 7–18.)

Walzak does not mention or render an opinion with respect to Wilmington, to "owner trustees" or even to "trustees."

Walzak did not render an opinion regarding Wilmington, or to any owner trustee for that matter, because she has no idea what an owner trustee is. During her deposition, the following colloquy took place:

> Q. How about the term "owner trustee"? Do you know what that refers to?
>
> A. I know that the trustee has, in that case, has some ownership interest in the securities simply by the term.
>
> Q. Is it your understanding of an owner trustee, is that the trustee has an ownership interest in the loans; is that what you said?
>
> A. Or that the underlying, the loans underlying the securitizations, or maybe they have ownership of some of the securities.
>
> Q. Is that something you're certain of or is that something you're just sort of generally—
>
> A. No. That's what I said, based on the name you gave me, I drew that conclusion.
>
> Q. Okay. Did you draw your conclusion from anything other than the name?
>
> A. No.

(Ex. C at 101:21–102:17.)

Walzak clearly knows nothing about owner trustees. Although she speculated about the role of owner trustees, that speculation was based solely on the name, and it was wrong. The certificate holders and noteholders, not Wilmington, own the securities. (*See*, *e.g.*, Doc. 704, Ex. Q-5 at Article III; Ex. Q-7 at Article IV.)

Since Walzak does not know who Wilmington is or have any understanding of the role it played with respect to the Impac Trusts, it would be frivolous to claim that she rendered any

8

opinions with respect to Wilmington. Accordingly, her testimony is irrelevant and should be excluded.

### 5. Evidence regarding Wilmington's post-suit conduct should be excluded.

Plaintiffs may try to introduce evidence of Wilmington's actions or inaction after this suit was filed. They may argue that the mere act of filing suit put Wilmington on notice of the supposed illegality of fees or interest and that Wilmington nevertheless continued to act as the Owner Trustee of trusts that collected payments from borrowers who were charged or paid allegedly improper fees or interest. The Court should exclude this evidence because it is highly prejudicial. Fed. R. Evid. 403. First, there is no evidence that Wilmington as Owner Trustee knew what class loans were in the Impac Trusts or that it did or could have done anything to stop the trusts' collections of payments. In fact, plaintiffs have conceded that Wilmington had no power or authority in any capacity to forgive any of the loans at issue or modify the loan fees, charges, or interest rates on the notes or deeds of trust. (Doc. 724, Pl. Sugg. at 13.)

Second, shortly after the class was certified, plaintiffs prepared, and the court approved, a notice to the class in which the court instructed the class that the filing of suit "does not relieve you of any obligation that you may have to make payments on any loan that you received from Preferred Credit." (Ex. D, Class Notice.) Any argument that Wilmington should have ceased collecting borrower payments flies in the face of plaintiffs' prior statement that the borrowers needed to continue making those payments.

Finally, the mere filing of suit cannot be construed as imputing knowledge of the supposed illegality of collecting interest on the PCC loans. The alleged illegality, in fact, is an issue that plaintiffs and Wilmington have litigated since 2001. Indeed, the resolution of plaintiffs' argument about the exclusivity of the MSMLA fee restrictions was not reached until

9

the *Mitchell* decision in 2010. The Court should not allow plaintiffs to mislead the jury into believing that Wilmington knew the collection of interest was illegal, yet continued to collect in violation of the law. Accordingly, the Court should exclude evidence of Wilmington's continued collection of interest after suit was filed and plaintiffs' criticism of such conduct.

### 6. Characterizations of defense counsel or references to the size of the law firms representing Wilmington should be excluded.

Plaintiffs' counsel should be prohibited from commenting on the size, location, or other clients of Wilmington's counsels' law firms. Such references would be unfair, prejudicial, and irrelevant. *See Draper v. Airco, Inc. & U.S. Steel Corp.*, 580 F.2d 91 (3d Cir. 1978) (holding that attempts to classify or label defense counsel in a negative manner, or to infer defense counsel is part of conspiracy, substantially impair defendants' rights to a fair trial); *Arnold v. Eastern Air Lines, Inc.*, 681 F.2d 186, 196 (4th Cir. 1982) (holding that disparaging references to defense counsel's wealth improper under applicable professional standards); *Bufford v. Rowan Companies, Inc.*, 994 F.2d 155, 157 (5th Cir. 1993) (holding that unsupported and irresponsible attacks on the integrity of opposing counsel are impermissible). These references are thus not admissible.

### 7. Inflammatory terms intended to incite prejudice against defendants should be excluded.

Plaintiffs may attempt to use terms associated with the country's recent financial crisis or terms that have figured prominently in national headlines, hoping to incite prejudice in the jury against Wilmington. Wendover's motion *in limine* in this matter, filed contemporaneously with Wilmington's motion, identifies these terms and explains why they are inadmissibile under Fed. R. Evid. 403. Rather than repeating these arguments, Wilmington incorporates them herein by reference. (Doc. 775.)

10

### 8. Evidence regarding other MSMLA lawsuits or settlements in other litigation should be excluded.

Wilmington moves the Court to exclude evidence of other MSMLA lawsuits brought against either Wilmington or other entities and of any settlements in these cases, including settlements to which Wilmington is a party, because this evidence is irrelevant, unfairly prejudicial, and inadmissible hearsay.

Evidence of other litigation or settlements is not relevant and therefore not admissible. *See* Fed. R. Evid. 401. The existence of other MSMLA litigation or settlements involving Wilmington or other parties, whether pending or resolved, is not relevant to the merits of plaintiffs' claims in this case, nor to Wilmington's conduct in this case. *See*, *e.g.*, *Skibniewski v. Am. Home Prods. Corp.*, No. 99-0842-CV-W-FJG, 2004 WL 5628157, at *4 (W.D. Mo. 2004) (excluding evidence related to collateral litigation against the defendant because "evidence relating to different drugs, different injuries, different people and different conditions have no bearing on this case"). Because extraneous facts and circumstances carry no probative value, the Court should exclude such evidence.

Even if the Court determines that collateral litigation or settlements are relevant to this case, the evidence must be excluded under Federal Rule 403 because "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury." Fed. R. Evid. 403. Plaintiffs' introduction of evidence of collateral litigation would be unfairly prejudicial because it would likely cause a jury to not assess the facts of this case and instead rely on other courts' findings. *See*, *e.g.*, *Anchor Wall Systems v. Rockwood Retaining Walls, Inc.*, 610 F. Supp.2d 998, 1006–07 (D. Minn. 2009) (quoting *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557 (Fed. Cir. 1993)) (explaining that prior litigation evidence tends to "short-circuit the fact-finding mission" of the jury and invites the jury "to

11

abdicate [its] responsibilities."). This is especially prejudicial when a case involves the same general subject matter. *See id.* at 1007 ("[I]t is difficult to conceive of any circumstances in which [evidence involving the same subject matter] would not be excluded under Rule 403 of the Federal Rules of Evidence."). Courts in the Eighth Circuit generally "do not admit evidence of prior suits unless they were fraudulently filed" and even then only when the evidence is more probative than prejudicial. *See Batiste-Davis v. Lincare, Inc.*, 526 F.3d 377, 380 (8th Cir. 2008) (citing *Berry v. Oswalt*, 143 F.3d 1127, 1132 (8th Cir. 1998)). The subject matter in this litigation is similar to the subject matters in other litigation against Wilmington but involves different facts and circumstances. Including such evidence would be unfairly prejudicial to Wilmington and would impede the jury's fact-finding responsibilities. For these reasons, the Court should exclude any collateral litigation and settlement evidence.

## 9. Evidence regarding settlements in this action should be excluded.

Plaintiffs have announced that they have agreed to settle their claims against Impac, the Impac Trusts, and the indenture trustees of the Impac Trusts. Pursuant to Missouri law and Fed. R. Evid. 403 and 408, plaintiffs should not be allowed to disclose the existence or terms of these settlements to the jury.

"[S]ettlement evidence . . . is generally prohibited, [unless] used to prove a witness's bias or prejudice." *McCabe v. Parker*, 608 F.3d 1068, 1077 (8th Cir. 2010); *accord Cty. of Hennepin v. AFG Indus., Inc.,* 726 F.2d 149, 152–53 (8th Cir. 1984) (noting that Fed. R. Evid. 408 forbids the use of settlement agreements to prove liability); *Wood v. Minn. Mining & Mfg., Co.*, 112 F.3d 306, 310 (8th Cir. 1997) (holding that introducing evidence of a third-party's "financial concession" imposes an "unfair prejudicial effect [that] . . . substantially outweighs its probative value."). Plaintiffs can point to no witness bias or prejudice that would allow them to offer settlement evidence.

Although this evidence may not be disclosed to the jury, the settlement amounts still must be considered in connection with the damages that plaintiffs seek from Wilmington. Wilmington is entitled to an offset for the settlement amounts paid by the defendants, such as Impac, Deutsche Bank, LaSalle and Wells Fargo, who are accused of wrongfully collecting the same interest and fees that Wilmington stands accused of collecting. Without such an offset, the plaintiffs would be granted a double recovery, something the MSMLA does not allow. *See* Mo. Rev. Stat. §§ 408.233 & 236 (limiting total damages to compensation for "unlawful fees" collected and reimbursement of all "interest [collected] on the contract."); *see also Ross v. Holton*, 640 S.W.2d 166, 173 (Mo. App. 1982) ("It is well settled in Missouri that a party cannot be compensated for the same injury twice.").

Wilmington respectfully suggests that this issue may be resolved in one of two ways. First, the Court could instruct plaintiffs that they must reduce the amount of their claimed damages to fully account for the judgment credit owing to Wilmington as a result of the prior settlements. *See*, *e.g.*, *United States v. Northeastern Pharmaceutical,* 810 F.2d 726, 748–49 (8th Cir. 1986) (upholding jury award where plaintiff accounted for prior settlement and attendant offset in seeking damages at trial). Alternatively, plaintiffs could be allowed to seek their full measure of damages. If any damages are awarded to plaintiffs against Wilmington, this Court could then reduce any damages award by the settlement amounts paid by the other defendants. *See*, *e.g.*, *Garnes v. Gulf & Western Mfg. Co.,* 789 F.2d 637, 639 (8th Cir. 1986) (crediting offset post-verdict); *Clark v. Burlington Northern, Inc.*, 726 F.2d 448, 451 (8th Cir. 1984) (crediting offset post-verdict); *Lewin v. Am. Export Lines, Inc.*, 224 F.R.D. 389, 396 (N.D. Ohio 2004) (refusing to order disclosure of settlement amounts to be used for a set-off prior to jury verdict).

13

Under neither alternative, however, should plaintiffs be permitted to disclose to the jury the existence—or terms—of any settlement reached by other defendants prior to trial.

**WHEREFORE**, for the reasons set forth herein, Wilmington respectfully requests this Court's order granting the above Motions *in Limine* and that if, at any time hereafter, plaintiffs, their counsel, or their witnesses desire to address the matters referred to above, that they must first approach the bench, out of the presence and hearing of the jury, to obtain permission from the Court; and for such other and further relief as this Court deems necessary and appropriate.

Respectfully submitted,

/s/ Mark A. Olthoff
| MARK A. OLTHOFF | MO #38572 |
| ANTHONY BONUCHI | MO #57838 |
| MICHAEL S. FOSTER | MO #61205 |

POLSINELLI SHUGHART PC
1700 Twelve Wyandotte Plaza
120 West 12th Street
Kansas City, Missouri 64105-1929
(816) 421-3355
(816) 374-0509 (FAX)
molthoff@polsinelli.com
abonuchi@polsinelli.com
mfoster@polsinelli.com


PETER W. CARTER
PAUL R. DIESETH
DORSEY & WHITNEY LLP
50 South 6th Street
Suite 1500
Minneapolis, Minnesota 55402-1498
(612) 340-2600
(612) 340-2868 (FAX)

ATTORNEYS FOR WILMINGTON TRUST COMPANY

14

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the above and foregoing document was filed electronically with the above-captioned court, with notice of case activity to be generated and sent electronically by the Clerk of said court (with a copy to be mailed to any individuals who do not receive electronic notice from the Clerk) this 18h day of October 2012, to all counsel of record.

      /s/ Mark A. Olthoff
      Attorney for Wilmington Trust Company